IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, ) ) | |
| Plaintiff, ) | |
| v. ) | CASE NO. 1:12-CV-2296-TCB |
| AUBREY LEE PRICE *et al.*, ) | |
| Defendants. ) | |

**FDIC-R'S REPLY IN SUPPORT OF ITS
MOTION FOR INTERVENTION AND FOR RELIEF FROM
PRELIMINARY INJUNCTION ORDER AND APPOINTMENT ORDER**

In her response, SEC Receiver ignores the express language of Congress's prohibition, set forth in 12 U.S.C. §1821(j) of FIRREA,[1] of any and all attempts, including hers, to restrain or affect the actions of the FDIC as receiver. Instead, she tries to analogize the *equitable* injunctions in the Orders[2] to the *statutory* automatic stay that applies to bankruptcy cases, refusing to recognize that the powers conferred on her by this Court are necessarily circumscribed by Section 1821(j), FIRREA's express anti-injunction provision.

This failure to appreciate and accept Section 1821(j) leads to inconsistent

---

[1] In 1989, Congress expanded FDIC's receivership authority, powers and discretion by passing the Financial Institutions Reform, Recovery, and Enforcement Act, Pub. L. No. 101-73, 103 Stat. 183 (1989) ("FIRREA"), which amended portions of the Federal Deposit Insurance Act of 1933.

[2] The term "Orders," as used herein, means this Court's July 13, 2012 preliminary injunction order, and this Court's August 10, 2012 order appointing receiver.

1

results. On the one hand, SEC Receiver finally, albeit belatedly,[3] acknowledges that "… 12 U.S.C. §1821 … gives the FDIC-R the power to commence foreclose [sic] proceedings with respect to [the Mortgaged Properties]." Response at 5. On the other hand, she continues to argue that the Orders currently restrain and affect FDIC-R's exercise of powers and functions as receiver of MB&T; indeed, she even contends that it would not be "appropriate" for FDIC-R to carry out its statutory mandates unless FDIC-R obtains prior permission from the Court to do so[4]–despite the fact that FIRREA expressly provides for judicial review of FDIC-R's actions after the fact.[5] *Id.* at 5.

The relief that FDIC-R seeks here is quite limited. FDIC-R seeks only clarification that, consistent with Section 1821(j), the Orders do not restrain or affect FDIC-R's exercise of its powers and duties. *See* Proposed Order at 2 ("ORDERED that the PI Order and the Appointment Order shall not restrain or affect the exercise of powers or functions of the FDIC-R"); *see* Am. Memo. at 15.

---

[3] Although FDIC-R and SEC Receiver have engaged in discussions since August of 2012, SEC Receiver did not make this concession until February 4, 2013, when she filed her response to FDIC-R's motion. Moreover, when FDIC-R subsequently took steps to foreclose, SEC Receiver continued to take the position that FDIC-R cannot foreclose without the express permission of this Court.

[4] *See* Exh. 1.

[5] Upon exhaustion of FIRREA's administrative claims process and timely request for judicial review, the court has jurisdiction to determine a claim regarding receivership property of FDIC-R. *See* 12 U.S.C. §1821(d)(6).

FDIC-R simply desires to carry out its duties uninhibited by prior restraint and pursuant to its Congressional mandate. SEC Receiver has failed to identify any scenario in which FDIC-R could be properly enjoined or any applicable exception to the bar on injunctions set forth in Section 1821(j).

Finally, SEC Receiver claims that, because she has now conceded that FDIC-R may foreclose on the Mortgaged Properties, there are no concrete disputes between the SEC, SEC Receiver and FDIC-R at this time and thus FDIC-R's motion is not ripe. However, SEC Receiver's argument is belied by her own Response, in which she acknowledges she has concrete disputes with FDIC-R regarding, *e.g.*, the potential liability of directors and officers of the failed bank, many of whom are also directors and officers of the bank's holding company. Response at 4-8. Coupled with the implicit threat of contempt sanctions, SEC Receiver's enumeration of disputes that have already arisen show that FDIC-R's motion is ripe for decision. Therefore, FDIC-R's motion should be granted.

**A. Congress Has Expressly Withdrawn Jurisdiction from Courts to Enjoin the FDIC When Acting as Receiver.**

It is well-established that, except for limited circumstances not applicable here, no court may enjoin the FDIC's exercise of its powers and functions as receiver. 12 U.S.C. §1821(j). The statute is straightforward and unambiguous: "No court may take any action, except at the request of the Board of Directors by regulation or

order, to restrain or affect the exercise of the powers or functions of [FDIC-R]." 12 U.S.C. §1821(j); *see* Am. Memo. at 13. The Eleventh Circuit's decision in *Bank of Am. v. Colonial Bank*, 604 F.3d 1239 (11th Cir. 2010) to that effect is on point and controlling.[6] SEC Receiver has failed to support her assertion to the contrary.

**1. SEC Receiver Fails to Identify Any Applicable Exception to the Bar on Injunctions.**

In her Response, SEC Receiver acknowledges that Section 1821(j) prohibits an injunction of FDIC-R as it relates to the Mortgaged Properties. *See* Response at 14. SEC Receiver fails to identify any scenario in which an injunction of FDIC-R would be proper. Nor does SEC Receiver cite any relevant case law. In fact, the only cases SEC Receiver cites are bankruptcy cases, on the theory that this Court's injunction of FDIC-R is analogous to the automatic stay in a bankruptcy case. She concludes that, since the automatic statutory stay in bankruptcy applies to FDIC acting as receiver, a judicial injunction of FDIC-R is authorized here. *See* Response at 12.

---

[6] "In interpreting a statutory provision, 'we must presume that Congress said what it meant and meant what it said'… [and] 'that the ordinary meaning of a statute's language accurately expresses [its] legislative purpose.' Applying these presumptions, the plain language of §1821(j) clearly and unambiguously reflects congressional intent to bar courts from granting the precise type of injunctive relief sought here [enjoining the bank from liquidating assets]." *Bank of Am.*, 604 F.3d at 1244 (citations omitted).

The SEC Receiver is wrong. While 12 U.S.C. §1821(j) does not bar the application of the bankruptcy automatic stay to FDIC-R, the cases cited by SEC Receiver do not allow a court to enjoin FDIC-R's exercise of its powers or functions. The court in *Sunshine Development* described the difference between the statutory injunction imposed by the automatic stay of 11 U.S.C. §362(a) and a court-ordered injunction:

> Because the automatic stay is exactly what the name implies - "automatic" - it operates without the necessity for judicial intervention. Consequently, the stay's curtailment of the FDIC's power does not run afoul of FIRREA's anti-injunction provision, which only prohibits "*court* … action … to restrain or affect the exercise of powers or function of the [FDIC] as a … receiver." 12 U.S.C. §1821(j) (emphasis supplied). On that basis, we are confident that the automatic stay does not violate FIRREA's anti-injunction provision because it arises directly from the operation of a legislative enactment, not by court order.
>
> Once the bankruptcy court grants the FDIC relief from the automatic stay, however, the court surrenders the preferred position that Congress carved out for it. At that juncture, FIRREA's anti-injunction provision comes into play. Thereafter, without the [statutory] automatic stay in place, the bankruptcy court, like any other court, is prevented from taking "any action … to restrain or affect the exercise of powers or functions of the [FDIC] as a conservator or receiver. 12 U.S.C. §1821(j).

*Sunshine Dev. v. FDIC*, 33 F.3d 106, 113-14 (1st Cir. 1994) (citations omitted); *see also In re Colonial Realty Co.*, 980 F.2d 125 (2d Cir. 1992)(recognizing the unique circumstance of *automatic* stay under 11 U.S.C. §362(a)); *In re First City Asset Servicing Co.*, 158 B.R. 78 (Bankr. N.D. Tex. 1993) (same).

Unlike the automatic stay in a bankruptcy case, the injunctions at issue here do not "arise[] directly from the operation of a legislative enactment." *Sunshine Dev.*, 33 F.3d at 113-14. To the contrary, the SEC drafted and actively sought the injunctions, and judicial action was necessary to implement them. Thus, SEC Receiver's comparison of the proposed injunctions in this case to the automatic stay in bankruptcy cases misses the point. A statutory automatic stay is simply not comparable to the judicially-imposed injunctions issued here.

Further, when Congress creates a governing statutory scheme, courts are precluded from exercising their implied equitable authority if such authority is not granted in the comprehensive scheme. *See Alexander v. Sandoval,* 532 U.S. 275, 290 (2001)(no private right of action exists because "[t]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others"); *Christ v. Beneficial Corp.,* 547 F.3d 1292 (11th Cir. 2008)("Because we do not expect Congress to 'expressly preclude' remedies, we do not read [the Truth in Lending Act] to confer upon private litigants an implied right to an injunction or other equitable relief"). In FIRREA, Congress affirmatively withdrew from all courts the power to use equitable relief to restrain the FDIC when acting as receiver. Thus, Congress's statutory anti-injunction provision precludes the SEC Receiver's reliance on the implied equitable powers of the court.

## 2. Congress Designed Section 1821(j) to Protect the FDIC's Core Receivership Functions.

Congress designed Section 1821(j) to allow the FDIC to exercise its statutory authority as receiver of a failed institution. *See In re Landmark Land Co.*, 973 F.2d 283, 290 (4th Cir. 1992). Because they inject uncertainty into the asset liquidation process, injunctions clearly interfere with the FDIC's core receivership function of quickly and efficiently disposing of the failed financial institution's assets. *See Nat'l Trust for Historic Pres. v. FDIC*, 995 F.2d 238, 240 (D.C. Cir. 1993)("In disposing of the assets of a bank, the FDIC is performing a routine 'receivership' function that §1821(j) unequivocally removes from judicial restraint.")[7]

Section 1821(j) has been described as "a sweeping ouster of courts' power to grant *equitable remedies.*" *Freeman v. FDIC*, 56 F.3d 1394, 1399 (D.C. Cir. 1995) (emphasis added). "Despite the presence of [courts'] inherent power to … provide final equitable relief, Congress may deprive the federal courts of that power by

---

[7] *See also Volges v. RTC*, 32 F.3d 50, 52 (2d Cir. 1994)("One of the [receiver's] primary functions is to dispose of a failed institution's assets in a way that 'maximizes the net present value return from the sale or other disposition' of assets under its control."); *see Pyramid Constr. Co. v. Wind River Petroleum, Inc.*, 866 F. Supp. 513, 518-19 (D. Utah 1994)(no jurisdiction to enjoin purchaser of receivership property because it would affect the receiver and it might "chill[]" future purchases); *see Sahni v. Am. Diversified Partners*, 83 F.3d 1054, 1058 (9th Cir. 1996)("It is well-established that §1821(j) bars restraint by the courts on the statutory powers of the FDIC when it acts as receiver.").

establishing a comprehensive enforcement scheme containing the exclusive remedies for a given statutory violation." *Reebok Int'l v. Marnatech Enter.*, 970 F.2d 552, 561 (9th Cir. 1992).[8]

Congress established such a comprehensive enforcement scheme when it created FIRREA.[9] Therefore, courts have not hesitated to find that "FIRREA deprives the court of jurisdiction to adjudicate claims based on equitable relief." *A.H. Cornell & Son, Inc. v. RTC*, No. 93-cv-5486, 1994 WL 385073, *6 (E.D. Pa. July 20, 1994)(rejecting subcontractor's theories of an implied trust, constructive trust and equitable lien to recover money from lapsed escrow agreement). Moreover, the prohibition of Section 1821(j) is absolute:

> The fact that the particular relief sought by [defendants] is perceived by them as a modest interference with RTC's operations cannot, in my view, draw the sting from the fact that the relief sought would, if granted, be a direction to RTC as to what to do or not do with what RTC regards as an asset now in RTC's custody. As I read FIRREA, I lack judicial power to entertain any such prayer for equitable relief.

*RTC v. Clarke*, 812 F. Supp. 48, 52-53 (E.D. Pa. 1992)(denying specific performance of agreement to sell failed bank's real property because statute precluded court from entertaining claims for equitable relief). Congressional intent to allow FDIC-R to exercise its functions uninhibited must be respected.

---

[8] *See also Alexander*, 532 U.S. at 290; *Christ*, 547 F.3d at 1292.
[9] *See* note 5, above.

8

### 3. The Powers and Functions of the FDIC as Receiver are Broad and Necessary to Allow It to Carry Out Its Congressional Mandate.

When appointed as receiver, the FDIC succeeds to "all rights, titles, powers, and privileges of the insured depository institution…and the assets of the institution." 12 U.S.C. §1821(d)(2)(A)(i). The FDIC's duties as receiver relating to the assets of a failed bank are, as FIRREA dictates, to conserve and preserve the failed institution's assets, liquidate those assets when appropriate, and use the proceeds of liquidation to make distributions among the institution's valid creditors. 12 U.S.C. §§1821(d)(2)(A)(ii); 1821(d)(2)(B) & (E). Congress has given FDIC-R discretion to determine the timing and amount of such distributions. 12 U.S.C. §§1821(d)(10)(A) & (B). When making distributions to creditors, FDIC-R must prioritize the payment of claims in accordance with federal statutory and regulatory requirements. *Id* §1821(i)(1) & (2); 12 C.F.R. §360.2. As FDIC-R liquidates the assets of a failed institution, it pays "dividends" to claimants holding receiver certificates, according to the payment priority scheme of 12 U.S.C. §1821(d)(11).[10] The FDIC may operate the receivership without the consent of any court and without interference from other agencies to exercise its discretion to

---

[10] *See also* FDIC: Resolutions Handbook, Chapter 7 – The FDIC's Role as Receiver, p.70, available at http://www.fdic.gov/bank/historical/reshandbook/ (relevant portions attached hereto as Exh. 2).

determine the most effective resolution of the institution's assets and liabilities. *Id.*

In addition, "the FDIC [as receiver] may sue professionals who played a role in the failure of the institution in order to maximize recoveries." Professional Liability Lawsuits, available at http://www.fdic.gov/bank/individual/failed/pls/ (relevant portions attached hereto as Exh. 3). "Before seeking recoveries from professionals, the FDIC conducts a thorough investigation into the causes of the failure" to determine whether a suit would be meritorious and cost-effective. *Id.*

FDIC-R's statutory powers to address the circumstances of a failed financial institution have been described as broad and necessary to reduce the losses to the receivership estate when a financial institution fails. *See Bank of Am.*, 604 F.3d at 1243. As explained in FDIC-R's Amended Memorandum at 3-6, Congress not only established this express, comprehensive statutory scheme for the FDIC's management of failed financial institutions but also provided that no court may restrain or affect FDIC-R's powers and functions.

**4. SEC Receiver Believes that the Orders Restrain FDIC from Exercising its Powers and Functions as Receiver.**

According to SEC Receiver, the Orders enjoin and prevent all persons except SEC Receiver, including FDIC-R, from controlling and disposing of the Receivership Assets. Further, the Orders enjoin all persons except SEC Receiver, including FDIC-R, from commencing or continuing legal proceedings involving

the Receivership Assets. If so, the Orders prevent FDIC-R from exercising its express statutory obligations by forcing FDIC-R to seek the Court's permission on a case-by-case basis for each action it determines is necessary to carry out its receivership functions.

As explained in FDIC-R's Amended Memorandum at 18-23, the Orders arguably restrain FDIC-R from taking certain actions with regard to its rights in the Mortgaged Properties. In addition, the SEC Receiver interprets the stay provisions of the Appointment Order as preventing FDIC-R from, among other things, commencing actions against directors and officers of MB&T for professional liability claims, filing claims with insurance companies on policies where a Receivership Entity is an additional insured, initiating an action against a third party for constructive trust where the money trail flows through Defendant PFG, LLC or conducting the investigation of MB&T that it would normally undertake to identify and prosecute potential professional liability claims (*e.g.*, serving subpoenas for documents).[11]

## B. The Dispute before the Court is Ripe for Adjudication.

Determining whether an action is ripe requires evaluation of (1) the fitness of

---

[11] As stated in FDIC-R's December 10, 2012 memorandum, FDIC-R's review of MB&T's records is ongoing, and additional FDIC-R Assets may be identified. FDIC-R reserves the right to identify additional assets.

the issues for judicial decision and (2) the hardship to the parties of withholding court consideration. *See Abbott Labs.* v. *Gardner,* 387 U.S. 136, 149 (1967).[12] As to the fitness of the issues for judicial decision, the issue here is appropriate for judicial resolution at this time. SEC Receiver agrees with FDIC-R that the issue presented is a legal one. Response at 14. Further development of the facts will not render the issue any more concrete.

In addition to the existing dispute between FDIC-R and SEC Receiver regarding the Mortgaged Properties, described in FDIC-R's Amended Memorandum at 6-9 and 18-23, there are also other concrete current disputes. SEC Receiver describes these additional disputes in her Response as: (1) competing interests between the FDIC as receiver for MB&T and SEC Receiver as receiver of Defendants' controlling ownership interest of MB&T in certain claims against third parties, (2) claims by FDIC-R and SEC Receiver against one another based on the relationship between MB&T, its holding company and the Defendants, (3) at least two insurance policies with named insureds that include both MB&T and a

---

[12] "Where the legal issue presented is fit for judicial resolution, and where a regulation requires an immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to noncompliance, access to the courts … must be permitted, absent a statutory bar or some other unusual circumstance." *Id.* at 153 (holding the issue of whether pre-enforcement review of food and drug rules is precluded by federal law was ripe for adjudication).

Receivership Entity or an entity that is majority owned by a Receivership Entity, (4) FDIC-R's claim against SEC Receiver for $7 million for losses that were caused by former employees of a Receivership Entity, (5) SEC Receiver's claim against FDIC-R for Defendant's losses related to MB&T investments and (6) SEC Receiver's securities fraud lawsuit against certain directors and officers of MB&T's holding company related to the same investor losses. Response at 4-8. More particularly, SEC Receiver appears to challenge FDIC-R's rights to seek coverage under overlapping directors and officers insurance policies, Response at 5-8, and to pursue its claims against Defendants Montgomery Asset Management, LLC, and PFG, LLC. *Id.* at 7, 23.

In short, the Orders (as SEC Receiver interprets them) bar FDIC-R from taking any actions with regard to the foregoing disputes between the parties. Under this interpretation, if FDIC-R were to attempt to exercise its rights with respect to assets or claims, SEC Receiver could argue that FDIC-R is acting in contempt of the Court's orders. To have that threat hanging over its head obviously imposes a hardship upon FDIC-R.

Therefore, this dispute is ripe for adjudication because the disputes involve purely legal issues that are sufficiently factually developed and because the Orders would impose on FDIC-R the hardship of obtaining prior approval for much of its

operation of the failed bank receivership.

## C. FDIC-R May Intervene As of Right to Protect its Ability to Carry Out its Duties as Receiver.

FDIC-R may intervene as of right to protect its ability to carry out its duties as receiver. As established in FDIC-R's Amended Memorandum at 16, FDIC-R has satisfied all elements of the intervention test. (Indeed, SEC Receiver has conceded that FDIC-R satisfies the timeliness element. Response at 18.)

Second, as explained in FDIC-R's Amended Memorandum at 17-18, FDIC-R is a creditor of the delinquent Defendants, whose assets make up the Receivership Assets. As such, FDIC-R has a "direct, substantial, and legally protectable interest" in the Receivership Assets. According to SEC Receiver, the Orders enjoin FDIC-R from exercising its rights in the Receivership Assets. Enjoined parties have a right to intervene in the actions which enjoin them. Further, although numerous definite interests currently at issue in this case have been identified, including the Mortgaged Properties and the list of present disputes in SEC Receiver's response, "no specific legal or equitable interest need be established" to create a right to intervene. *Greene v. United States*, 996 F.2d 973, 980 (9th Cir. 1993).

Third, as discussed in FDIC-R's Amended Memorandum at 18-23, disposition of the action would impair FDIC-R's ability to protect its interests, despite SEC Receiver's belated concession that FDIC-R may foreclose on the Mortgaged

14

Properties. As described above, in SEC Receiver's view, the Orders force FDIC-R to obtain court permission for each of its actions. Under her reading, the injunctions against FDIC-R action stretch far beyond the Mortgaged Properties to prevent FDIC-R from conducting its usual investigation of a failed institution and pursuing claims against Defendants, the failed bank's directors and officers, and insurance policies. Moreover, SEC Receiver maintains that, despite its concession, FDIC-R cannot even foreclose on the Mortgaged Properties without this Court's authorization, thereby defeating Congress's intent, which was the basis of 12 U.S.C. §1821(j), to make liquidation of failed institutions more efficient.

Fourth, SEC Receiver and Defendants will not adequately represent FDIC-R's interest. SEC Receiver has specifically described how the parties' interests conflict in a number of circumstances. *See* Response at 23.

For the foregoing reasons, FDIC-R's Motion should be granted. FDIC-R respectfully requests that the Court recognize and uphold FDIC-R's mandatory, statutory duties as receiver of a failed financial institution and its contractual rights in FDIC-R Assets, and enable FDIC-R to protect its interests, as Congress intended, by clarifying and amending the Orders as set forth in the Proposed Order submitted with the Amended Memorandum.

Respectfully submitted this 21st day of February, 2013.

| | |
|---|---|
| MCGUIREWOODS LLP<br>Suite 2100, Promenade<br>1230 Peachtree Street NE<br>Atlanta, Georgia 30309<br>Telephone: (404)443-5500<br>Telecopier: (404)443-5599<br>rwaddell@mcguirewoods.com<br>lreinhold@mcguirewoods.com<br><br>Of counsel:<br>Ashley Doherty, Senior Counsel<br>Wendy Kloner, Counsel<br>Federal Deposit Insurance Corporation<br>Legal Division<br>3501 Fairfax Drive Room D-7118<br>Arlington, VA 22226<br>Telephone: (703) 562-2391<br>adoherty@fdic.gov<br>wkloner@fdic.gov | */s/ Robert J. Waddell, Jr.*<br>Robert J. Waddell, Jr.<br>Georgia Bar No. 729571<br>Laura E. Reinhold<br>Georgia Bar No. 584749<br><br>*Counsel to the Federal Deposit Insurance Corporation, as Receiver of Montgomery Bank & Trust* |

## CERTIFICATE OF SERVICE AND
## COMPLIANCE WITH LOCAL RULE 5.1

I hereby certify that I have filed the foregoing using the CM/ECF system, which will automatically send email notification of such filing to the following attorneys of record:

W. Shawn Murnahan
Madison Graham Loomis
Securities and Exchange Commission
950 East Paces Ferry Road, NE, Suite 900
Atlanta, GA 30326

John Michael Hamrick
Paul E. Vranicar
Holland & Knight LLP
One Atlantic Center
Suite 2000
1201 West Peachtree Street, N.E.
Atlanta, GA 30309-3238

Peter Muller
Goodman McGuffey Lindsey & Johnson, LLP
Suite 300
530 Stephenson Avenue
Savannah, GA 31405-5987

Kenneth Dante Murena
Damian & Valori LLP
Suite 1020
1000 Brickell Avenue
Miami, FL 33131

Michael J. Athans
Fields Howell Athans & McLaughlin, LLP
Suite 4600
191 Peachtree Street, NE
Atlanta, GA 30303

I hereby certify that I have served the foregoing by First Class U.S. Mail in an envelope with adequate postage affixed thereto upon the following:

Aubrey Lee Price
4616 Rainwood Circle
Valdosta, GA 31602

PFG, LLC
PFGBI, LLC
Montgomery Asset Management, LLC (Florida limited liability company)
Montgomery Asset Management, LLC (Georgia limited liability company)
c/o Kathryn Giardina
Robert E. L. Garner, Esq.
Haskell Slaughter Young & Rediker, LLC
2001 Park Place
Suite 1400
Birmingham, AL 35203

PFG, LLC
Corporate Secretary
255 Racetrack Road, Suite 2
McDonough, GA 30252

PFGBI, LLC
Corporate Secretary
255 Racetrack Road, Suite 2
McDonough, GA 30252

I hereby certify that this document was submitted in Times New Roman, 14 point font in compliance with Local Rule 5.1.

This 21st day of February, 2013.

*/s/ Robert J. Waddell, Jr.*
Robert J. Waddell, Jr.
Georgia Bar No. 729571

45962912_1.DOCX