IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | : <br> : <br> : |
| Plaintiff, | :Civil Action No. 1:12-cv-2296-TCB |
| v. | : <br> : |
| **AUBREY LEE PRICE;** <br> **PFG, LLC; PFGBI, LLC;** <br> **MONTGOMERY ASSET** <br> **MANAGEMENT, LLC f/k/a PFG** <br> **ASSET MANAGEMENT, LLC (Florida** <br> **limited liability company); and** <br> **MONTGOMERY ASSET** <br> **MANGEMENT, LLC  f/k/a PFG** <br> **ASSET MANAGEMENT,** <br> **LLC (Georgia limited liability company),** | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |
| Defendants. | : <br> : |
| _____/ | |

**RECEIVER'S EXPEDITED MOTION[1] TO APPROVE SALE OF PROPERTY OF THE ESTATE (3103 BAYSHORE GARDEN PARKWAY)**

Melanie E. Damian, Esq., as receiver (the "Receiver") of all assets of

---

[1] The Receiver respectfully requests that the Court consider this Motion on an expedited basis due to the unique circumstances underlying the proposed sale of the property that is the subject of this Motion.  In particular, as detailed below, the Receiver received two competing offers to purchase the property at or above fair market value.  Because neither offer is effective until it is approved by the Court, the Receiver is concerned that any delay in obtaining such approval could result in one or both of the offerors rescinding their respective offer and searching for another property.

Defendants Aubrey Lee Price, PFG, LLC, PFGBI, LLC, Montgomery Asset Management, LLC f/k/a PFG Asset Management, LLC (Florida), and Montgomery Asset Management, LLC f/k/a/ PFG Asset Management, LLC (Georgia) (collectively, the "Defendants"), through undersigned counsel, hereby files her Motion to Approve Sale of Property of the Estate (3103 Bayshore Garden Parkway), and in support states:

## BACKGROUND

1. This enforcement action commenced on July 2, 2012 with the filing of the Securities and Exchange Commission's ("SEC") Complaint against Defendants [D.E. 1], and the SEC's Emergency Motion for Temporary Restraining Order ("TRO") [D.E. 2]. That same day, this Court entered the TRO, ordering the freezing of Defendants' assets, prohibiting the destruction of documents and expediting discovery. [D.E. 3].

2. On July 13, 2012, the Court entered an Order Granting Preliminary Injunctions and Ordering Other Relief as to Defendants ("Injunction Order") [D.E. 14] against all named Defendants, which enjoined further securities violations and the use, and freezing of, all of Defendants' assets.

3. Subsequently, on August 10, 2012, this Court entered an Order Appointing Receiver ("Receivership Order") [D.E. 20], appointing Melanie E.

Damian, Esq. as Receiver of all assets of the Defendants. Pursuant to the Receivership Order, the Receiver is obligated to, among other things, "take custody, control, title, and possession of all Receivership Property and records relevant thereto from the Receivership Defendants[.]" *See* Receivership Order at §7(B).

4. Accordingly, the Receiver took immediate possession and control of, among other properties, certain real property located at 3103 Bayshore Garden Parkway, Bradenton, Florida, 34207 ("3103 Property"), which was owned by PFG, LLC, and all furnishings contained therein. The Receiver promptly conducted an inventory of the contents of the 3103 Property, researched the local real estate market, interviewed multiple brokers, and entered into a listing agreement with a reputable and experienced realtor to market the 3103 Property for sale.

5. Pursuant to the Receivership Order, the Receiver is authorized to locate, list for sale or lease, engage a broker for sale or lease, cause the sale or lease, and take all necessary and reasonable actions to cause the sale or lease of all real property in the Receivership Estate, either at a public or private sale, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such real property. *See* Receivership Order at § IX, ¶ 38.

6. After interviewing several qualified realtors, the Receiver selected Atchley International Realtors ("Atchley") to assist her in connection with the marketing and sale of the real properties of the Estate in or near Bradenton, Florida. Atchley has extensive experience in selling real estate throughout Florida's west coast, is familiar with the local real estate market and the community in which the 3103 Property is located, and has an impressive sales record within the area.

7. On September 18, 2012, the Receiver and Atchley entered into an exclusive listing agreement for the 3103 Property, which provided, among other things, the commission structure for Atchley and the buyer's broker involved in the sale of Unit 120. In particular, in the event that the buyer is introduced to Atchley through an independent broker, each broker would be entitled to receive the following commission (as a percentage of the purchase price) as full compensation for services performed in connection with the sale of Unit 120: 2% to Atchley; 3% to the buyer's broker.

8. Further, after considering a number of real estate transaction law firms to assist the Receiver in connection with the closing and transactional matters related to the sale of the real property of the Estate, the Receiver selected Petitt Worrell Craine Wolfe LLC and sought Court approval to employ that firm. On

September 4, 2012, this Court approved the Receiver's employment of Petitt Worrell Craine Wolfe LLC.

## FACTUAL BASIS FOR REQUESTED RELIEF

9. After conducting extensive market research, with the assistance of her real estate broker, the Receiver originally set the asking price for the 3103 Property at $135,000.00, and Atchley began aggressively marketing the 3103 Property to prospective purchasers. After marketing the property for 6 months, Atchley had not received an offer in excess of $90,000.00 for the 3103 Property. Thereafter, Atchley performed another market analysis and recommended to the Receiver that the listing price be reduced to $125,000.00, which the Receiver agreed to do. In May 2013, Atchley received an offer to purchase the 3103 Property for $100,000.00 from Robyn Truman (the "First Offeror").

10. The Receiver rejected the original offer and, following many negotiations, the First Offeror, in response to counteroffers by the Receiver, incrementally raised her offer from to $107,000, and then to $110,000, and finally, on May 23, 2013, to $115,000. *See* First Offeror's Contract attached hereto as **Exhibit A**. On May 24, 2013, the Receiver and her real estate counsel reviewed the First Offeror's last offer, and submitted a counteroffer with additional terms, including a provision stating that the contract was subject to this Court's final

approval. The counter-offer was valid for a period of two (2) days, which due to the Memorial Day weekend expired on May 28, 2013.

11. It appears the contract setting forth the counteroffer, however, was mistakenly forwarded to the First Offeror with the instruction that the First Offeror only had to sign the last page, which was the Lead Based Paint addendum (the "LBP Addendum"), when in fact the First Offeror was required to execute multiple changes proposed by the counter-offer to constitute formal acceptance of the contract. On May 27, 2013, the First Offeror submitted the executed LBP Addendum (but not the contract) to Atchley.

12. That same day, on May 27, 2013, Atchley received an offer to purchase the 3103 Property for $121,000.00 from Herb Laynd and Sandra Plaugher (the "Second Offeror").

13. On May 28, 2013, because the First Offeror had not fully executed the contract setting forth the Receiver's counteroffer, the Receiver's real estate counsel rescinded the Receiver's counteroffer. *See* E-mail from Michael Brooks attached hereto as **Exhibit B**.

14. Shortly thereafter, the First Offeror executed the contract setting forth the counteroffer and submitted it to the Receiver's real estate counsel in response to counsel's rescission e-mail.

15. Because of the competing offers, the Receiver, her counsel, and her real estate counsel conferred and determined that, in light of the circumstances surrounding the execution of the counteroffer and the interceding higher offer, and to ensure a fair and equitable bidding process, each offeror should submit its highest and best offer by May 31, 2013, and the Receiver would present both offers to the court with a recommendation as to which the Receiver believed would be most beneficial to the Estate and thus should be approved by the Court.

16. The First Offeror elected not to submit an offer higher than her $115,000.00 offer and, on May 30, 2013, the Second Offeror submitted an offer of $135,000.000 ($10,000.00 more than the original list price). *See* Second Offeror's Executed Contract attached hereto as **Exhibit C**.

17. The Receiver and Atchley have conducted and prepared a cost market analysis of comparable properties that have sold in 2011 and 2012 (the "Market Analysis"), a copy of which is attached hereto as **Exhibit D**. In particular, the Market Analysis reveals the sales history of comparable properties in the area, as well as current listings. Based on this Market Analysis, the Receiver believes that the Second Offeror's offer presents, and exceeds, a fair price for the purchase of the 3103 Property. The offer submitted by the First Offeror also presents a fair purchase price for the 3103 Property, but does not exceed it. Indeed, Aubrey Lee

Price had purchased the 3103 Property on March 23, 2007 for $165,000, and the Market Analysis indicates that the current market value of the 3103 Property is currently between $100,000.00 and $130,000.00.

18. Given that the Second Offeror's offer is $20,000.00 more than the First Offeror's offer, and is $10,000.00 more than the current list price and is $5,000 above the high end of the fair market value range for the property, the Receiver believes that the Second Offeror's offer is the highest and best offer that she will receive in the next 6-12 months given that the real estate market is particularly weak for properties in the neighborhood and compared to adjacent neighborhoods, and the 3103 Property is not in optimal condition. Therefore, believing that selling the 3103 Property pursuant to the Second Offeror's offer would be in the best interest of the Estate, the Receiver seeks Court approval to sell the 3103 Property for $135,000 in accordance with the terms set forth in the purchase agreement, attached hereto as Exhibit C. Because there is always the possibility that the sale to the Second Offeror does not close, the Receiver also seeks court approval to sell the 3103 Property to the First Offeror for $115,000 as a back-up so that the Receiver need not incur further expenses to continue marketing the property and seeking court approval for a sale at the same or substantially similar purchase price.

## LEGAL BASIS FOR RELIEF

19.     Judicial sales of real property such as the sale of the 3103 Property are governed by 28 U.S.C. § 2001.  Pursuant to subsection (b) of that statute, a receiver may conduct a judicial sale of real property as a private sale subject to court approval after notice to all interested parties and hearing.[2]  This Court has authority to approve a private sale of real property, and has significant discretion in setting the terms and conditions for such sale, provided that the Court believes the sale is in the best interest of the Estate.  *See U.S. v. Coal Branch Corp.*, 390 F.2d 7, 9-10 (E.D. Pa. 1968) ("There can be no doubt that Congress has authorized the federal judiciary to use sound discretion in setting the terms and conditions for judicial sales.").  The *Branch Coal* case also provides that "[i]t is a well settled rule that, except in cases of abuse, appellate courts will not disturb the exercise of a district court's discretion in setting the terms and conditions for a judicial sale and the confirmation thereof."  *See id*.  Further, the Court can waive the specific requirements of 28 U.S.C. § 2001 where it believes that the receiver has substantially complied with the requirements of the statute in connection with the

---

[2] 28 U.S.C. § 2001 (b) provides in pertinent part:

> After a hearing, of which notice to all interested parties shall be given by publication or otherwise as the court directs, the court may order the sale of such realty or interest or any part thereof at private sale for cash or other consideration and upon such terms and conditions as the court approves, if it finds that the best interests of the estate will be conserved thereby.

9

sale of real property. *See SEC v. Kirkland*, 2009 WL 1439087 *2 (M.D. Fla. May 22, 2009) (the district court waived certain requirements of 28 U.S.C. § 2001 where it believed that the receiver had substantially complied with the requirements of the statute in the sale of real property).

20. Moreover, the Receiver believes that her engagement of an experienced real estate broker, the significant efforts made to market the listing of the 3103 Property for more than eight (8) months including, without limitation, listing the 3103 Property in the Multiple Listing Service and aggressively marketing the 3103 Property to qualified potential purchasers, performing an extensive analysis of the real estate market, including comparable sales, and obtaining an offer above fair market value, exceed the requirements of 28 U.S.C. § 2001, which require three appraisals and publication of the proposed sale of the 3103 Property for 10 days. *See S.E.C. v. Billion Coupons, Inc.*, 2009 WL 2143531, *3 (D. Haw. July 13, 2009) (finding good cause in deviating from the requirements of 28 U.S.C. § 2001 for proposed sale of real property where Receiver would retain services of licensed real estate broker, list the property in the multiple listing service, and advertise the property for its sale). The Receiver believes waiving the requirements of three appraisals and publishing the proposed sale in light of the

costs associated therewith, is particularly appropriate here based on the offers received and the current market value of the 3103 Property.

21. Accordingly, the Receiver respectfully requests that the Court exercise its discretion to approve the sale of the 3103 Property under the terms of either offer this Court determines to be more beneficial to the Estate, pursuant to 28 U.S.C. § 2001 and applicable case law.

## CERTIFICATION

22. The Receiver hereby certifies that she has conferred with the Securities and Exchange Commission's staff, and the Commission's staff does not oppose the relief requested in this Motion.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the Receiver respectfully requests that the Court enter the proposed order, attached hereto as **Exhibit E**, approving the sale of the 3103 Property, and authorizing the Receiver to sell the 3103 Property to the Second Offeror in accordance with the terms and conditions set forth in the contract attached as Exhibit C, but, in the event that such sale cannot be not completed, authorize the Receiver to sell the 3103 Property to the First Offeror in accordance with the terms and conditions set forth in the contract attached as

Exhibit A, and grant such other and further relief as the Court deems just and proper.

Respectfully submitted this 12th day of June, 2013.

        DAMIAN & VALORI LLP
*Counsel for the Receiver*
1000 Brickell Avenue, Suite 1020
Miami, Florida 33131
Telephone: 305-371-3960
Facsimile: 305-371-3965

/s/ Kenneth Dante Murena
Kenneth Dante Murena, P.A.
Florida Bar No. 147486
*Admitted Pro Hac Vice*

HOLLAND & KNIGHT LLP
/s/ John M. Hamrick
John M. Hamrick
Georgia Bar No. 322079
1201 West Peachtree Street, N.E. Suite 2000
Atlanta, Georgia 30309-3453
(404) 817-8500
(404) 881-0470 (fax)
john.hamrick@hklaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on this 13th day of June, 2013, I electronically filed with the Clerk of Court using the CM/ECF system this Receiver's Motion to Approve Sale of Property of the Estate, which will forward a copy upon all counsel of record.

/s/ Kenneth Dante Murena
Kenneth Dante Murena, P.A.
Florida Bar No. 147486
*Admitted Pro Hac Vice*
DAMIAN & VALORI LLP
*Counsel for the Receiver*
1000 Brickell Avenue, Suite 1020
Miami, Florida 33131
Telephone: 305-371-3960
Facsimile: 305-371-3965

HOLLAND & KNIGHT LLP
/s/ John M. Hamrick
John M. Hamrick
Georgia Bar No. 322079
Suite 2000, One Atlantic Center
1201 West Peachtree Street, N.E.
Atlanta, Georgia 30309-3453
(404) 817-8500
(404) 881-0470 (fax)

## SERVICE LIST

W. Shawn Murnahan, Esq.
  Email: murnahanw@sec.gov
Elizabeth Skola, Esq.
  Email: skolae@sec.gov
Securities and Exchange Commission
950 East Paces Ferry Road, N.E., Ste. 900
Atlanta, GA 30326
*Via CM/ECF*

Robert J. Waddell, Jr., Esq.
*Counsel for FDIC*
  Email: rwaddell@mcguirewoods.com
Laura E. Reinhold, Esq.
  Email: lreinhold@mcguirewoods.com
McGuire Woods, LLP
Suite 2100, Promenade II
1230 Peachtree Street, NE
Atlanta, GA  30309
*Via CM/ECF*

Aubrey Lee Price
4616 Rainwood Circle
Valdosta, GA  31602
*Via U.S. Mail*

Kathryn Giardina
c/o Robert E.L. Garner, Esq.
  Email: relg@hsy.com
Haskell Slaughter Young & Rediker, LLC
2001 Park Place, Suite 1400
Birmingham, Alabama  35203
*Via E-Mail*

Michael J. Athans, Esq.
*Attorney for Evanston Insurance*
  Email: mathans@fieldshowell.com
191 Peachtree Street NE, Suite 4600
Atlanta, GA 30303
*Via CM/ECF*