# "AS IS" Residential Contract For Sale And Purchase
THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR



1. **PARTIES:** PFG,LLC/RECEIVERSHIP ("Seller"),
2. and ROBYN TRUMAN ("Buyer"),
3. agree that Seller shall sell and Buyer shall buy the following described Real Property and Personal
4. Property (collectively "Property") pursuant to the terms and conditions of this AS IS Residential Contract For Sale
5. And Purchase and any riders and addenda ("Contract"):
6. **1. PROPERTY DESCRIPTION:**
7. (a) Street address, city, zip: 3103 BAYSHORE GARDENS PKWY, BRADENTON FL 34207
8. (b) Property is located in: MANATEE County, Florida. Real Property Tax ID No: 6247400002
9. (c) Legal description of the Real Property: LOT 14 BLK D BAYSHORE GARDENS SEC NO 32 PI#62474.0000/2
10.
11. together with all existing improvements and fixtures, including built-in appliances, built-in furnishings and
12. attached wall-to-wall carpeting and flooring ("Real Property") unless specifically excluded below.
13. (d) Personal Property: The following items owned by Seller and existing on the Property as of the date
14. of the initial offer are included in the purchase ("Personal Property"): (i) range(s)/oven(s), dishwasher(s),
15. disposal, ceiling fan(s), intercom, light fixtures, rods, draperies and other window treatments, garage door
16. openers, and security gate and other access devices; and (ii) those additional items checked below. If
17. additional details are necessary, specify below. **If left blank, the item below is not included:**

[x] Refrigerator(s)   [ ] Smoke detector(s)   [x] Pool barrier/fence   [x] Storage shed
[ ] Microwave oven   [x] Security system    [x] Pool equipment       [x] TV antenna/satellite dish
[x] Washer           [ ] Window/wall a/c    [ ] Pool heater          [ ] Water softener/purifier
[x] Dryer            [ ] Generator          [ ] Spa or hot tub with heater   [ ] Storm shutters and panels
[ ] Stand-alone ice maker                   [ ] Above ground pool

18. The only other items of Personal Property included in this purchase, and any additional details regarding
19. Personal Property, if necessary, are: RANGE, CEILING FANS
20.
21. Personal Property is included in the Purchase Price, has no contributory value, and shall be left for the Buyer.
22. (e) The following items are excluded from the purchase: _____
23.

24. **2. PURCHASE PRICE** (U.S. currency): .................................................................... $ 115000

25. (a) Initial deposit to be held in escrow in the amount of **(checks subject to COLLECTION)** $ 5350
26. The initial deposit made payable and delivered to "Escrow Agent" named below
27. **(CHECK ONE):** [ ] accompanies offer or [ ] is to be made upon acceptance (Effective
28. Date) or [x] is to be made within _____ (if blank, then 3) days after Effective Date
29. Escrow Agent Information: Name: PETITT WORRELL LAW FIRM
30. Address: 4830 W. KENNEDY BLVD #475, TAMPA FL 33609   Phone: 813-443-5345
31. E-mail: michael@petittworrell.com   Fax: 813-443-8331
32. (b) Additional deposit to be delivered to Escrow Agent within _____ (if blank, then 3)
33. days after Effective Date............................................................................................... $
34. (All deposits paid or agreed to be paid, are collectively referred to as the "Deposit")
35. (c) Financing: Express as a dollar amount or percentage ("Loan Amount") see Paragraph 8... $ 80%
36. (d) Other: _____ ........ $
37. (e) Balance to close (not including Buyer's closing costs, prepaids and prorations) by wire
38. transfer or other **COLLECTED** funds............................................................................... $ BALANCE
39. NOTE: For the definition of "COLLECTION" or "COLLECTED" see STANDARD S.

40. **3. TIME FOR ACCEPTANCE OF OFFER AND COUNTER-OFFERS; EFFECTIVE DATE:**
41. (a) If not signed by Buyer and Seller, and an executed copy delivered to all parties on or before May 27
42. 2013 , this offer shall be deemed withdrawn and the Deposit, if any, will be returned to Buyer.
43. Unless otherwise stated, time for acceptance of any counter-offers shall be within 2 days after the day the
44. counter-offer is delivered.
45. (b) The effective date of this Contract will be the date when the last one of the Buyer and Seller has signed or
46. initialed this offer or final counter-offer ("Effective Date").

47. **4. CLOSING DATE:** Unless modified by other provisions of this Contract, the closing of this transaction shall occur
and the closing documents required to be furnished by each party pursuant to this Contract shall be delivered
("Closir─DS ~~JUNXXNXXXXX~~ ("Closing Date"), at the time established by the Closing Agent.
See Exhibit A

Buyer's Initials RT / ____   Page 1 of 10   Seller's Initials ____ / ____

Realtors/Floridabar-ASIS-1 Rev. 6/10 © 2010 Florida Realtors® and The Florida Bar. All rights reserved.

048188-800136-9332478

5. **EXTENSION OF CLOSING DATE:**
   (a) If Closing funds from Buyer's lender(s) are not available at time of Closing due to Truth In Lending Act (TILA) notice requirements, Closing shall be extended for such period necessary to satisfy TILA notice requirements, not to exceed 7 days.
   (b) If extreme weather or other condition or event constituting "Force Majeure" (see STANDARD G) causes: (i) disruption of utilities or other services essential for Closing, or (ii) Hazard, Wind, Flood or Homeowners' insurance, to become unavailable prior to Closing, Closing will be extended a reasonable time up to 3 days after restoration of utilities and other services essential to Closing, and availability of applicable Hazard, Wind, Flood or Homeowners' insurance. If restoration of such utilities or services and availability of insurance has not occurred within _____ (if left blank, 14) days after Closing Date, then either party may terminate this Contract by delivering written notice to the other party, and Buyer shall be refunded the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract.

6. **OCCUPANCY AND POSSESSION:** Unless otherwise stated herein, Seller shall at Closing, have removed all personal items and trash from the Property and shall deliver occupancy and possession, along with all keys, garage door openers, access devices and codes, as applicable, to Buyer. If Property is intended to be rented or occupied beyond Closing, the fact and terms thereof and the tenant(s) or occupants shall be disclosed pursuant to STANDARD D. If occupancy is to be delivered before Closing, Buyer assumes all risks of loss to Property from date of occupancy, shall be responsible and liable for maintenance from that date, and shall be deemed to have accepted Property in its existing condition as of time of taking occupancy.

7. **ASSIGNABILITY: (CHECK ONE)** Buyer ☐ may assign and thereby be released from any further liability under this Contract; ☐ may assign but not be released from liability under this Contract; or ☒ may not assign this Contract.

**FINANCING**

8. **FINANCING:**
   ☐ (a) Buyer will pay cash or may obtain a loan for the purchase of the Property. There is no financing contingency to Buyer's obligation to close.
   ☒ (b) This Contract is contingent upon Buyer obtaining a written loan commitment for a ☒ conventional ☐ FHA ☐ VA loan on the following terms within _____ (if blank, then 30) days after Effective Date ("Loan Commitment Date") for: **(CHECK ONE):** ☒ fixed, ☐ adjustable, ☐ fixed or adjustable rate loan in the principal amount of $_____ or __80__% of the Purchase Price, at an initial interest rate not to exceed _____% (if blank, then prevailing rate based upon Buyer's creditworthiness), and for a term of _____ years ("Financing").

   Buyer will make mortgage loan application for the Financing within _____ (if blank, then 5) days after Effective Date and use good faith and diligent effort to obtain a written loan commitment for the Financing ("Loan Commitment") and close this Contract. Buyer shall keep Seller and Broker fully informed about the status of mortgage loan application and Loan Commitment and authorizes Buyer's mortgage broker and Buyer's lender to disclose such status and progress to Seller and Broker.

   If Buyer does not receive Loan Commitment, then Buyer may terminate this Contract by delivering written notice to Seller, and the Deposit shall be refunded to Buyer, thereby releasing Buyer and Seller from all further obligations under this Contract.

   If Buyer does not deliver written notice to Seller of receipt of Loan Commitment or Buyer's written waiver of this financing contingency, then after Loan Commitment Date Seller may terminate this Contract by delivering written notice to Buyer and the Deposit shall be refunded to Buyer, thereby releasing Buyer and Seller from all further obligations under this Contract.

   If Buyer delivers written notice of receipt of Loan Commitment to Seller and this Contract does not thereafter close, the Deposit shall be paid to Seller unless failure to close is due to: (1) Seller's default; (2) Property related conditions of the Loan Commitment have not been met (except when such conditions are waived by other provisions of this Contract); (3) appraisal of the Property obtained by Buyer's lender is insufficient to meet terms of the Loan Commitment; or (4) the loan is not funded due to financial failure of Buyer's lender, in which event(s) the Deposit shall be returned to Buyer, thereby releasing Buyer and Seller from all further obligations under this Contract.
   ☐ (c) Assumption of existing mortgage (see rider for terms).
   ☐ (d) Purchase money note and mortgage to Seller (see riders; addenda; or special clauses for terms).

Buyer's Initials [RT]          Page 2 of 10          Seller's Initials [initials]
FloridaRealtors/FloridaBar-ASIS-1   Rev. 6/10 © 2010 Florida Realtors® and The Florida Bar. All rights reserved.

Serial#. 048188-800136-9332478

## CLOSING COSTS, FEES AND CHARGES

**9. CLOSING COSTS; TITLE INSURANCE; SURVEY; HOME WARRANTY; SPECIAL ASSESSMENTS:**

(a) **COSTS TO BE PAID BY SELLER:**
- Documentary stamp taxes and surtax on deed, if any
- Owner's Policy and Charges (if Paragraph 9(c)(i) is checked)
- Title search charges (if Paragraph 9(c)(iii) is checked)
- Other: _____
- HOA/Condominium Association estoppel fees
- Recording and other fees needed to cure title
- Seller's attorneys' fees

If, prior to Closing, Seller is unable to meet the AS IS Maintenance Requirement as required by Paragraph 11 a sum equal to 125% of estimated cost to meet the AS IS Maintenance Requirement shall be escrowed at Closing. If actual costs to meet the AS IS Maintenance Requirement exceed escrowed amount, Seller shall pay such actual costs. Any unused portion of escrowed amount shall be returned to Seller.

(b) **COSTS TO BE PAID BY BUYER:**
- Taxes and recording fees on notes and mortgages
- Recording fees for deed and financing statements
- Owner's Policy and Charges (if Paragraph 9(c)(ii) is checked)
- Survey (and elevation certification, if required)
- Lender's title policy and endorsements
- HOA/Condominium Association application/transfer fees
- Other: _____
- Loan expenses
- Appraisal fees
- Buyer's Inspections
- Buyer's attorneys' fees
- All property related insurance

(c) **TITLE EVIDENCE AND INSURANCE:** At least _____ (if blank, then 5) days prior to Closing Date, a title insurance commitment issued by a Florida licensed title insurer, with legible copies of instruments listed as exceptions attached thereto ("Title Commitment") and, after Closing, an owner's policy of title insurance (see STANDARD A for terms) shall be obtained and delivered to Buyer. If Seller has an owner's policy of title insurance covering the Real Property, a copy shall be furnished to Buyer and Closing Agent within 5 days after Effective Date. The owner's title policy premium and charges for owner's policy endorsements, title search, and closing services (collectively, "Owner's Policy and Charges") shall be paid, as set forth below (**CHECK ONE**):

☒ (i) Seller will designate Closing Agent and pay for Owner's Policy and Charges (but not including charges for closing services related to Buyer's lender's policy and endorsements and loan closing, which amounts shall be paid by Buyer to Closing Agent or such other provider(s) as Buyer may select); or

☐ (ii) Buyer will designate Closing Agent and pay for Owner's Policy and Charges and charges for closing services related to Buyer's lender's policy, endorsements, and loan closing; or

☐ (iii) **[MIAMI-DADE/BROWARD REGIONAL PROVISION]**: Seller will furnish a copy of a prior owner's policy of title insurance or other evidence of title and pay fees for: (A) a continuation or update of such title evidence, which is acceptable to Buyer's title insurance underwriter for reissue of coverage; (B) tax search; and (C) municipal lien search. Buyer shall obtain and pay for post-Closing continuation and premium for Buyer's owner's policy, and if applicable, Buyer's lender's policy. Seller shall not be obligated to pay more than $_____ (if blank, $200.00) for abstract continuation or title search ordered or performed by Closing Agent.

(d) **SURVEY:** At least 5 days prior to Closing, Buyer may, at Buyer's expense, have the Real Property surveyed and certified by a registered Florida surveyor ("Survey"). If Seller has a survey covering the Real Property, a copy shall be furnished to Buyer and Closing Agent within 5 days after Effective Date.

(e) **HOME WARRANTY:** At Closing, ☐ Buyer ☐ Seller ☒ N/A will pay for a home warranty plan issued by _____ at a cost not to exceed $_____. A home warranty plan provides for repair or replacement of many of a home's mechanical systems and major built-in appliances in the event of breakdown due to normal wear and tear during the agreement's warranty period.

(f) **SPECIAL ASSESSMENTS:** At Closing, Seller will pay: (i) the full amount of liens imposed by a public body ("public body" does not include a Condominium or Homeowner's Association) that are certified, confirmed and ratified before Closing; and (ii) the amount of the public body's most recent estimate or assessment for an improvement which is substantially complete as of Effective Date, but that has not resulted in a lien being imposed on the Property before Closing. Buyer will pay all other assessments. **If special assessments may be paid in installments (CHECK ONE):**

☒ (a) Seller shall pay installments due prior to Closing and Buyer shall pay installments due after Closing. Installments prepaid or due for the year of Closing shall be prorated.

~~☐ (b) Seller shall pay the assessment(s) in full prior to or at the time of Closing.~~

**IF NEITHER BOX IS CHECKED, THEN OPTION (a) SHALL BE DEEMED SELECTED.**

This Paragraph 9(f) shall not apply to a special benefit tax lien imposed by a community development district (CDD) pursuant to Chapter 190 F.S. which lien shall be treated as an ad valorem tax and prorated pursuant to STANDARD K.

Buyer's Initials [RT]   Page 3 of 10   Seller's Initials [ml]
FloridaRealtors/FloridaBar-ASIS-1 Rev. 6/10 © 2010 Florida Realtors® and The Florida Bar. All rights reserved.

Serial#: 048188-800136-9332478

## DISCLOSURES

**10. DISCLOSURES:**

(a) **RADON GAS:** Radon is a naturally occurring radioactive gas that, when it is accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county health department.

(b) **PERMITS DISCLOSURE: Except as may have been disclosed by Seller to Buyer in a written disclosure, Seller does not know of any improvements made to the Property which were made without required permits or made pursuant to permits which have not been properly closed.**

(c) **MOLD:** Mold is naturally occurring and may cause health risks or damage to property. If Buyer is concerned or desires additional information regarding mold, Buyer should contact an appropriate professional.

(d) **FLOOD ZONE; ELEVATION CERTIFICATION:** Buyer is advised to verify by elevation certificate which flood zone the Property is in, whether flood insurance is required by Buyer's lender, and what restrictions apply to improving the Property and rebuilding in the event of casualty. If Property is in a "Special Flood Hazard Area" or "Coastal High Hazard Area" and finished floor elevation is below minimum flood elevation, Buyer may terminate this Contract by delivering written notice to Seller within 20 days after Effective Date, failing which Buyer accepts existing elevation of buildings and flood zone designation of Property.

(e) **ENERGY BROCHURE:** Buyer acknowledges receipt of Florida Energy-Efficiency Rating Information Brochure required by Section 553.996, F.S.

(f) **LEAD-BASED PAINT:** If Property includes pre-1978 residential housing, a lead-based paint rider is mandatory.

(g) **HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE: BUYER SHOULD NOT EXECUTE THIS CONTRACT UNTIL BUYER HAS RECEIVED AND READ THE HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE, IF APPLICABLE.**

(h) **PROPERTY TAX DISCLOSURE SUMMARY:** BUYER SHOULD NOT RELY ON THE SELLER'S CURRENT PROPERTY TAXES AS THE AMOUNT OF PROPERTY TAXES THAT THE BUYER MAY BE OBLIGATED TO PAY IN THE YEAR SUBSEQUENT TO PURCHASE. A CHANGE OF OWNERSHIP OR PROPERTY IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE PROPERTY THAT COULD RESULT IN HIGHER PROPERTY TAXES. IF YOU HAVE ANY QUESTIONS CONCERNING VALUATION, CONTACT THE COUNTY PROPERTY APPRAISER'S OFFICE FOR INFORMATION.

(i) **TAX WITHHOLDING:** If Seller is a "foreign person" as defined by the Foreign Investment in Real Property Tax Act ("FIRPTA"), Buyer and Seller will comply with FIRPTA, which may require Seller to provide additional cash at Closing.

(j) **SELLER DISCLOSURE:** Seller knows of no facts materially affecting the value of the Real Property which are not readily observable and which have not been disclosed to Buyer. Except as stated in the preceding sentence or otherwise disclosed in writing: (1) Seller has received no written or verbal notice from any governmental entity or agency as to a currently uncorrected building, environmental or safety code violation; and (2) Seller extends and intends no warranty and makes no representation of any type, either express or implied, as to the physical condition or history of the Property.

## PROPERTY MAINTENANCE, CONDITION, INSPECTIONS AND EXAMINATIONS

**11. PROPERTY MAINTENANCE:** Except for ordinary wear and tear and Casualty Loss, Seller shall maintain the Property, including, but not limited to, lawn, shrubbery, and pool, in the condition existing as of Effective Date ("AS IS Maintenance Requirement").

**12. PROPERTY INSPECTION; RIGHT TO CANCEL:**

(a) *PROPERTY INSPECTIONS AND RIGHT TO CANCEL: Buyer shall have __15__ (if blank, 15) days from Effective Date ("Inspection Period") within which to have such inspections of the Property performed as Buyer shall desire during the Inspection Period. If Buyer determines, in Buyer's sole discretion, that the Property is not acceptable to Buyer, Buyer may terminate this Contract by delivering written notice of such election to Seller prior to expiration of Inspection Period. If Buyer timely terminates this Contract, the Deposit paid shall be immediately returned to Buyer, thereupon, Buyer and Seller shall be released of all further obligations under this Contract; however, Buyer shall be responsible for prompt payment for such inspections, for repair of damage to, and restoration of, the Property resulting from such inspections, and shall provide Seller with paid receipts for all work done on the Property (the preceding provision shall survive termination of this Contract). Unless Buyer exercises the right to terminate granted herein, Buyer accepts the physical condition of the Property and any violation of governmental, building, environmental, and safety codes, restrictions, or requirements, but subject to Seller's continuing AS IS Maintenance Requirement, and Buyer shall be responsible for any and all repairs and improvements required by Buyer's lender.*

Buyer's Initials [RT] _____  Page 4 of 10  Seller's Initials [mll] _____
FloridaRealtors/Flori_____ SIS-1 Rev. 6/10 © 2010 Florida Realtors® and The Florida Bar. All rights reserved.

Serial#: 048188-800136-9332478

DocuSign Envelope ID: 7A1D53D4-79C0-4651-A896-130EC0211103

(b) **WALK-THROUGH INSPECTION/RE-INSPECTION:** On the day prior to Closing Date, or on Closing Date prior to time of Closing, as specified by Buyer, Buyer or Buyer's representative may perform a walk-through (and follow-up walk-through, if necessary) inspection of the Property solely to confirm that all items of Personal Property are on the Property and to verify that Seller has maintained the Property as required by the AS IS Maintenance Requirement and has met all other contractual obligations.

(c) **SELLER ASSISTANCE AND COOPERATION IN CLOSE-OUT OF BUILDING PERMITS:** If Buyer's inspection of the Property identifies open or needed building permits, then Seller shall promptly deliver to Buyer all plans, written documentation or other information in Seller's possession, knowledge, or control relating to improvements to the Property which are the subject of such open or needed Permits, and shall promptly cooperate in good faith with Buyer's efforts to obtain estimates of repairs or other work necessary to resolve such Permit issues. Seller's obligation to cooperate shall include Seller's execution of necessary authorizations, consents, or other documents necessary for Buyer to conduct inspections and have estimates of such repairs or work prepared, but in fulfilling such obligation, Seller shall not be required to expend, or become obligated to expend, any money.

(d) **ASSIGNMENT OF REPAIR AND TREATMENT CONTRACTS AND WARRANTIES:** At Buyer's option and cost, Seller will, at Closing, assign all assignable repair, treatment and maintenance contracts and warranties to Buyer.

### ESCROW AGENT AND BROKER

13. **ESCROW AGENT:** Any Closing Agent or Escrow Agent (collectively "Agent") receiving the Deposit, other funds and other items is authorized, and agrees by acceptance of them, to deposit them promptly, hold same in escrow within the State of Florida and, subject to **COLLECTION**, disburse them in accordance with terms and conditions of this Contract. Failure of funds to become **COLLECTED** shall not excuse Buyer's performance. When conflicting demands for the Deposit are received, or Agent has a good faith doubt as to entitlement to the Deposit, Agent may take such actions permitted by this Paragraph 13, as Agent deems advisable. If in doubt as to Agent's duties or liabilities under this Contract, Agent may, at Agent's option, continue to hold the subject matter of the escrow until the parties agree to its disbursement or until a final judgment of a court of competent jurisdiction shall determine the rights of the parties, or Agent may deposit same with the clerk of the circuit court having jurisdiction of the dispute. An attorney who represents a party and also acts as Agent may represent such party in such action. Upon notifying all parties concerned of such action, all liability on the part of Agent shall fully terminate, except to the extent of accounting for any items previously delivered out of escrow. If a licensed real estate broker, Agent will comply with provisions of Chapter 475, F.S., as amended and FREC rules to timely resolve escrow disputes through mediation, arbitration, interpleader or an escrow disbursement order. Any proceeding between Buyer and Seller wherein Agent is made a party because of acting as Agent hereunder, or in any proceeding where Agent interpleads the subject matter of the escrow, Agent shall recover reasonable attorney's fees and costs incurred, to be paid pursuant to court order out of the escrowed funds or equivalent. Agent shall not be liable to any party or person for mis-delivery of any escrowed items, unless such mis-delivery is due to Agent's willful breach of this Contract or Agent's gross negligence. This Paragraph 13 shall survive Closing or termination of this Contract.

14. **PROFESSIONAL ADVICE; BROKER LIABILITY:** Broker advises Buyer and Seller to verify Property condition, square footage, and all other facts and representations made pursuant to this Contract and to consult appropriate professionals for legal, tax, environmental, and other specialized advice concerning matters affecting the Property and the transaction contemplated by this Contract. Broker represents to Buyer that Broker does not reside on the Property and that all representations (oral, written or otherwise) by Broker are based on Seller representations or public records. **BUYER AGREES TO RELY SOLELY ON SELLER, PROFESSIONAL INSPECTORS AND GOVERNMENTAL AGENCIES FOR VERIFICATION OF PROPERTY CONDITION, SQUARE FOOTAGE AND FACTS THAT MATERIALLY AFFECT PROPERTY VALUE AND NOT ON THE REPRESENTATIONS (ORAL, WRITTEN OR OTHERWISE) OF BROKER.** Buyer and Seller (individually, the "Indemnifying Party") each individually indemnifies, holds harmless, and releases Broker and Broker's officers, directors, agents and employees from all liability for loss or damage, including all costs and expenses, and reasonable attorney's fees at all levels, suffered or incurred by Broker and Broker's officers, directors, agents and employees in connection with or arising from claims, demands or causes of action instituted by Buyer or Seller based on: (i) inaccuracy of information provided by the Indemnifying Party or from public records; (ii) Indemnifying Party's misstatement(s) or failure to perform contractual obligations; (iii) Broker's performance, at Indemnifying Party's request, of any task beyond the scope of services regulated by Chapter 475, F.S., as amended, including Broker's referral, recommendation or retention of any vendor for, or on behalf of, Indemnifying Party; (iv) products or services provided by any such vendor for, or on behalf of, Indemnifying Party; and (v) expenses incurred by any such vendor. Buyer and Seller each assumes full responsibility for selecting and compensating their respective vendors and paying their other costs under this Contract whether or not this transaction closes. This Paragraph 14 will not relieve Broker of statutory obligations under Chapter 475, F.S., as amended. For purposes of this Paragraph 14,

FloridaRealtors/Florid:  S-1  Rev. 6/10 © 2010 Florida Realtors® and The Florida Bar. All rights reserved.
Serial#: 048188-800136-9332478

Broker will be treated as a party to this Contract. This Paragraph 14 shall survive Closing or termination of this Contract.

## DEFAULT AND DISPUTE RESOLUTION

**15. DEFAULT:**

(a) **BUYER DEFAULT:** If Buyer fails, neglects or refuses to perform Buyer's obligations under this Contract, including payment of the Deposit, within the time(s) specified, Seller may elect to recover and retain the Deposit for the account of Seller as agreed upon liquidated damages, consideration for execution of this Contract, and in full settlement of any claims, whereupon Buyer and Seller shall be relieved from all further obligations under this Contract, or Seller, at Seller's option, may, pursuant to Paragraph 16, proceed in equity to enforce Seller's rights under this Contract. The portion of the Deposit, if any, paid to Listing Broker upon default by Buyer, shall be split equally between Listing Broker and Cooperating Broker; provided however, Cooperating Broker's share shall not be greater than the commission amount Listing Broker had agreed to pay to Cooperating Broker.

(b) **SELLER DEFAULT:** If for any reason other than failure of Seller to make Seller's title marketable after reasonable diligent effort, Seller fails, neglects or refuses to perform Seller's obligations under this Contract, Buyer may elect to receive return of Buyer's Deposit without thereby waiving any action for damages resulting from Seller's breach, and, pursuant to Paragraph 16, may seek to recover such damages or seek specific performance. This Paragraph 15 shall survive Closing or termination of this Contract.

**16. DISPUTE RESOLUTION:** Unresolved controversies, claims and other matters in question between Buyer and Seller arising out of, or relating to, this Contract or its breach, enforcement or interpretation ("Dispute") will be settled as follows:

(a) Buyer and Seller will have 10 days after the date conflicting demands for the Deposit are made to attempt to resolve such Dispute, failing which, Buyer and Seller shall submit such Dispute to mediation under Paragraph 16(b).

(b) Buyer and Seller shall attempt to settle Disputes in an amicable manner through mediation pursuant to Florida Rules for Certified and Court-Appointed Mediators and Chapter 44, F.S., as amended (the "Mediation Rules"). The mediator must be certified or must have experience in the real estate industry. Injunctive relief may be sought without first complying with this Paragraph 16(b). Disputes not settled pursuant to this Paragraph 16 may be resolved by instituting action in the appropriate court having jurisdiction of the matter. This Paragraph 16 shall survive Closing or termination of this Contract.

**17. ATTORNEY'S FEES; COSTS:** The parties will split equally any mediation fee incurred in any mediation permitted by this Contract, and each party will pay their own costs, expenses and fees, including attorney's fees, incurred in conducting the mediation. In any litigation permitted by this Contract, the prevailing party shall be entitled to recover from the non-prevailing party costs and fees, including reasonable attorney's fees, incurred in conducting the litigation. This Paragraph 17 shall survive Closing or termination of this Contract.

## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS")

**18. STANDARDS:**

**A. TITLE:**

(i) **TITLE EVIDENCE; RESTRICTIONS; EASEMENTS; LIMITATIONS:** Within the time period provided in Paragraph 9(c), the Title Commitment, with legible copies of instruments listed as exceptions attached thereto, shall be issued and delivered to Buyer. The Title Commitment shall set forth those matters to be discharged by Seller at or before Closing and shall provide that, upon recording of the deed to Buyer, an owner's policy of title insurance in the amount of the Purchase Price, shall be issued to Buyer insuring Buyer's marketable title to the Real Property, subject only to the following matters: (a) comprehensive land use plans, zoning, and other land use restrictions, prohibitions and requirements imposed by governmental authority; (b) restrictions and matters appearing on the Plat or otherwise common to the subdivision; (c) outstanding oil, gas and mineral rights of record without right of entry; (d) unplatted public utility easements of record (located contiguous to real property lines and not more than 10 feet in width as to rear or front lines and 7 1/2 feet in width as to side lines); (e) taxes for year of Closing and subsequent years; and (f) assumed mortgages and purchase money mortgages, if any (if additional items, attach addendum); provided, that none prevent use of the Property for **RESIDENTIAL PURPOSES**. If there exists at Closing any violation of items identified in (b) - (f) above, then the same shall be deemed a title defect. Marketable title shall be determined according to applicable Title Standards adopted by authority of The Florida Bar and in accordance with law.

(ii) **TITLE EXAMINATION:** Buyer shall have 5 days after receipt of Title Commitment to examine it and notify Seller in writing specifying defect(s), if any, that render title unmarketable. If Seller provides Title Commitment and it is delivered to Buyer less than 5 days prior to Closing Date, Buyer may extend Closing for up to 5 days after date of receipt to examine same in accordance with this STANDARD A. Seller shall have 30 days ("Cure Period") after receipt of Buyer's notice to take reasonable diligent efforts to remove defects. If Buyer fails to so notify Seller, Buyer shall be deemed to have accepted title as it then is. If Seller cures defects within Cure Period, Seller will

### STANDARDS FOR REAL ESTATE TRANSACTIONS (CONTINUED)

deliver written notice to Buyer (with proof of cure acceptable to Buyer and Buyer's attorney) and the parties will close this Contract on Closing Date (or if Closing Date has passed, within 10 days after Buyer's receipt of Seller's notice). If Seller is unable to cure defects within Cure Period, then Buyer may, within 5 days after expiration of Cure Period, deliver written notice to Seller: (a) extending Cure Period for a specified period not to exceed 120 days within which Seller shall continue to use reasonable diligent effort to remove or cure the defects ("Extended Cure Period"); or (b) electing to accept title with existing defects and close this Contract on Closing Date (or if Closing Date has passed, within the earlier of 10 days after end of Extended Cure Period or Buyer's receipt of Seller's notice), or (c) electing to terminate this Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract. If after reasonable diligent effort, Seller is unable to timely cure defects, and Buyer does not waive the defects, this Contract shall terminate, and Buyer shall receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract.

**B. SURVEY:** If Survey discloses encroachments on the Real Property or that improvements located thereon encroach on setback lines, easements, or lands of others; or violate any restrictions, covenants, or applicable governmental regulations described in STANDARD A (i)(a), (b) or (d) above, Buyer shall deliver written notice of such matters, together with a copy of Survey, to Seller within 5 days after Buyer's receipt of Survey, but no later than Closing. If Buyer timely delivers such notice and Survey to Seller, such matters identified in the notice and Survey shall constitute a title defect, subject to cure obligations of STANDARD A above. If Seller has delivered a prior survey, Seller shall, at Buyer's request, execute an affidavit of "no change" to the Real Property since the preparation of such prior survey, to the extent the affirmations therein are true and correct.

**C. INGRESS AND EGRESS:** Seller represents that there is ingress and egress to the Real Property and title to the Real Property is insurable in accordance with STANDARD A without exception for lack of legal right of access.

**D. LEASES:** Seller shall, within 5 days after Inspection Period, furnish to Buyer copies of all written leases and estoppel letters from each tenant specifying nature and duration of tenant's occupancy, rental rates, advanced rent and security deposits paid by tenant, and income and expense statements for preceding 12 months ("Lease Information"). If Seller is unable to obtain estoppel letters from tenant(s), the same information shall be furnished by Seller to Buyer within that time period in the form of a Seller's affidavit, and Buyer may thereafter contact tenant(s) to confirm such information. If terms of the lease(s) differ materially from Seller's representations, Buyer may deliver written notice to Seller within 5 days after receipt of Lease Information, but no later than 5 days prior to Closing Date, terminating this Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract. Seller shall, at Closing, deliver and assign all original leases to Buyer who shall assume Seller's obligation thereunder.

**E. LIENS:** Seller shall furnish to Buyer at Closing an affidavit attesting; (i) to the absence of any financing statement, claims of lien or potential lienors known to Seller, and (ii) that there have been no improvements or repairs to the Real Property for 90 days immediately preceding Closing Date. If the Real Property has been improved or repaired within that time, Seller shall deliver releases or waivers of construction liens executed by all general contractors, subcontractors, suppliers and materialmen in addition to Seller's lien affidavit setting forth names of all such general contractors, subcontractors, suppliers and materialmen, further affirming that all charges for improvements or repairs which could serve as a basis for a construction lien or a claim for damages have been paid or will be paid at Closing.

**F. TIME:** Calendar days shall be used in computing time periods. Any time periods provided for in this Contract which shall end on a Saturday, Sunday, or a national legal holiday (see 5 U.S.C. 6103) shall extend to 5:00 p.m. (where the Property is located) of the next business day. **Time is of the essence in this Contract.**

**G. FORCE MAJEURE:** Buyer or Seller shall not be required to perform any obligation under this Contract or be liable to each other for damages so long as performance or non-performance of the obligation is delayed, caused or prevented by Force Majeure. "Force Majeure" means: hurricanes, earthquakes, floods, fire, acts of God, unusual transportation delays, wars, insurrections, acts of terrorism, and any other cause not reasonably within control of Buyer or Seller, and which, by exercise of reasonable diligent effort, the non-performing party is unable in whole or in part to prevent or overcome. All time periods, including Closing Date, will be extended for the period that the Force Majeure prevents performance under this Contract, provided, however, if such Force Majeure continues to prevent performance under this Contract more than 14 days beyond Closing Date, then either party may terminate this Contract by delivering written notice to the other and the Deposit shall be refunded to Buyer, thereby releasing Buyer and Seller from all further obligations under this Contract.

**H. CONVEYANCE:** Seller shall convey marketable title to the Real Property by statutory warranty, trustee's, personal representative's, or guardian's deed, as appropriate to the status of Seller, subject only to matters described in STANDARD A and those accepted by Buyer. Personal Property shall, at request of Buyer, be transferred by absolute bill of sale with warranty of title, subject only to such matters as may be provided for in this Contract.

**I. CLOSING LOCATION; DOCUMENTS; AND PROCEDURE:**

(i) **LOCATION:** Closing will take place in the county where the Real Property is located at the office of the attorney or closing agent ("Closing Agent") designated by the party paying for the owner's policy of title

### STANDARDS FOR REAL ESTATE TRANSACTIONS (CONTINUED)

insurance, or, if no title insurance, designated by Seller. Closing may be conducted by mail or electronic means.

(ii) **CLOSING DOCUMENTS:** At Closing, Seller shall furnish and pay for, as applicable, deed, bill of sale, certificate of title, construction lien affidavit, owner's possession affidavit, assignments of leases, and corrective instruments. Seller shall provide Buyer with paid receipts for all work done on the Property pursuant to this Contract. Buyer shall furnish and pay for, as applicable, mortgage, mortgage note, security agreement, financing statements, survey, base elevation certification, and other documents required by Buyer's lender.

(iii) **PROCEDURE:** The deed shall be recorded upon **COLLECTION** of all closing funds. If the Title Commitment provides insurance against adverse matters pursuant to Section 627.7841, F.S., as amended, the escrow closing procedure required by STANDARD J shall be waived, and Closing Agent shall, **subject to COLLECTION of all closing funds**, disburse at Closing the brokerage fees to Broker and the net sale proceeds to Seller.

**J. ESCROW CLOSING PROCEDURE:** If Title Commitment issued pursuant to Paragraph 9(c) does not provide for insurance against adverse matters as permitted under Section 627.7841, F.S., as amended, the following escrow and closing procedures shall apply: (1) all Closing proceeds shall be held in escrow by the Closing Agent for a period of not more than 10 days after Closing; (2) if Seller's title is rendered unmarketable, through no fault of Buyer, Buyer shall, within the 10 day period, notify Seller in writing of the defect and Seller shall have 30 days from date of receipt of such notification to cure the defect; (3) if Seller fails to timely cure the defect, the Deposit and all Closing funds paid by Buyer shall, within 5 days after written demand by Buyer, be refunded to Buyer and, simultaneously with such repayment, Buyer shall return the Personal Property, vacate the Real Property and re-convey the Property to Seller by special warranty deed and bill of sale; and (4) if Buyer fails to make timely demand for refund of the Deposit, Buyer shall take title as is, waiving all rights against Seller as to any intervening defect except as may be available to Buyer by virtue of warranties contained in the deed or bill of sale.

**K. PRORATIONS; CREDITS:** The following recurring items will be made current (if applicable) and prorated as of the day prior to Closing Date, or date of occupancy if occupancy occurs before Closing Date: real estate taxes (including special benefit tax assessments imposed by a CDD), interest, bonds, association fees, insurance, rents and other expenses of Property. Buyer shall have option of taking over existing policies of insurance, if assumable, in which event premiums shall be prorated. Cash at Closing shall be increased or decreased as may be required by prorations to be made through day prior to Closing. Advance rent and security deposits, if any, will be credited to Buyer. Escrow deposits held by Seller's mortgagee will be paid to Seller. Taxes shall be prorated based on current year's tax with due allowance made for maximum allowable discount, homestead and other exemptions. If Closing occurs on a date when current year's millage is not fixed but current year's assessment is available, taxes will be prorated based upon such assessment and prior year's millage. If current year's assessment is not available, then taxes will be prorated on prior year's tax. If there are completed improvements on the Real Property by January 1st of year of Closing, which improvements were not in existence on January 1st of prior year, then taxes shall be prorated based upon prior year's millage and at an equitable assessment to be agreed upon between the parties, failing which, request shall be made to the County Property Appraiser for an informal assessment taking into account available exemptions. A tax proration based on an estimate shall, at either party's request, be readjusted upon receipt of current year's tax bill. This STANDARD K shall survive Closing.

**L. ACCESS TO PROPERTY TO CONDUCT APPRAISALS, INSPECTIONS, AND WALK-THROUGH:** Seller shall, upon reasonable notice, provide utilities service and access to Property for appraisals and inspections, including a walk-through (or follow-up walk-through if necessary) prior to Closing.

**M. RISK OF LOSS:** If, after Effective Date, but before Closing, Property is damaged by fire or other casualty ("Casualty Loss") and cost of restoration (which shall include cost of pruning or removing damaged trees) does not exceed 1.5% of Purchase Price, cost of restoration shall be an obligation of Seller and Closing shall proceed pursuant to terms of this Contract. If restoration is not completed as of Closing, a sum equal to 125% of estimated cost to complete restoration (not to exceed 1.5% of Purchase Price), will be escrowed at Closing. If actual cost of restoration exceeds escrowed amount, Seller shall pay such actual costs (but, not in excess of 1.5% of Purchase Price). Any unused portion of escrowed amount shall be returned to Seller. If cost of restoration exceeds 1.5% of Purchase Price, Buyer shall elect to either take Property "as is" together with the 1.5%, or receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract. Seller's sole obligation with respect to tree damage by casualty or other natural occurrence shall be cost of pruning or removal.

**N. 1031 EXCHANGE:** If either Seller or Buyer wish to enter into a like-kind exchange (either simultaneous with Closing or deferred) under Section 1031 of the Internal Revenue Code ("Exchange"), the other party shall cooperate in all reasonable respects to effectuate the Exchange, including execution of documents; provided, however, cooperating party shall incur no liability or expense related to the Exchange, and Closing shall not be contingent upon, nor extended or delayed by, such Exchange.

**O. CONTRACT NOT RECORDABLE; PERSONS BOUND; NOTICE; COPIES:** Neither this Contract nor any notice of it shall be recorded in any public records. This Contract shall be binding on, and inure to the benefit of, the parties and their respective heirs or successors in interest. Whenever the context permits, singular shall include plural

Buyer's Initials _RT_    Page 8 of 10    Seller's Initials _mll_
FloridaRealtors/FloridaBar-ASIS-1  Rev. 6/10 © 2010 Florida Realtors® and The Florida Bar. All rights reserved.

Serial#: 048188-800136-9332478

STANDARDS FOR REAL ESTATE TRANSACTIONS (CONTINUED)

and one gender shall include all. Notice and delivery given by or to the attorney or broker (including such broker's real estate licensee) representing any party shall be as effective as if given by or to that party. All notices must be in writing and may be made by mail, personal delivery or electronic (including "pdf") media. A legible facsimile or electronic (including "pdf") copy of this Contract and any signatures hereon shall be considered for all purposes as an original.

**P. INTEGRATION; MODIFICATION:** This Contract contains the full and complete understanding and agreement of Buyer and Seller with respect to the transaction contemplated by this Contract and no prior agreements or representations shall be binding upon Buyer or Seller unless included in this Contract. No modification to or change in this Contract shall be valid or binding upon Buyer or Seller unless in writing and executed by the parties intended to be bound by it.

**Q. WAIVER:** Failure of Buyer or Seller to insist on compliance with, or strict performance of, any provision of this Contract, or to take advantage of any right under this Contract, shall not constitute a waiver of other provisions or rights.

**R. RIDERS; ADDENDA; TYPEWRITTEN OR HANDWRITTEN PROVISIONS:** Riders, addenda, and typewritten or handwritten provisions shall control all printed provisions of this Contract in conflict with them.

**S. COLLECTION or COLLECTED: "COLLECTION" or "COLLECTED" means any checks tendered or received, including Deposits, have become actually and finally collected and deposited in the account of Escrow Agent or Closing Agent. Closing and disbursement of funds and delivery of Closing documents may be delayed by Closing Agent until such amounts have been COLLECTED in Closing Agent's accounts.**

**T. LOAN COMMITMENT:** "Loan Commitment" means a statement by the lender setting forth the terms and conditions upon which the lender is willing to make a particular mortgage loan to a particular borrower.

**U. APPLICABLE LAW AND VENUE:** This Contract shall be construed in accordance with the laws of the State of Florida and venue for resolution of all disputes, whether by mediation, arbitration or litigation, shall lie in the county in which the Real Property is located.

**X. BUYER WAIVER OF CLAIMS:** *Buyer waives any claims against Seller and, to the extent permitted by law, against any real estate licensee involved in the negotiation of this Contract, for any defects or other damage that may exist at Closing of this Contract and be subsequently discovered by the Buyer or anyone claiming by, through, under or against the Buyer.*

ADDENDA AND ADDITIONAL TERMS

**19. ADDENDA:** The following additional terms are included in the attached addenda and incorporated into this Contract (**Check if applicable**):

- ☐ A. Condominium Assn.
- ☐ B. Homeowners' Assn.
- ☐ C. Seller Financing
- ☐ D. Mortgage Assumption
- ☐ E. FHA/VA Financing
- ☐ F. Appraisal Contingency
- ☐ G. Short Sale
- ☐ H. Homeowners' Insurance
- ☐ I. FIRPTA
- ☐ J. Interest-Bearing Acct.
- ☐ K. RESERVED
- ☐ L. RESERVED
- ☐ M. Defective Drywall
- ☐ N. Coastal Construction Control Line
- ☐ O. Insulation Disclosure
- ☒ P. Pre-1978 Housing Statement (Lead Based Paint)
- ☐ Q. Housing for Older Persons
- ☐ R. Rezoning
- ☐ S. Lease Purchase/ Lease Option
- ☐ T. Pre-Closing Occupancy
- ☐ U. Post-Closing Occupancy
- ☐ V. Sale of Buyer's Property
- ☐ W. Back-up Contract
- ☐ X. Kick-out Clause
- ☐ Y. Seller's Attorney Approval
- ☐ Z. Buyer's Attorney Approval
- ☐ AA. Licensee-Personal Interest in Property
- ☐ BB. Binding Arbitration
- ☐ Other _____

**20. ADDITIONAL TERMS:** See Exhibit A

Buyer's Initials RT    Page 9 of 10    Seller's Initials *ml*
FloridaRealtors/FloridaBar-ASIS-1 Rev. 6/10 © 2010 Florida Realtors® and The Florida Bar. All rights reserved.

Serial#: 048188-800136-9332478

494                             **COUNTER-OFFER/REJECTION**
495· [X] Seller counters Buyer's offer (to accept the counter-offer, Buyer must sign or initial the counter-offered terms and
496  deliver a copy of the acceptance to Seller).
497· [ ] Seller rejects Buyer's offer.

498  **THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF NOT FULLY UNDERSTOOD, SEEK THE ADVICE**
499  **OF AN ATTORNEY PRIOR TO SIGNING.**

500  **THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR.**

501  *Approval of this form by the Florida Realtors and The Florida Bar does not constitute an opinion that any of the terms*
502  *and conditions in this Contract should be accepted by the parties in a particular transaction. Terms and conditions*
503  *should  be negotiated based upon the respective interests, objectives and bargaining positions of all interested*
504  *persons.*

505  AN ASTERISK (*) FOLLOWING A LINE NUMBER IN THE MARGIN INDICATES THE LINE CONTAINS A BLANK TO
506  BE COMPLETED.

507· Buyer: *Robyn Truman* (DocuSigned)              Date: 5/23/2013

508· Buyer: _____                    Date: _____

509· Seller: [signature]                                Date: 5/24/2012
     By: Melanie E. Damian, Esq, Receiver for PFG, LLC

510· Seller: _____                   Date: _____

511  Buyer's address for purposes of notice            Seller's address for purposes of notice
512· _____                  1000 Brickell Avenue    w: copy to Petitt Worrell Law Firm
513· _____                  Suite 1020
514· _____                  Miami, FL 33131

515  **BROKER:** Listing and Cooperating Brokers, if any, named below (collectively, "Broker"), are the only Brokers entitled
516  to compensation in connection with this Contract. Instruction to Closing Agent: Seller and Buyer direct Closing Agent
517  to disburse at Closing the full amount of the brokerage fees as specified in separate brokerage
518  agreements with the parties and cooperative agreements between the Brokers, except to the extent Broker has
519  retained such fees from the escrowed funds. This Contract shall not modify any MLS or other offer of compensation
520  made by Seller or Listing Broker to Cooperating Brokers.

521·         THERESA DAVIDSON                                       EUGEN ALDEA
522  **Cooperating Sales Associate, if any**            **Listing Sales Associate**

523·         SANDALS REALTY                                    ATCHLEY INTN'L REALTY
524  **Cooperating Broker, if any**                     **Listing Broker**

FloridaRealtors/FloridaBar-ASIS-1   Rev. 6/10 © 2010 Florida Realtors® and The Florida Bar. All rights reserved.
Serial#: 048188-800136-9332478

# EXHIBIT A

# AS-IS RESIDENTIAL CONTRACT FOR SALE AND PURCHASE

Closing Agent / Escrow Agent / Title Agent:  **Petitt Worrell Craine Wolfe LLC**

Seller designates -

Attn: Michael Brooks, Esq.
4830 West Kennedy Blvd. / Suite 475
Tampa, FL 33609
(813) 443-5345 - phone
(813) 443-8331 - facsimile
Michael@petittworrell.com

*\*\*\* Wire Instructions for Petitt Worrell Craine Wolfe LLC are attached to this EXHIBIT A \*\*\**

**Additional Terms:**

Unless otherwise specifically provided for herein, all blank space(s) in the Contract, if any, shall be interpreted pursuant to the terms of the Contract for such blank space(s).

Notwithstanding any other provision of this Contract, Contract is contingent on Court approval of the transaction and Seller's compliance with all applicable federal, state and local rules and regulations governing the sale.

Closing Date: The later of: (1) 30 days after expiration of Inspection Period (Par. 12); (2) 30 days after a timely Loan Commitment is obtained, if applicable (Par. 8); and (3) 10 days after District Court approval of the sale and Seller's compliance with all applicable federal, state and local rules and regulations governing the transaction.

Notwithstanding any other provision of this Contract, Seller shall have no obligation to cure title defect(s) that exceed the Purchase Price or institute any legal action to accomplish the same.

Notwithstanding any other provision of this Contract, Seller shall have no obligation to satisfy special assessments that exceed the Purchase Price.

The following amendments are hereby made to the standard contract language. The intent of the parties is that in the event of a default there shall be no requirement to submit the dispute to a mediation process prior to pursuing any remedy.

   (a) Paragraphs 15 (a) and (b) are amended to delete references to "Paragraph 16."

   (b) Paragraph 16 is hereby deleted.

   (c) The first sentence of Paragraph 17 is hereby deleted.

**END**

# WIRING INSTRUCTIONS

PETITT WORRELL CRAINE WOLFE LLC
ONE URBAN CENTRE, SUITE 475
4830 WEST KENNEDY BOULEVARD
TAMPA, FLORIDA 33609-2599
(813) 443-5345 – JAMES BAKER, ADMINISTRATOR

## Trust Account

| | |
|---|---|
| Receiving Financial Institution Name: | SunTrust Bank<br>2530 Park Place N.E.<br>Atlanta, GA 30303 |
| Receiving Financial Institution ABA | 061000104 |
| Beneficiary Financial Institution Name: | NorthStar Bank |
| Beneficiary FI Account Number: | 1000044595386 |
| Beneficiary Name: | Petitt Worrell Craine Wolfe LLC<br>Trust Account |
| Beneficiary Account Number: | 1020868 |

## Comprehensive Rider to the
## Residential Contract For Sale And Purchase



THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR

If initialed by all parties, the clauses below will be incorporated into the Florida Realtors®/Florida Bar Residential Contract For Sale And Purchase between _____ RECEIVER/PFG LLC _____ (SELLER) and _____ ROBIN TRUMAN _____ (BUYER) concerning the Property described as   3103   BAYSHORE GARDENS PKWY
_____ BRADENTON _____  FL   342074339

Buyer's Initials _____     Seller's Initials  _mrl_   <INITIAL HERE>

### P. LEAD-BASED PAINT DISCLOSURE

#### Lead-Based Paint Warning Statement

"Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspection in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase."

**Seller's Disclosure (INITIAL)**

_____ (a) Presence of lead-based paint or lead-based paint hazards (CHECK ONE BELOW):
  ☐ Known lead-based paint or lead-based paint hazards <u>are present</u> in the housing.
  ☒ Seller has <u>no knowledge</u> of lead-based paint or lead-based paint hazards in the housing.

_m_ (b) Records and reports available to the Seller (CHECK ONE BELOW):
  ☐ Seller has provided the Buyer with all available records and reports pertaining to lead-based paint or lead-based paint hazards in the housing. List documents: _____

  ☒ Seller has no reports or records pertaining to lead-based paint or lead-based paint hazards in the housing.

**Buyer's Acknowledgement (INITIAL)**

_____ (c) Buyer has received copies of all information listed above.

_____ (d) Buyer has received the pamphlet *Protect Your Family* from *Lead in Your Home*.

_____ (e) Buyer has (CHECK ONE BELOW):
  ☐ Received a 10-day opportunity (or other mutually agreed upon period) to conduct a risk assessment or inspection for the presence of lead-based paint or lead-based paint hazards; or
  ☐ Waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint or lead-based paint hazards.

**Licensee's Acknowledgement (INITIAL)**

_EA_ (f) Licensee has informed the Seller of the Seller's obligations under 42 U.S.C. 4852(d) and is aware of Licensee's responsibility to ensure compliance.

**Certification of Accuracy**

The following parties have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate.

_[signature]_  <SIGN HERE>  5/24/13
SELLER ~~XXXXXXX~~                     Date         BUYER                               Date
Melanie E. Damian, Esq., Receiver for PFG, LLC
SELLER                                 Date         BUYER _[signature]_                05/21/2013
                                                                                        Date
Selling Licensee                       Date         Listing Licensee                    Date
                                                    EUGEN ALDEA

Any person or persons who knowingly violate the provisions of the Residential Lead-Based Paint Hazard Reduction Act of 1992 may be subject to civil and criminal penalties and potential triple damages in a private civil lawsuit.

Page _____ of Comprehensive Rider to the Residential Contract For Sale And Purchase
CR-1 Rev. 6/10 © 2010 Florida Realtors® and The Florida Bar. All rights reserved.

This software is licensed to [EUGEN ALDEA - ATCHLEY INTERNATIONAL REALTY] www.transactiondesk.com.


Case 1:12-cv-02296-TCB  Document 87-1  Filed 06/14/13  Page 14 of 16

DocuSign Envelope ID: 044B53D2-C746-415C-9531-68FDDE9D0C81



# ATCHLEY INTERNATIONAL REALTY, LLC

## STANDARD DISCLOSURE ADDENDUM

**Property:** 3103 Bayshore Gardens PKwy  Bradenton FL  **Date:** 5/20/2013

**Seller(s):** PFG, LLC /Receivership

**Buyer(s):** Robyn Truman

This Standard Disclosure Addendum shall be attached to and included in the Residential Contract for Sale and Purchase between Seller and Buyer regarding the Property. If this Addendum is executed by Buyer in connection with a purchase offer for the Property, Buyer acknowledges the disclosures, terms and conditions described herein and agree that this Addendum shall be applicable to Buyer whether or not the purchase offer is accepted by Seller. All parties signing this Addendum "the Parties" acknowledge receipt of and agreement to the following disclosures, terms and conditions which shall survive the expiration, termination and/or closing of the Contract. Atchley International Realty, LLC including its licensees, affiliates and employees ("Broker") provides the following information and disclosures to the Parties:

1. **Professional Advice:** Broker recommends that all Parties verify all facts and representations that are important to them and consult with an appropriately licensed and qualified professional for specialized advice, including but not limited to legal advice, tax advice, insurance advice, property condition, legal description, property survey, condition of title, property value, environmental condition and other specialized advice. All Parties hereby acknowledge no reliance on Broker for such specialized advice. All Parties agree to rely solely on appropriate qualified professionals for specialized advice on any and all matters regarding the Property. All parties hereby acknowledge and agree to take responsibility for selection and compensation of such appropriate qualified professionals.

2. **Legal Advice:** All Parties are hereby advised and acknowledge that Broker and its officers, directors, agents, licensees, affiliates and employees are not lawyers and by Florida law may not give legal advice, may not provide advice on specific legal rights and/or legal remedies, and may not provide representation in court. Broker recommends and advises all Parties to verify all facts and representations that are important to such Parties and to consult an appropriately licensed qualified attorney regarding those matters. All Parties agree to rely solely on an appropriately licensed and qualified attorney for legal advice on any and all matters regarding the Property. All Parties hereby acknowledge no reliance on Broker for such legal advice.

3. **Tax Liability:** Broker and its licensees and/or affiliates do not render a professional opinion or advice regarding municipal, state or federal tax liabilities or benefits. All Parties acknowledge and agree to seek qualified professional advice regarding such tax matters or benefits which may result from this transaction and all Parties acknowledge that they have not relied upon any statement regarding such matters which may have been provided by Broker.

4. **Property Information:** Buyer is advised to retain appropriate qualified professionals and consult with governmental agencies for verification of any information pertaining to the age, condition, room sizes, property dimensions, structural definition, building and feature specifications, environmental conditions, insurance information, property taxes, mortgage information, legal descriptions, condition of title, property value, school districts, building permits, municipal liens and all other information regarding the Property. Broker does not render any professional opinion as to the condition of the Property being purchased.

5. **Closing Costs –** I (We) understand and agree that at closing, additional sums will be required in the form of closing costs. The mortgage lender or closing agent should provide an estimate of these costs. Included in these costs is a brokerage fee of $250 payable to Atchley International Realty, LLC from its Buyer(s) and/or Seller(s), which will be collected at or before closing, for coordination and retention of certain documents for a minimum of five years pertinent to the transaction required by Florida Statue 475.5015.

6. **Home Inspection -** ATCHLEY INTERNATIONAL REALTY, LCC, its agents and broker, strongly recommends that Buyers, for your protection, obtain a home inspection that will give you an impartial, physical evaluation that is more detailed than an appraisal. In a home inspection, a qualified inspector takes an in-depth, unbiased look at your potential new home to: (1) evaluate the physical condition; structure, construction and mechanical systems (2) identify items that need to be repaired and/or replaced and (3) estimate the remaining useful life of the remaining systems, equipment, structures and finishes. The inspection gives a detailed report on the condition of the structural components, exterior, roofing, plumbing, electrical, heating, insulation and ventilation, air

DocuSign Envelope ID: 044B53D2-C746-415C-9531-68FDDE9D0C81

conditioning and interiors. It is your responsibility to be an informed buyer. You have the right to carefully examine your potential new home with a qualified home inspector. This inspection should be carried out within the time constraints contained in your purchase and sale contract. Termite Inspections are also recommended within 30 days of closing.

7. **Home Warranty** – ATCHLEY INTERNATIONAL REALTY, LCC, its agents and broker, strongly recommends that Buyers and/or Sellers of residential property purchase a Home Warranty policy. (*Disclosure:* In some cases Atchley International Realty, LLC may receive an administrative fee from the Home Warranty provider.)

8. **Property Taxes** – The Constitution of the State of Florida states that annual increases in the assessed value of homestead property shall not exceed the lower of: three percent (3%) of the assessed value for the prior year or the percent change in the Consumer Price Index. After any change of ownership, homestead property will be assessed at "just value" as of January 1 of the following year, which may result in a property tax increase. ATCHLEY INTERNATIONAL REALTY, LLC, its agents, employees, and broker, make no representation as to the future property taxes and we advise Buyers to contact the local Property Appraiser's Office for an estimate of tax liability.

9. **Sex Offender/Predator Information** – The Florida Sexual Predators Act (Florida Statute 775.21) requires that all sexual offenders and/or predators register with the Florida Department of Law Enforcement (FDLE). This information is available to the public and may be obtained by referring to the FDLE website at www.fdle.state.fl.us or by calling the FDLE at 888-FL-PREDATOR (888-357-7332). ATCHLEY INTERNATIONAL REALTY, LLC, its agents and broker, strongly recommends that all Buyers obtain this information prior to purchasing a home.

10. **Mold** – Purchasers are advised and understand that potential health risks are known to derive from excessive levels of certain type of mold, which is found in residential homes. In the event the Purchasers decline the opportunity to have the home tested for the presence of mold, including laboratory sample analysis, Purchasers agree to hold harmless all those involved in the sale, for any damages or responsibility for building conditions which remain undiscovered regarding all types of mold and mold spores. This includes the Sellers, Realtors and Real Estate Companies.

11. **School Zones** – Due to the growth in the area, school districts regularly redistrict. Purchasers are advised to research the school zones, both current and projected, for the property they are interested in buying. Sellers, Realtors and Real Estate Companies cannot be held responsible for these changes. "School Choice" and "Magnet Schools" are options that may be available in some districts. It is recommended that you contact the appropriate district for specific information.

12. **Equal Housing Opportunities** – The Broker is required by law and The National Association of Realtors Code of Ethics to treat all parties in a property transaction fairly without regard to race, color, religion, national origin, ancestry, sex, age, marital status, presence of children or physical or mental handicaps.

13. **Government Regulations and Permits** – Atchley International Realty, LLC, its independent contractors, associates, managers, and employees make no warranties regarding the ability to construct improvements on any property and all purchasers should check with the appropriate county concerning such issues. In addition, it is the Buyer's responsibility to confirm that all improvements on the Property have been built in accordance with all governmental regulations and that the permits have been obtained and closed out for all improvements/repairs to the property requiring permits. No undertaking is being made by Atchley International Realty, LLC or its agents, employees, or trade partners with respect to the matters set forth in this paragraph.

14. **Defective Drywall** – There may hazards associated with drywall imported from China or other countries, which was installed in various homes throughout Florida, primarily during the building material shortages that began around 2004 (although some reports indicate earlier installations). Various reports have stated that some defective drywall products may cause the release of sulfur and other materials which may pose health risks, and that these fumes may cause air conditioning evaporator coils to corrode and fail, and pipes and wiring to deteriorate. Many of these reports are available on the Internet should you chose to review them. Additional important information can found the Florida Department of health's website at www.doh.state.fl.us/Environment/community/indoor-air/drywall.html.

15. **Pinhole Leaks** – Pinhole leaks in cooper plumbing affect property owners throughout the United States. To date, no definitive reason has been determined for the cause of the leaks, although it seems to affect some communities more than others. Some homeowners associations have a website, and you may be able to obtain information if any home in that community that has experienced pinhole leaks. Also, we recommend that you contact the Board of Directors for relevant information. Obviously, not all past plumbing repairs are the result of pinhole leaks and only professional can make such a determination. We recommend that you seek professional advice from a plumber or other appropriate professional.

16. **Scrub Jay** – Buyer hereby acknowledges that Buyer has been informed by Atchley International Realty, LLC that certain properties in Florida including, but not limited to, Sarasota, Manatee, Charlotte, Hardee and Lee counties can be or are in the Scrub Jay Habitat area. Scrub Jays are a protected native Florida bird. In order to obtain a building permit, the Buyer may be required to

DocuSign Envelope ID 044B53D2-C746-415C-9531-68FDDE9D0C81

mitigate the property two to one (2 – 1). If you purchase a half-acre lot you may be required to mitigate one acre to obtain a permit. If mitigation is required we advise you to see the appropriate legal advice. Purchasers in the Sarasota, Manatee, and Charlotte counties can use the following contact information to find out about the Scrub Jay Habitat in the area: Charlotte County: www.ccgis.com or 941-764-4383  Sarasota County: www.scgov.net  or  941-861-3029  Manatee County: www.co-manateefl.us or 941-741-5980.

17.  **Seller Disclosure** – Seller is hereby advised that Florida law requires Sellers to fully disclose facts known to Seller materially affecting the value of the Property. Seller is further advised that Seller's failure to complete a written disclosure form may be adverse to Seller's interests by potentially exposing Seller to increased risk of liability and may be detrimental to the marketing of the property and contract negotiations. Seller is also advised to contact its lender for current information on mortgage balances and payoffs and any possible prepayment penalty.

19.  **Bank-Owned Property** – Buyer is hereby advised that bank-owned property ("REO") which is offered for sale has likely been acquired by the Seller through foreclosure and may or may not have outstanding claims or liabilities associated with the title. Further, the Seller may or may not have knowledge or information regarding the Property condition. In addition, the Seller may have prepared and require use of documents and/or addenda that are not typically used in non-REO transactions and which are generally favorable to Seller and not to Buyer. Buyer is advised to seek appropriate legal, financial, tax, insurance and title counsel to discuss the applicability and interpretation of any Seller-prepared documents and/or addenda prior to signing any such documents.

20.  **Short Sale** – The purchaser of Property offered for short sale may involve substantial financial and legal issues and significant delay. Broker does not provide legal, financial or tax advice and hereby advises Buyer to obtain such advice from an appropriately qualified attorney and/or accountant prior to entering into a short sale. Approval of a short sale by the lender can be a prolonged process requiring the delivery of significant information and documentation to lender by Seller and Buyer. Buyer may lose the opportunity to pursue other purchases while Buyer awaits lender approval of its short sale contract Buyer acknowledges that Broker has no control over the acceptance or counter of a short sale offer or the timely response of lender to a short sale contract.

21.  **Multiple Offers** – Buyer should be aware that more than one offer may be received by Seller on the Property on which the Buyer is currently making a purchase offer. The Seller is under no obligation to advise Buyer that there are multiple offers on the Property or to negotiate offers in the order in which they are received and it is solely at the discretion of the Seller as to which offer, if any, that may be accepted, rejected, or countered at any given time. Broker cannot guaranty or predict what offer Seller will accept or counter and cannot outline the criteria under which the Buyer's offer may or may not be selected over another offer. The only obligation of Broker is to present all offers when they are received at which time the Seller may or may not act upon said offer. Buyer further understands that other potential buyers may consider, make offers or purchase through the same Broker or seek similar properties as Buyer is seeking to acquire. Broker shall neither disclose the terms and/or condition of any pending offers for the purchase of such Property nor shall Broker reveal or discuss with other buyers the terms and conditions of the offer made by Buyer.

22.  **Release and Hold Harmless** – The Parties acknowledge receipt of and agreement to the disclosures, terms and conditions described in this Addendum and hereby confirm that such items are not the professional responsibility of Broker. Accordingly, the Parties hereby release and hold harmless Broker and all of its associates, staff and employees from any and all liability regarding the matters contained in this Addendum. It is presumed that all real estate licensees are operating as transaction brokers unless a single agency or a no brokerage relationship is established in writing.

23.  **Conclusion** – As a prospective buyer of a Property, you are advised to pursue any and all efforts to obtain whatever information you believe is necessary or appropriate from third parties regarding these matters in order to make a decision on whether to purchase the property. Neither Atchley International Realty, LLC nor its representatives are qualified to assist in obtaining this information and Buyer(s) agrees not to rely on Atchley International Realty, LLC or its associates, staff, license agents or representatives in connection with the matters set forth herein. Buyer(s) agree to rely solely on information from qualified inspectors, engineers, attorneys, accountants, advisors, governmental agencies and/or other third parties retained by Buyer regarding the issues described herein.

If you have any questions or don't feel that you adequately understand the items mentioned in this Addendum, please seek the advice of an attorney.

IN WITNESS WHEREOF, the Parties hereto have executed this Addendum as of the date first above written.

BUYER(S):

*DocuSigned by:*
*[signature]*

SELLER(S):
*[signature]*

Melanie E. Damian, Esq., Receiver for PFG, LLC
5/24/13