EXHIBIT A

# LAND PURCHASE AND SALE AGREEMENT

**Offer Date:** 09/30/2013

Georgia Association of REALTORS®

**2013 Printing**

1. **Purchase and Sale.** The undersigned buyer(s) ("Buyer") agree to buy and the undersigned seller(s) ("Seller") agree to sell the real property described below including all fixtures, improvements and landscaping therein ("Property") on the terms and conditions set forth in this Agreement.

**A. Property Identification:** Address: 3590 GA Highway 152
City Lyons, County Toombs, Georgia, Zip Code 30436
MLS Number: 12612 Tax I.D. Number: C64 018 & C64 019

**B. Legal Description:** The legal description of the Property is *[select one of the following below]*:
☒ 1. attached as an exhibit hereto;
☐ 2. the same as described in Deed Book ______, Page ______ of the land records of the above county; **OR**
☐ 3. Land Lot(s) ______ of the ______ District, ______ Section/ GMD, Lot ______, Block ______, Unit ______, Phase/Section ______ of ______ Subdivision/Development, according to the plat recorded in Plat Book ______, Page ______, et. seq., of the land records of the above county.

**C. Purchase Price of Property to be Paid by Buyer:**
$ 72,080.00 **OR**
$ ______ per acre. If price is per acre, Seller's estimate of acreage is ______ acres.

**D. Seller's Monetary Contribution at Closing:**
$ 0.00

**E. Closing Date:** 10/30/2013

**F. Seller Retains Possession of Property Through:** Closing

**G. Holder of Earnest Money ("Holder"):** Routh Realtors, LLC

**H. Closing Law Firm:** To be determined.

**I. Earnest Money:** Earnest Money shall be paid by ☒ check ☐ cash ☐ wire transfer of immediately available funds as follows:
☐ 1. $ ______ as of the Offer Date.
☒ 2. $ 1,000.00 within 2 days from the Binding Agreement Date.
☐ 3. ______

**J.** Property is being sold subject to a Due Diligence Period of 10 days from the Binding Agreement Date.

**K.** A survey of Property ☐ is **OR** ☒ is not attached to this Agreement as an exhibit.

**L.** A new Controlling Survey of the Property will be obtained by ☐ Buyer OR ☐ Seller and paid for by ☐ Buyer **OR** ☐ Seller.

**M.** Property is currently zoned None under the applicable zoning ordinances of Toombs City/County, Georgia.

**N.** Assignment: Buyer shall Buyer ☐ shall **OR** ☒ shall not have the right to assign this Agreement; **OR** ☐ shall have the right to Assign this Agreement only to a legal entity in which Buyer owns at least a 25% interest.

**O. Time Limit of Offer:** The Offer set forth herein expires at 5 o'clock P.m. on the date 10/4/2013.

2. **Brokerage Relationships in this Transaction.**

**A. Selling Broker is** Routh Realtors, LLC **and is:**
1. ☐ representing Buyer as a client.
2. ☒ not representing Buyer (Buyer is a customer).
3. ☐ acting as a dual agent representing both Buyer and Seller.
4. ☐ acting as a designated agent where ______ has been assigned to exclusively represent Buyer.

**B. Listing Broker is** Routh Realtors, LLC **and is:**
1. ☒ representing Seller as a client.
2. ☐ not representing Seller (Seller is a customer).
3. ☐ acting as a dual agent representing both Buyer and Seller.
4. ☐ acting as a designated agent where ______ has been assigned to exclusively represent Seller.

**C. Material Relationship Disclosure:** Broker and/or their affiliated licensees disclose the following material relationships:
N/A

Buyer(s) Initials ANK / ______ Seller(s) Initials ______ / ______

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH William Routh IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.
Copyright© 2013 by Georgia Association of REALTORS®, Inc.

Instanet Forms

3. **Purchase Price and Method of Payment.** The Purchase Price shall be paid in U.S. Dollars at closing in cash or its equivalent which shall only include the wire transfer of immediately available funds, or a cashier's check issued for the closing by a federally insured bank, savings bank, savings and loan association or credit union where the funds are immediately available. If the Purchase Price is stated as a price per acre, the acreage shall be determined by a survey obtained in the accordance with the procedure below ("Controlling Survey"). The total purchase price shall be determined by multiplying the total number of acres, to the nearest one one-thousandth of an acre as determined by a survey prepared by a registered Georgia surveyor. In the event the Seller is in possession of a survey, to which Buyer agrees in writing shall constitute the Controlling Survey, then said survey be controlling as the exact amount of the acreage being purchased and sold herein. If no survey exists or the existing survey is not acceptable, then a new survey shall be prepared. If there are no objections to the new survey, then the new survey shall be the Controlling Survey to determine the acreage being purchased and sold herein. If there is a dispute by either party regarding the new survey, the dispute shall be resolved in accordance with the Survey Resolution Exhibit attached hereto.

   Buyer warrants that Buyer will have sufficient cash at closing, will allow Buyer to complete the purchase of Property. Buyer does not need to sell or lease other real property in order to complete the purchase of Property.

4. **Acreage.** Buyer or Seller can terminate this Agreement if the Seller's estimate of the total acreage to be sold to Buyer is at least 15% more or less than the estimate.

5. **Deposit of Earnest Money.** The earnest money shall be deposited into Holder's escrow/trust account (with Holder being permitted to retain the interest if the account is interest bearing) not later than: (a) five (5) banking days after the Binding Agreement Date hereunder or (b) five (5) banking days after the date it is actually received if it is received after the Binding Agreement Date. If Buyer writes a check for earnest money and the same is deposited into Holder's escrow/trust account, Holder shall not return the earnest money until the check has cleared the account on which the check was written. In the event any earnest money check is dishonored by the bank upon which it is drawn, or earnest money is not timely paid, Holder shall promptly give notice of the same to Buyer and Seller. Buyer shall have three (3) banking days from the date of receiving the notice to cure the default and if Buyer does not do so, Seller may within seven (7) days thereafter terminate this Agreement upon notice to Buyer. If Seller fails to terminate the Agreement timely, Seller's right to terminate based on the default shall be waived.

6. **Closing Costs, Prorations, Right to Extend Closing Date and Closing Law Firm.**
   - **A. Items Paid By Buyer:** At closing, Buyer shall pay: (1) Georgia property transfer tax; (2) the cost to search title and tax records and prepare the warranty deed; and (3) all other costs, fees and charges to close this transaction, except as they relate to the clearance of title encumbrances and/or defects necessary for Seller to be able to convey good and marketable title to the Property.
   - **B. Items Paid By Seller:** At closing, Seller shall make the referenced Seller's Monetary Contribution which Buyer may use to pay any cost or expense of Buyer related to this transaction. Buyer acknowledges that Buyer's mortgage lender(s) may not allow the Seller's Monetary Contribution, or the full amount thereof, to be used for some costs or expenses. In such event, any unused portion of the Seller's Monetary Contribution shall remain the property of the Seller. In addition, Seller shall pay all costs, fees and charges necessary to clear title encumbrances and/or defects necessary to allow Seller to be able to convey good and marketable title to the Property and any extra costs, fees and charges resulting from Seller not being able to attend the closing in person.
   - **C. Prorations:** Ad valorem property taxes, community association fees, solid waste and governmental fees and utility bills for which service cannot be terminated as of the date of closing shall be prorated as of the date of closing. In the event ad valorem property taxes are based upon an estimated tax bill or tax bill under appeal, Buyer and Seller shall, upon the issuance of the actual tax bill or the appeal being resolved, promptly make such financial adjustments between themselves as are necessary to correctly prorate the tax bill. In the event there are tax savings resulting from a tax appeal, third party costs to handle the appeal may be deducted from the savings for that tax year before re-prorating. Any pending tax appeal shall be deemed assigned to Buyer at closing.
   - **D. Extending the Closing Date:** Buyer or Seller may unilaterally extend the closing date for seven (7) days upon notice to the other party given prior to or on the date of closing if: (1) Seller cannot satisfy valid title objections (excluding title objections that: (a) can be satisfied through the payment of money or by bonding off the same; and (b) do not prevent Seller from conveying good and marketable title, as that term is defined herein, to the Property); or (2) Buyer's mortgage lender, if any, (including in "all cash" transactions) or the closing attorney cannot fulfill their respective obligations by the date of closing, provided that the delay is not caused by Buyer. The party unilaterally extending the closing date shall state the basis for the delay in the notice of extension. If the right to unilaterally extend the closing date is exercised once by either the Buyer or Seller, the right shall thereafter terminate.
   - **E. Closing Law Firm:** If Buyer is given the right to select a law firm from a mortgage lender's approved list of closing attorneys, Buyer agrees to select the law firm referenced in this Agreement. If the law firm named above is not on the mortgage lender's approved list, and cannot be added in time to close this transaction, Buyer may select another law firm from lender's approved list to close this transaction. The closing attorney shall represent the mortgage lender in any transaction in which the Buyer obtains mortgage financing (including transactions where the method of payment referenced herein is "all cash"). In transactions where the Buyer does not obtain mortgage financing, the closing attorney shall represent the Buyer. If the closing attorney declines such representation, the Buyer may select a different closing attorney.

7. **Title.**
   - **A. Warranty:** Seller warrants that at the time of closing Seller will convey good and marketable title to said Property by general warranty deed subject only to: (1) zoning; (2) general utility, sewer, and drainage easements of record as of the Binding Agreement Date and upon which the improvements do not encroach; (3) declarations of condominium and declarations of covenants, conditions and restrictions of record on the Binding Agreement Date; (4) leases and other encumbrances specified in this Agreement. Buyer agrees to assume Seller's responsibilities in any leases specified in this Agreement; and (5) any other title exceptions set forth herein.

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH William Routh IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.

Copyright© 2013 by Georgia Association of REALTORS®, Inc.





B. **Examination:** Buyer may examine title and furnish Seller with a written statement of title objections at or prior to the closing. If Seller fails or is unable to satisfy valid title objections at or prior to the closing or any unilateral extension thereof, which would prevent the Seller from conveying good and marketable title to the Property, then Buyer, among its other remedies, may terminate the Agreement without penalty upon written notice to Seller. Good and marketable title as used herein shall mean title which a title insurance company licensed to do business in Georgia will insure at its regular rates, subject only to standard exceptions.

C. **Survey:** Notwithstanding any other provision to the contrary contained herein, Buyer shall have the right to terminate this Agreement upon notice to Seller if a new survey of the Property performed by a licensed Georgia surveyor is obtained that is materially different from any survey of the Property provided by Seller and attached hereto as an exhibit. The term "materially different" shall not apply to any improvements or repairs constructed by Seller in their agreed-upon locations subsequent to Binding Date Agreement. Matters revealed in any survey, including a survey attached hereto may be raised by Buyer as title objections.

8. **Sellers Warranties and Representations.** Except to the extent provided in Exhibit n/a to this Agreement, Seller warrants as follows:

A. **Authority.** Seller has the right, power and authority to enter into this Agreement and to convey Property in accordance with the terms and conditions of this Agreement; and the persons executing this Agreement on behalf of Seller have been duly and validly authorized by Seller to execute and deliver this Agreement and have the right, power and authority to enter into this Agreement and bind Seller.

~~B. **Bankruptcy.** Seller represents and warrants that Seller is solvent and has not made a general assignment for the benefit of creditors or been adjudicated as bankrupt or insolvent, nor has a receiver, liquidator or trustee of Seller or any of its respective properties (including Property) been appointed or a petition filed by or against Seller for bankruptcy, reorganization or arrangement pursuant to the Federal Bankruptcy Act or any similar federal or state statute, or any proceeding instituted for the dissolution or liquidation of Seller.~~

C. **Condemnation.** Seller has not been notified that any condemnation or other taking by eminent domain of Property or any portion thereof has been instituted and, to the best of Seller's knowledge, there are no pending or threatened condemnation or eminent domain proceedings (or proceedings in the nature or in lieu thereof) affecting Property or any portion thereof or its use.

D. **Hazardous Substances.** To the best of Seller's knowledge, (1) no "hazardous substances", as that term is defined in the Comprehensive Environmental Response, Compensation, and Liability Act, and the rules and regulations promulgated pursuant thereto, or any other pollutants, toxic materials, or contaminants have been or shall prior to closing be discharged, disbursed, released, stored, treated, generated, disposed of, or allowed to escape on Property in violation of applicable law; (2) no underground storage tanks are located on the Property or were located on the Property and subsequently removed or filled; (3) Property has not previously been used as a gas station, cemetery, landfill, or as a dump for garbage or refuse; and (4) Property has not previously been and is not currently listed on the Georgia Environmental Protection Division Hazardous Site. Seller has not received any notice or demand from any governmental or regulatory agency or authority requiring Seller to remove any hazardous substances or contaminants or toxic materials from Property.

E. **Leases.** Other than those leases provided by Seller to Buyer as part of the Due Diligence Materials, there are no other leases of or affecting the Property or any portion thereof and Seller will not enter into any new leases without the written permission of Buyer.

F. **No Litigation.** There are no actions, suits, or proceedings pending or, to the best of Seller's knowledge, threatened by any organization, person, individual, or governmental agency against Seller with respect to Property or against Property, or with respect thereto, nor does Seller know of any basis for such action. Seller also has no knowledge of any currently pending application for changes in the zoning applicable to Property or any portion thereof.

G. **Pre-Existing Right to Acquire.** No person or entity has any right or option to acquire Property or any portion thereof, which will have any force of effect after execution hereof, other than Buyer.

H. **Proceedings Affecting Access.** Seller has not been notified that there are any pending proceedings that could have the effect of impairing or restricting access between Property and adjacent public roads and, to the best of Seller's knowledge, no such proceedings are pending or threatened.

I. **Violations.** To the best of Seller's knowledge, there are no violations of laws, municipal or county ordinances or other legal requirements with respect to Property (excluding any improvements constructed thereon).

9. **Risk of Damage to Property.** Seller warrants that at the time of closing the Property and all items remaining with the Property, if any, will be in substantially the same condition (including conditions disclosed in the Seller's Property Disclosure Statement) as on the Binding Agreement Date, except for changes made to the condition of Property pursuant to the written agreement of Buyer and Seller. Seller shall deliver Property clean and free of trash and debris at time of possession. Notwithstanding the above, if the Property is destroyed or substantially damaged prior to closing, Seller shall promptly give notice to Buyer of the same and provide Buyer with whatever information Seller has regarding the availability of insurance and the disposition of any insurance claim. Buyer or Seller may terminate this Agreement not later than fourteen (14) days from receipt of the above notice. If Buyer or Seller do not terminate this Agreement, Seller shall assign at closing all of its rights to receive the proceeds from all insurance policies affording coverage for the claim. If the insurance proceeds are paid prior to Closing, the amount of such proceeds shall be credited against the purchase price of the Property.

10. **Inspection.**

A. **Right to Inspect Property:** Buyer and/or Buyer's representatives shall have the right to enter the Property at Buyer's expense and at reasonable times (including prior to closing) to inspect, examine, test, appraise and survey Property. Seller shall cause all utilities, systems and equipment, if any, to be on so that Buyer may complete all inspections. Buyer agrees to hold Seller and all Brokers harmless from all claims, injuries and damages relating to the exercise of these rights.

B. **Duty to Inspect Neighborhood:** In every neighborhood there are conditions which different buyers may find objectionable. Buyer shall have the sole duty to become familiar with neighborhood conditions that could affect the Property such as landfills, quarries, power lines, air ports, cemeteries, prisons, stadiums, odor and noise producing activities, crime and school, land use, government and transportation maps and plans.

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH William Routh IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.

Copyright© 2013 by Georgia Association of REALTORS®, Inc.





**C. Due Diligence Materials:** Seller shall provide to the Buyer within five (5)days from the Binding Agreement Date, the items below, if available, pertaining to the Property (hereinafter collectively referred to as "Due Diligence Materials").

1. Tax and Title
   a. Most recent Property tax assessments and tax bills.
   b. The most recent title insurance policy insuring the Property, including complete and legible copies of all documents (whether or not recorded) which are referenced as title exceptions.
   c. The most recent ALTA (American Land Title Association) survey of the Property, or if such a survey is not available, the most recent survey of the Property prepared by a licensed Georgia surveyor.
   d. A list of special assessment districts in which the Property is located and the schedule of unpaid or pending assessments – if any.
   e. A schedule of impact fees paid or owed on the Property, if any.
2. Environmental and Assessments
   a. All soil reports covering the Property or any portion thereof.
   b. All cruise reports of existing timber on the Property.
   c. All environment (hazardous substances), engineering, physical inspection, marketing and feasibility studies, assessments and reports, including wetlands reports.
3. Leases
   An executed copy of every lease of or affecting the Property or any portion thereof.
4. Miscellaneous
   a. A schedule of management fees due in connection with any agreements pertaining to the Property.
   b. All municipal, county, state or federal permits, licenses and authorizations affecting the use, operation, and maintenance of the Property."

**11. Property Sold "As-Is" Unless this Agreement is Subject to Due Diligence Period.**

**A. General.** Unless the Property is being sold subject to a Due Diligence Period referenced herein, the Property shall be sold "as-is" with all faults. The inclusion of a Due Diligence Period herein shall: (1) during its term make this Agreement an option contract in which Buyer may decide to proceed or not proceed with the purchase of the Property for any or no reason; and (2) be an acknowledgement by Seller that Buyer has paid separate valuable consideration of $10 for the granting of the option.

**B. Purpose of Due Diligence Period.** During the Due Diligence Period, Buyer shall determine whether or not to exercise Buyer's option to proceed or not proceed with the purchase of the Property. If Buyer has concerns with the Property, Buyer may during the Due Diligence Period seek to negotiate an amendment to this Agreement to address such concerns.

**C. Notice of Decision Not To Proceed.** Buyer shall have elected to exercise Buyer's option to purchase the Property unless prior to the end of any Due Diligence Period, Buyer notifies Seller of Buyer's decision not to proceed by delivering to Seller a notice of termination of this Agreement. In the event Buyer does not terminate this Agreement prior to the end of the Due Diligence Period, then: (1) Buyer shall have accepted the Property "as-is" subject to the terms of this Agreement; and (2) Buyer shall no longer have any right to terminate this Agreement based upon the Due Diligence Period.

**12. Return and Disbursement of Earnest Money.**

**A. Entitlement to Earnest Money:** Subject to the paragraph below, Buyer shall be entitled to the earnest money upon the: (1) failure of the parties to enter into a binding agreement; (2) failure of any contingency or condition to which this Agreement is subject; (3) termination of this Agreement due to the default of Seller; or (4) termination of this Agreement in accordance with a specific right to terminate set forth in the Agreement. Otherwise, the earnest money shall be applied towards the purchase price of the Property at closing or if other funds are used to pay the purchase price then the earnest money shall be returned to Buyer.

**B. Disbursement of Earnest Money:** Holder shall disburse the earnest money upon: (1) the closing of Property; (2) a subsequent written agreement of Buyer and Seller; (3) an order of a court or arbitrator having jurisdiction over any dispute involving the earnest money; or (4) the failure of the parties to enter into a binding agreement (where there is no dispute over the formation or enforceability of the Agreement). In addition, Holder may disburse the earnest money upon a reasonable interpretation of the Agreement, provided that Holder first gives all parties at least ten (10) days notice stating to whom and why the disbursement will be made. Any party may object to the proposed disbursement by giving written notice of the same to Holder within the ten (10) day notice period. Objections not timely made in writing shall be deemed waived. If Holder receives an objection and, after considering it, decides to disburse the earnest money as originally proposed, Holder may do so and send notice to the parties of Holder's action. If Holder decides to modify its proposed disbursement, Holder shall first send a new ten (10) day notice to the parties stating the rationale for the modification and to whom the disbursement will now be made. Holder shall offer to disburse the earnest money to Seller by check in the event Holder: (1) makes a reasonable interpretation of the Agreement that the Agreement has been terminated due to Buyer's default; and (2) sends the required ten (10) day notice of the proposed disbursement to Buyer and Seller. If the check is accepted and deposited by Seller, it shall constitute liquidated damages in full settlement of all claims of Seller against Buyer and the Brokers in this transaction. Such liquidated damages are a reasonable pre-estimate of Seller's actual damages, which damages are difficult to ascertain and are not a penalty. Nothing herein shall prevent the Seller from declining the tender of the earnest money by the Holder. In such event, Holder, after giving Buyer and Seller the required ten (10) day notice of the proposed disbursement, shall disburse the earnest money to Buyer.

**C. Interpleader:** If an earnest money dispute cannot be resolved after a reasonable time, Holder may interplead the earnest money into a court of competent jurisdiction if Holder is unsure who is entitled to the earnest money. Holder shall be reimbursed for and may deduct its costs, expenses and reasonable attorney's fees from any funds interpleaded. The prevailing defendant in the interpleader lawsuit shall be entitled to collect its attorney's fees, court costs and the amount deducted by Holder to cover Holder's costs and expenses from the non-prevailing defendant.

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH William Routh IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.

Copyright© 2013 by Georgia Association of REALTORS®, Inc.





D. **Hold Harmless:** All parties hereby covenant and agree to: (1) indemnify and hold Holder harmless from and against all claims, injuries, suits and damages arising out of the performance by Holder of its duties; (2) not to sue Holder for any decision of Holder to disburse earnest money in accordance with this Agreement.

13. **Agency and Brokerage.**
A. **Agency Disclosure:** In this Agreement, the term "Broker" shall mean a licensed Georgia real estate broker or brokerage firm and, where the context would indicate, the broker's affiliated licensees. No Broker in this transaction shall owe any duty to Buyer or Seller greater than what is set forth in their brokerage engagements and the Brokerage Relationships in Real Estate Transactions Act, O.C.G.A. § 10-6A-1 et. seq.;
1. **No Agency Relationship.** Buyer and Seller acknowledge that, if they are not represented by Brokers in a client relationship, they are each solely responsible for protecting their own interests, and that Broker's role is limited to performing ministerial acts for that party.
2. **Consent to Dual Agency.** If Broker is acting as dual agent in this transaction, Buyer and Seller consent to the same and acknowledge having been advised of the following:
a. **Dual Agency Disclosure.** *[Applicable only if Broker is acting as a dual agent in this transaction].*
(1) As a dual agent, Broker is representing two clients whose interests are or at times could be different or even adverse;
(2) Broker will disclose all adverse material facts relevant to the transaction and actually known to the dual agent to all parties in the transaction except for information made confidential by request or instructions from each client which is not otherwise required to be disclosed by law;
(3) Buyer and Seller do not have to consent to dual agency and the consent of Buyer and Seller to dual agency has been given voluntarily and the parties have read and understand their brokerage engagement agreements.
(4) Notwithstanding any provision to the contrary contained herein Buyer and Seller each hereby direct Broker while acting as a dual agent to keep confidential and not reveal to the other party any information which could materially and adversely affect their negotiating position.
b. **Designated Agency Disclosure.** If Broker in this transaction is acting as a designated agent, Buyer and Seller consent to the same and acknowledge that each designated agent shall exclusively represent the party to whom each has been assigned as a client and shall not represent in this transaction the client assigned to the other designated agent.
B. **Brokerage:** Seller has agreed to pay Listing Broker(s) a commission pursuant to a separate brokerage engagement agreement entered into between the parties and incorporated herein by reference ("Listing Agreement"). The Listing Broker has agreed to share that commission with the Selling Broker. The closing attorney is hereby authorized and directed to pay the Broker(s) at closing, their respective portions of the commissions out of the proceeds of the sale. If the sale proceeds are insufficient to pay the full commission, the party owing the commission shall pay any shortfall at closing. The acceptance by the Broker(s) of a partial real estate commission at the closing shall not relieve the party owing the same from paying the remainder after the closing (unless the Broker(s) have expressly and in writing agreed to accept the amount paid in full satisfaction of the Broker(s) claim to a commission).

14. **Disclaimer.** Buyer and Seller have not relied upon any advice or representations of Brokers other than what is included in this Agreement. Brokers shall have no duty to advise Buyer and Seller on any matter relating to the Property which could have been revealed through a survey, title search, Official Georgia Wood Infestation Report, testing by a soils engineer construction expert, utility bill review, an appraisal, inspection by an environmental engineering inspector, consulting governmental officials or a review of this Agreement and transaction by an attorney, financial planner, mortgage consultant or tax planner. Buyer and Seller should seek independent expert advice regarding any matter of concern to them relative to the Property and this Agreement.

15. **Notices.**
A. **Notices Must Be In Writing:** All notices, including but not limited to offers, counteroffers, acceptances, amendments, demands, notices of termination and other notices, required or permitted hereunder shall be in writing, signed by the party giving the notice. It is the intent of the parties that the requirements of this Notice paragraph shall apply even prior to this Agreement becoming binding.
B. **Delivery of Notice:** Subject to limitations and conditions set forth herein, notices may only be delivered: (1) in person; (2) by an overnight delivery service, prepaid; (3) by facsimile transmission (FAX); (4) by registered or certified U. S. mail, prepaid, return receipt requested; or (5) by e-mail.
C. **When Notice Is Received:** A notice shall not be deemed to be given, delivered or received until it is actually received by the party to whom the notice was intended or that person's authorized agent. Notwithstanding the above, a notice sent by FAX shall be deemed to be received by the party to whom it was sent as of the date and time it is transmitted to either the party or the party's authorized agent provided that the sending FAX produces a written confirmation showing the date and the time of the actual transmission and the telephone number referenced herein to which the notice should have been sent. Additionally, if the sender of a notice by e-mail receives an automatic reply indicating that the e-mail has been opened ("Read Receipt"), the e-mail notice shall be deemed received at that time.
D. **Notices Sent to Broker:** Except in transactions where the Broker is practicing designated agency, notice to the Broker, the Broker's employees or the affiliated licensee of Broker representing a party in the transaction shall for all purposes herein be deemed to be notice to that the party and such persons shall be authorized agents of the party for the purpose of receiving notice. In any transaction where the Broker is practicing designated agency, only notice to the affiliated licensee designated by Broker to represent the party in the transaction shall be notice to that party. Personal delivery of notice may only be delivered to the party intended to receive the same or that party's authorized agent. Notice to a Broker or the affiliated licensee of Broker who is working with, but not representing a party, shall not be deemed to be notice to that party.

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH William Routh IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.
Copyright© 2013 by Georgia Association of REALTORS®, Inc.




E. **Notice by Fax or E-Mail to a Broker or Affiliated Licensee of a Broker:** Notices by fax or e-mail to a Broker or the affiliated licensee of a Broker may only be sent to the e-mail address or fax number, if any, of the Broker or the affiliated licensee of the Broker set forth on the signature page of this Agreement or subsequently provided by the Broker or the affiliated licensee of Broker following the notice procedures set forth herein. If no fax number or e-mail address is included on the signature page of this Agreement (or is subsequently provided by the Broker or the affiliated licensee of Broker following the notice procedures) then notice by the means of communication not provided shall not be valid for any purpose herein.

F. **Address, E-Mail or Number for Receiving Notices:** Notices to a signatory to this Agreement shall only be effective if sent to the FAX number, e-mail address and/or physical address of the signatory listed on the signature page of this Agreement or subsequently provided by the signatory to the other signatories hereto in accordance with the notice provisions herein.

16. **Default.**

A. **Rights of Buyer or Seller:** A party defaulting under this Agreement shall be liable for the default. The non-defaulting party may pursue any lawful remedy against the defaulting party.

B. **Rights of Broker:** In the event a party defaults under this Agreement, the defaulting party shall pay as liquidated damages to every broker involved in this transaction with whom the defaulting party does not have a brokerage engagement agreement an amount equal to the share of the commission the broker would have received had the transaction closed. For purposes of determining the amount of liquidated damages to be paid by the defaulting party, the written offer(s) of compensation to such broker and/or other written agreements establishing such broker's commission are incorporated herein by reference. The liquidated damages referenced above are a reasonable pre-estimate of the Broker(s) actual damages and are not a penalty. In the event a Broker referenced herein either has a brokerage engagement agreement or other written agreement for the payment of a real estate commission with a defaulting party, the Broker shall only have such remedies against the defaulting party as are provided for in such agreement.

17. **Other Provisions.**

A. **Warranties Transfer:** Seller agrees to transfer to Buyer, at closing, subject to Buyer's acceptance thereof (and at Buyer's expense, if there is any cost associated with said transfer), Seller's interest in any existing manufacturer's warranties, service contracts, termite treatment and/or repair guarantee and/or other similar warranties which, by their terms, may be transferable to Buyer.

B. **Repairs:** All agreed upon repairs and replacements shall be performed in a good and workmanlike manner prior to closing.

C. **Entire Agreement and Modification:** This Agreement constitutes the sole and entire agreement between all of the parties, supersedes all of their prior written and verbal agreements and shall be binding upon the parties and their successors, heirs and permitted assigns. No representation, promise or inducement not included in this Agreement shall be binding upon any party hereto. This Agreement may not be amended or waived except upon the written agreement of Buyer and Seller.

D. **Survival of Agreement:** The following shall survive the closing of this Agreement: (1) the obligation of a party to pay a real estate commission; (2) any warranty of title; (3) all representations of Seller regarding the Property; and (4) any obligations which the parties herein agree shall survive the closing or may be performed or fulfilled after the closing.

E. **Governing Law and Interpretation:** This Agreement may be signed in multiple counterparts each of which shall be deemed to be an original and shall be interpreted in accordance with the laws of Georgia. No provision herein, by virtue of the party who drafted it, shall be interpreted less favorably against one party than another. All references to time shall mean the time in Georgia.

F. **Time of Essence:** Time is of the essence of this Agreement.

G. **Terminology:** As the context may require in this Agreement: (1) the singular shall mean the plural and vice versa; and (2) all pronouns shall mean and include the person, entity, firm, or corporation to which they relate.

H. **Binding Agreement Date:** The Binding Agreement Date in this Agreement shall be the date when the party making the last offer, or the Broker (except in a designated agency transaction) the Broker's employees or affiliated licensee of Broker representing that party as a client, receives notice that the offer has been accepted. This party (or the Broker or affiliated licensee representing this party as a client) shall fill in the Binding Agreement Date below and promptly give notice of this date to the other party. Filling in the Binding Agreement Date shall not be deemed to be a counteroffer.

I. **Duty to Cooperate:** All parties agree to do all things reasonably necessary to timely and in good faith fulfill the terms of this Agreement. Buyer and Seller shall execute and deliver such certifications, affidavits, and statements required by law or reasonably requested by the closing attorney, mortgage lender and/or the title insurance company to meet their respective requirements.

J. **Electronic Signatures:** For all purposes herein, an electronic or facsimile signature shall be deemed the same as an original signature; provided, however, that all parties agree to promptly re-execute a conformed copy of this Agreement with original signatures if requested to do so by, the buyer's mortgage lender or the other party.

K. **GAR Forms:** The Georgia Association of REALTORS®, Inc. ("GAR") issues certain standard real estate forms. These GAR forms are frequently provided to the parties in real estate transactions. No party is required to use any GAR form. Since these forms are generic and written with the interests of multiple parties in mind, they may need to be modified to meet the specific needs of the parties using them. If any party has any questions about his or her rights and obligations under any GAR form he or she should consult an attorney. The parties hereto agree that the GAR forms may only be used in accordance with the licensing agreement of GAR. While GAR forms may be modified by the parties, no GAR form may be reproduced with sections removed, altered or modified unless the changes are visible on the form itself or in a stipulation, addendum, exhibit or amendment thereto.

L. **Time Limit of Offer:** The referenced Time Limit of the Offer shall be the date and time on which the Offer expires if both of the following have not occurred: (1) the Offer has not been accepted by the party to whom the Offer was made; and (2) notice of acceptance of the Offer has not been delivered to the party who made the Offer.

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH William Routh IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.

Copyright© 2013 by Georgia Association of REALTORS®, Inc.









18. **Property Not Being Sold for Value of Any Improvements on Land.** Buyer acknowledges that the Property may contain certain incidental improvements such as existing homes, barns, fences, outbuildings and wells. Buyer acknowledges that the Property is being purchased for the value of the land rather than the value of any improvements presently located thereon. All improvements are being sold in "as-is" condition. Buyer acknowledges that the improvements on the Property, if any, may be in need of significant repair, may contain defective conditions and may not have been constructed or used in accordance with all applicable laws. Since the condition of any existing improvements is immaterial to Buyer's decision to purchase the Property, Seller shall have no responsibility to make any disclosures or repairs relative to the same. Buyer covenants not to sue Seller with respect to any matter relating to the condition of said improvements and agrees to indemnify and hold Seller harmless with respect to the same. Buyer expressly waives: (1) any and all rights to inspect and test for lead-based paint and/or lead-based paint hazards for not less than 10 days from the Binding Agreement Date; and (2) the right not to be contractually obligated under this Agreement until the above time period has lapsed.

19. **Assignment.** In the event Buyer has the right to assign this Agreement, the assignment shall not release Buyer of any of its obligations or liabilities hereunder. Notice of such assignment shall be provided to Seller at least 5 days prior to Closing.

20. **Exhibits and Addenda.** All exhibits and/or addenda attached hereto, listed below, or referenced herein are made a part of this Agreement. If any such exhibit or addendum conflicts with any preceding paragraph (including any changes thereto made by the parties), said exhibit or addendum shall control:

- ☐ Appraisal Contingency as Exhibit "_______"
- ☐ Back-up Agreement Contingency as Exhibit "_______"
- ☐ Community Association Disclosure as Exhibit "_______"
- ☐ Exhibit "D" Special Warranties and Representations of Seller
- ☐ Exhibit "E" Special Title Exceptions Pertaining to Property
- ☒ Legal Description of the Property as Exhibit "A"
- ☐ Seller's Property Disclosure Statement as Exhibit "_______"
- ☐ Source of Buyer's Funds as Exhibit "_______"
- ☐ Survey of Property as Exhibit "_______"
- ☒ Other Survey of Tract 2, attached, Exhibit "B"
- ☒ Other Exhibit "C", Customer Agreement
- ☐ Other _______
- ☐ Other _______

**SPECIAL STIPULATIONS:** The following Special Stipulations, if conflicting with any exhibit, addendum, or preceding paragraph (including any changes thereto made by the parties), shall control:

**Additional Special Stipulations ☐ are or ☒ are not attached.**

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH William Routh IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.

Copyright© 2013 by Georgia Association of REALTORS®, Inc.





**Buyer Acceptance and Contact Information**

1. [signature]
Buyer's Signature

Andrew Kendrick
Print or Type Name

6220 Copper Sky Court, Columbia, MD 21045
Buyer's Address

saxquiz@gmail.com
Buyer's E-mail Address

386.961.3043
Buyer's Phone # Fax #

2. ______
Buyer's Signature

Print or Type Name

Buyer's Address

Buyer's E-mail Address

Buyer's Phone # Fax #

**Seller Acceptance and Contact Information**

1. ______
Seller's Signature

Print or Type Name

Seller's Address

Seller's E-mail Address

Seller's Phone # Fax #

2. ______
Seller's Signature

Print or Type Name

Seller's Address

Seller's E-mail Address

Seller's Phone # Fax #

**Selling Broker/Affiliated Licensee Contact Information:**

Routh Realtors, LLC
Selling Broker

By: [signature]
Broker or Broker's Affiliated Licensee

William Routh, Jr.
Print or Type Name

119 — MLS Office Code
H-53559 — Brokerage Firm License Number

229.868.0158 — Phone #
229.868.6648 — Fax #

E-Mail routhrealtors@windstream.net

135444
Selling Agent's Georgia Real Estate License Number

Member of: Altamaha Basin Board of REALTORS®

**Listing Broker/Affiliated Licensee Contact Information:**

Routh Realtors, LLC
Listing Broker

By: [signature]
Broker or Broker's Affiliated Licensee

William Routh, Jr.
Print or Type Name

119 — MLS Office Code
H-53559 — Brokerage Firm License Number

229.868.0158 — Phone #
229.868.6648 — Fax #

E-Mail routhrealtors@2windstream.net

135444
Listing Agent's Georgia Real Estate License Number

Member of: Altamaha Basin Board of REALTORS®

**Binding Agreement Date**: The Binding Agreement Date in this transaction is the date of ______ and has been filled in by ______.

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH William Routh IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.

Copyright© 2013 by Georgia Association of REALTORS®, Inc.





Deed Doc: WD
Recorded 12/30/2008 03:42PM
Georgia Transfer Tax Paid : $1.00
CHESS FOUNTAIN
Clerk Superior Court, TOOMBS County, Ga.
Bk 00889 Pg 0107-0109

Return to:
Duston Tapley
P.O. Box 117
Vidalia, GA 30475

Above space reserved for recording

WARRANTY DEED

STATE OF GEORGIA
COUNTY OF TOOMBS

**THIS INDENTURE**, made this 22 day of December, in the year of our Lord Two Thousand and Eight, between AUBRY LEE PRICE, of the County of Fulton and State of Georgia, as party or parties of the first part, hereinafter called Grantor, and PRICE FINANCIAL GROUP, LLP, a Georgia Corporation, as party or parties of the second part, hereinafter called Grantee ( the words "Grantor" and "Grantee" to include their respective heirs, successors and assigns where the context requires or permits.)

**WITNESSETH:** That the said Grantor, for and in consideration of the sum of One Thousand and no/100 ($1,000.00) DOLLARS and other good and valuable consideration in hand paid, at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, has granted, bargained, sold aliened, conveyed, and confirmed, and by these presents does grant, bargain, sell alien, convey and confirm, unto the said Grantee, heirs and assigns, all the following described property, to-wit:

**TRACT I**

All that tract or parcel of land situate, lying and being in the 1192nd G.M. District, Toombs County, Georgia, containing 45.99 acres, more or less, and being bounded, now or formerly, as follows: On the North by Georgia State Route No. 152; East by a road dividing this property from that of Pembroke State Bank; South by land of Union Camp Corporation; and West by land of the Pembroke State Bank. Said tract being more particularly described on a plat prepared by A. G. Wells, Jr., Surveyor, dated July 20, 1988 and recorded in Toombs County Plat Book 21, page 534. This being the same property as conveyed to Judy D. Sharpe by deed from Harold A. Sharpe dated July 24, 1996 and recorded in Toombs County Deed Book 428, pages 41-42. Also

Exhibit "A"
Legal Description

conveyed is a 1/23 interest in the parcel of land designated as common area, being bounded on the North by Parcel No. 23; East by the Ohoopee River; South by lands of Union Camp Corporation; and West by the 45.99 acre tract above-described. Said common area is more particularly described by a plat prepared by A. G. Wells, Jr., Surveyor, recorded in Toombs County Deed Book 22, page 93.
**Map & Parcel No:** C64-019
**Prior Deed Reference:** See Deed Book 707, Page 275, Toombs County, Georgia Deed Records.

**TRACT II**
All those Eleven (11) lots situate in the 1192nd G.M. District of Toombs County, Georgia, numbered Fourteen (14) through Twenty-Three (23), inclusive, as well as the lot designated as a COMMON AREA lying adjacent to State Route 152, together with a Fifty Foot (50') easement along westerly boundary of said lots. Said lots numbered 14 through 23, COMMON AREA and roadway being contiguous and being bound, now or formerly, on the whole, North by the right-of-way of State Rount #152; East by the channel of the Ohoopee River; South by the COMMON AREA owned by the Sellers, et al; an on the West by lands of Don M. DeLoach and Dean W. DeLoach, the fifty (50') foot roadway being the dividing line between the lands of DeLoach and the lands herein conveyed.

Also, there is conveyed herewith an undivided ten twenty thirds (10/23rd) interest in and to the certain COMMON AREA bound on the North by Parcel Number 23; East by the Ohoopee River; South by lands of Union Camp Corporation;; and on the West by lands of Don M. DeLoach and Dean W. DeLoach.

Said lots have such metes, bounds, and location as shown on a plat prepared by A.G Wells, Jr., G.R.L.S. # 1656, recorded in Plat Book 22, Page 93, Toombs County, Georgia Deed Records.

Said property is subject to an easement for ingress and egress along the Old Roadway shown on the plat above described, which easement shall serve to provide access to the COMMON AREA shown on said plat for all of the owners of the various parcels of the Patterson Property subdivided and sold.
**Map & Parcel No:** C64-18
**Prior Deed Reference:** See Deed Book 758, Page 114-115, Toombs County, Georgia Deed Records.

TO HAVE AND TO HOLD the said tract or parcel of land, with all the singular the rights, members and appurtenances, thereof, to the same being, belonging, or in any wise appertaining to the only proper use, benefit and behoof of the said grantee of the second part, heirs, successors, and assigns, forever, in FEE SIMPLE.

AND THE SAID Grantor of the first part will warrant and forever defend the right and title to the above described property, unto the said Grantee of the second part against the claims of all

Exhibit "B"

Mag. North

50' — to Lyons ℄ S.R. 152 ℄ to Cobbtown —

R/W 50'

Concrete R/W Post (Broken)

1902.3'

I.P. 50' I.P. N66°23'E 500.0' I.P.

189.64'

N66°07'E 717.19

Common Area

Easement Reserved for Lots

14 715.14'

15 624.53'

16 605.43'

17 623.98'

18 680.83'

19 700.95'

20 691.40'

21 665.47'

22 581.39'

23

S66°07'W 543.95'

Common Area

146.35'

143.7'

50' Road Way

N25°35'W 1587.21'

Tract II Legal

Pembroke State Bank (under contract to sell to Don DeLoach and Dean DeLoach)

Ohoopee River Channel

Set on Bluff Pins

Old Road

50' Easement for Egress S64°59'W 50.0' S65°10'W 499.75'

Old Iron

Union Camp Corp.

| | | | |
|---|---|---|---|
| PROPERTY OF: | The Pembroke State Bank | DATE: | July 20, 199[illegible] |
| TOTAL CONTENT: | | 1192nd | G.M. District |
| SCALE - 1 Inch = | 200 Feet | Toombs | COUNTY, GEORGIA |
| | | CITY OF: | N/A |

GEORGIA REGISTERED No. 1656 PROFESSIONAL LAND SURVEYOR A. G. WELLS, JR.

I hereby certify the above plat is a true and correct representation of the lands platted and has been prepared in conformity with the minimum standards and requirements of law.

A.G. Wells, Jr.
Registered Professional Land Surveyor - Georgia #1656

# AGREEMENT TO WORK WITH BUYER AS A CUSTOMER




**2013 Printing**

For and in consideration of Ten Dollars ($10.00) and other good and valuable consideration, Andrew Kendrick as buyer ("Buyer") and Routh Realtors, LLC as broker and its affiliated licensees (hereinafter collectively referred to as "Broker') do hereby enter into this agreement ("Agreement") this date of 9/30/2013.

1. **Agreement to Work with Buyer as Customer.** Buyer hereby agrees to work with Broker in locating real property to purchase suitable to Buyer's needs. In working with Buyer, Broker shall not be representing Buyer as a client but shall only be working with Buyer as a customer. As a customer, Broker cannot represent or advise Buyer on brokerage matters as Broker would be able to do if Broker were representing Buyer but can only perform ministerial tasks on behalf of Buyer. The terms "client", "customer" and "ministerial acts" shall have the meaning that they have in the Brokerage Relationships in Real Estate Transactions Act, O.C.G.A. § 10-6A-1 et. seq.). Buyer or Broker can terminate this Agreement at any time upon written or electronic notice to the other party.

2. **Customer Acknowledgement Regarding Commission to Broker.** Broker will have the right to share in the commission being paid to the listing broker on any property purchased by Buyer if Broker is the procuring cause of the sale (or if Broker would have been the procuring cause but for Customer's abandonment of Broker in the transaction).

3. **Arbitration.** All claims arising out of or relating to this Agreement and the alleged acts or omissions of any or all the parties hereunder shall be resolved by arbitration in accordance with the Federal Arbitration Act 9 U.S.C. § 1 et. seq. and the rules and procedures of the arbitration company selected to administer the arbitration. Upon making or receiving a demand for arbitration, the parties shall work together in good faith to select a mutually acceptable arbitration company with offices in Georgia to administer and conduct the arbitration. If the parties cannot mutually agree on an arbitration company, the company shall be selected as follows. Each party shall simultaneously exchange with the other party a list of three arbitration companies with offices in Georgia acceptable to that party to administer and conduct the arbitration. If there is only one (1) arbitration company that is common to both lists, that company shall administer and conduct the arbitration. If there is more than one arbitration company that is common to both lists, the parties shall either mutually agree on which arbitration company shall be selected or flip a coin to select the arbitration company. If there is not initially a common arbitration company on the lists, the parties shall repeat the process by expanding their lists by two each time until there is a common name on the lists selected by the parties. The decision of the arbitrator shall be final and the arbitrator shall have authority to award attorneys' fees and allocate the costs of arbitration as part of any final award. All claims shall be brought by a party in his or her individual capacity and not as a plaintiff or class member in any purported class or representative proceeding. The arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding. Notwithstanding anything to the contrary contained herein, this agreement to arbitrate shall not apply to: (1) any claim regarding the handling and disbursement of earnest money; and (2) any claim of Broker regarding the entitlement to or the non-payment of a real estate commission hereunder.

4. **Limitation Against Liability.** Broker shall, under no circumstances, have any liability to Customer greater than the amount of the real estate commission paid hereunder to Broker (excluding any commission amount paid to a cooperating real estate broker, if any) or, if no real estate commission is paid to Broker, than a sum not to exceed one hundred dollars.

5. **Receipt by Buyer of Consumer Protection Brochure.** Buyer acknowledges that Buyer ☐ has or ☑ has not received a copy of the GAR brochure entitled "Protect Yourself When Buying a Home" (Form F13).

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH William Routh IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.

Copyright© 2013 by Georgia Association of REALTORS®, Inc.





**BY SIGNING THIS AGREEMENT, BUYER ACKNOWLEDGES THAT: (1) BUYER HAS READ ALL PROVISIONS AND DISCLOSURES MADE HEREIN; (2) BUYER UNDERSTANDS ALL SUCH PROVISIONS AND DISCLOSURES AND HAS ENTERED INTO THIS AGREEMENT VOLUNTARILY; AND (3) BUYER IS NOT SUBJECT TO A CURRENT BUYER BROKERAGE AGREEMENT WITH ANY OTHER BROKER.**

RECEIPT OF A COPY OF THIS AGREEMENT IS HEREBY ACKNOWLEDGED BY BUYER.
The above Agreement is hereby accepted, 9 o'clock 8 .m., on the date of 10/1/2013.

Routh Realtors, LLC
Broker

Address: 25 East Oak Street

McRae GA 31055

119 — MLS Office Code
H-53559 — Brokerage Firm License Number

Broker's Phone# 229.868.0158 & FAX# 229.868.6648

By: [signature]
Broker or Broker's Affiliated Licensee

William Routh, Jr.
Print or Type Name

135444
Agent's Georgia Real Estate License Number

Email Address: routhrealtors@windstream.net

Member of: Altamaha Basin Board of REALTORS®

[signature: Andrew Kendrick]
Buyer's Signature

Andrew Kendrick
Print or Type Name

Buyer's Signature

Print or Type Name

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH William Routh IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.

Copyright© 2013 by Georgia Association of REALTORS®, Inc.



Instanet Forms

**MLS #: A12612A (Active) List Price: $72,080** (23 Views) **3590 GA Highway 152 Lyons, GA 30436**




***TYPE:*** Hunting Land
***FARM TYPE:*** Other-See Remarks
***WATERFRONT:*** River
***WATER VIEW:***
***WATER ACCESS:***

***UNIT #:***
***MAIN AREA:*** Toombs County
***COUNTY:*** Toombs
***SUBDIVISION:*** Metes & Bounds
***ZONING:*** none
***ANNUAL TAXES:*** 661.35
***MONTHLY ASSOC FEE:***
***APX TOTAL ACREAGE:*** 72.08
***ACREAGE RANGE:*** 26 to 99.99 Acres

***LOT DIM:*** ***SRFC WTR:*** River Front
***TOPO FEATURES:*** Timber, Waterfront, River/Creek, Wooded

***DEED BOOK/PAGE:*** 889, page 107 ***DEED RESTRICTIONS:*** No
***LEGAL DESC:*** pb 22,p.93; pb 21, p.534

***ELECTRIC COMPANY:*** Altamaha EMC ***WATER COMPANY:*** deep well needed
***SEWER COMPANY:*** septic tank needed

***IMPROVEMENTS:*** none

***FENCE:*** Barbed, Partial
***ROAD TYPES:*** Paved, Private
***ALLOTMENTS:*** None
***STRUCTURES ON PROPERTY:*** None
***UTILITIES:*** Electricity in Area, Septic Tank Required, Other-See Remarks

***DOCUMENTS ON FILE:*** Aerial Photo, Legal Description, Soil Map, Survey/Plat Map
***POSSESSION:*** Closing
***SHOWING INSTRUCTIONS:*** By Appointment Only, Call List Agent, Sign

***OWNR NM:*** Price Financial Group LLC ***PHONE:***
***OWNERS ADDRESS:***
***OWNRCITY:*** ***STATE:*** ***ZIP CD:***

***TOTAL COMP:*** 8 ***CO-BROKER COMP:*** 4
***LOCKBOX:*** No ***LSEPRCHS:*** No ***ASM LOAN:*** No ***OWNR FIN:*** No
***DIRECTIONS:*** From Lyons, take GA 152 NE until you almost reach the Ohoopee River Bridge, the subject property is last tract on the right before you reach bridge, the Ohoopee river forms the NE boundary for the subject. Sign is in place. Call Billy Routh for more details/directions @ 229.868.0158; Lehman Routh @ 229.868.0317.

***PUBLIC REMARKS:*** Great hunting/fishing/camping/cabin/timber growing tract. Hunt, fish, and relax while you watch your timber investment grow! 72.08 acres by survey, with natural woods, and a long frontage on the Ohoopee River. Abundant game. Paved road frontage. Good opportunity to acquire a family destination and establish a tradition. Call Billy Routh for more details/showing @ 229.868.0158, or Lehman Routh @ 229.868.0317.

***REALTOR REMARKS:*** Great hunting/fishing/camping/cabin/river/timber growing tract. Hunt, fish, and relax while you watch your timber investment grow! 72.08 acres by survey, with natural woods and a long frontage on the Ohoopee River. Abundant game. Paved road frontage. Call Billy Routh for more information @ 229.868.0158, or Lehman @ 229.868.0317.

***DISPLAY ON INTERNET:*** Yes ***DISPLAY ADDRESS:*** Yes ***ALLOW AVM:*** No ***ALLOW COMMENTS:*** No
***ORIGINAL LIST PRICE:*** $72,080 ***LIST DATE:*** 7/30/2013 ***EXPIRE DATE:*** 10/15/2013 ***REFERENCE MLS#:*** 0

***OFFICE NAME:*** Routh Realtors, LLC (#:119)
***MAIN:*** (229) 868-6648
***FAX:*** 0-

***LISTING AGENT:*** William Routh, Jr. (#:1)
***CONTACT #:*** (229) 868-0158
***AGENT EMAIL:*** routhrealtors@windstream.net

Information Herein Deemed Reliable but Not Guaranteed