IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

      Plaintiff,

v.

AUBREY LEE PRICE *et al.*,

      Defendants.

CASE NO. 1:12-CV-2296-TCB

GENWORTH LIFE
INSURANCE COMPANY

      Plaintiff in Intervention,

v.

MELANIE DAMIAN,
in her capacity as Receiver,

      Defendant in Intervention.
_____/

**GENWORTH LIFE INSURANCE COMPANY'S
ACCOMPANYING MEMORANDUM OF LAW IN SUPPORT OF ITS
EMERGENCY MOTION TO INTERVENE AND SUE THE RECEIVER
AND TO STAY THE RECEIVER'S MOTION TO APPROVE (A)
INVESTORS AND CREDITORS CLAIMS PROCEDURE; AND
<u>(B) INITIAL PLAN OF DISTRIBUTION</u>**

1

Genworth Life Insurance Company ("Genworth") hereby files its Memorandum of Law in support of its Emergency Motion to Intervene and to Stay the Receiver's Motion to Approve (A) Investors and Creditors Claims Procedure; and (B) Initial Plan of Distribution (D.E. 114) ("Motion to Intervene"). In support of its Motion to Intervene, Genworth sets forth the following:

## **FACTS RELEVANT TO THIS MOTION**

Aubrey Lee Price ("Price"), was 45 years old and resided at 4616 Rainwood Circle, Valdosta, Georgia 31602, on June 16, 2012. On or about June 16, 2012, Price disappeared after last being seen boarding a commuter boat, the Key West Express, that travels from Northern Florida to the Florida Keys.

It was reported that Price was seen buying dive weights shortly before he boarded the Key West Express. The U.S. Coast Guard, the FBI, and the Lowndes County Sheriff's Office, among other authorities, conducted a search for Price, but did not locate him. Price was subsequently declared missing at sea and was presumed dead. Purportedly, shortly after Price disappeared, his father-in-law received letters written by Price to his loved ones evidencing his intent to commit suicide on the Key West Express.

On December 31, 2012, approximately six months after Price disappeared, after an evidentiary hearing, the Honorable Greg S. Parker, Circuit Court Judge,

Third Judicial Circuit, Hamilton County, Florida, Case No. 2012-CA-424, declared Price legally deceased.

Thereafter, the Securities and Exchange Commission ("SEC") filed suit against Aubrey Lee Price; PFG, LLC; PFGBI, LLC; Montgomery Asset Management, LLC f/k/a PFG Asset Management, LLC; and Montgomery Asset Management, LLC (Florida limited liability company) f/k/a PFG Asset Management, LLC (Georgia limited liability company), alleging violations of the Securities Exchange Act of 1934 and the Investment Advisers Act of 1940 based on the scheme Price orchestrated to defraud investors.

Upon motion by the SEC to appoint a receiver in the instant action, the Court appointed Melanie Damian of Damian & Valori, LLP to serve without bond as receiver for the estates of the Receivership Defendants to marshal and preserve Defendants assets. Kenneth Dante Murena also of Damian & Valori, LLP represents the Receiver, Melanie Damian.

On September 21, 2012, Mr. Murena sent Genworth a letter stating that he represented Ms. Damian and that as receiver, she was now the owner of Policy No. 0010008910 ("Policy"), a life insurance policy on the life of Price. Mr. Murena requested that Genworth change the owner of the policy to Melanie E. Damian, as

Receiver of the Estate of Aubrey Lee Price, and to provide all necessary forms to effect the change of ownership of Price's life insurance policy.

As Receiver, Melanie Damian faxed Genworth a completed Ownership and beneficiary designation request for life insurance policies form on October 11, 2012.

On October 26, 2012, Genworth sent a facsimile and a letter to Mr. Murena clarifying that the change of ownership form specifies that a change in ownership revokes all third party changes, all revocable beneficiary designations, and all prior settlement options and that the new owner becomes the beneficiary unless a beneficiary is designated on the form. The letter also stated that Rebekah Lynn Price was the previous beneficiary and a new form was enclosed in the event the Receiver or her counsel intended to reinstate Rebekah Lynn Price as the beneficiary.

As Receiver, Melanie Damian, also completed Genworth's Proof of loss claimant statement on January 14, 2013 and submitted Price's Presumptive Death Certificate. Also on January 14, 2013, Jason Mazer, special insurance counsel who also represents the Receiver, submitted a letter giving formal notice to Genworth of a claim in the amount of $1,000,000 plus any unused premium.

On January 29, 2013, Genworth paid the death benefits under the Policy, totaling $1,038,414.48—the face value of the Policy plus interest and refund of premium—to the Receiver, Melanie Damian, after receiving all the required documentation. (D.E. 66).

On December 6, 2013, the Receiver filed the Receiver's Motion to Approve (A) Investors and Creditors Claims Procedure; and (B) Initial Plan of Distribution. (D.E. 114). The Motion specified that the Receiver had recovered $1,877,207 in cash and requested that the Court approve a claims administration process and initial plan of distribution of the assets.

On December 31, 2013, Price was arrested pursuant to a routine traffic stop. At that time, it became apparent that Price had faked his own death.

On January 7, 2014, Genworth sent a facsimile and a letter to Mr. Mazer requesting return of the funds due to Price's fraud and faked death that were paid to the Receiver and seeking a report from the Receiver concerning any information required from Genworth to facilitate repayment of the proceeds of the Policy. Genworth has received no response.

Subsequently, Intervenor's Florida counsel attempted to contact Receiver's counsel to no avail. Receiver's counsel has not yet responded to Genworth's

demand for repayment of the Genworth funds. Genworth's obligation to pay the proceeds under the Policy only arose in the event that he was in fact dead.

Because the Receiver possesses funds that are rightfully Genworth's and the Receiver has asked the Court's permission to give Genworth's funds to others, Genworth possesses a property interest that will be impeded or impaired by the outcome of this litigation, and its interests are inadequately represented by the existing parties to the suit. Accordingly, Genworth can intervene of right pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure, or in the alternative, the Court should permit Genworth to intervene pursuant to Rule 24(b) of the Federal Rules of Civil Procedure. Genworth's Complaint is attached to the Motion to Intervene as Exhibit A.

The Court should defer ruling on the Receiver's motion to approve a claims process and distribute the Receivership assets until a final resolution of entitlement to the funds is fully and finally adjudicated.

## ARGUMENT AND CITATION OF AUTHORITIES

### A. Genworth is Entitled to Intervene as of Right.

Pursuant to Rule 24(a) of the Federal Rules of Civil Procedure, Genworth is entitled to intervene as a matter of right. Rule 24(a) provides that "[o]n timely motion, the court must permit anyone to intervene who: (2) claims an interest

relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a) (Intervention of Right). The Eleventh Circuit has held that to invoke this rule, a party must demonstrate that it meets four criteria: "(1) his application to intervene is timely; (2) he has an interest relating to the property or transaction which is the subject of the action; (3) he is so situated that disposition of the action, as a practical matter, may impede or impair his ability; and (4) his interest is represented inadequately by the existing parties to the suit." *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989). If each of these requirements is met, the district court *must* allow intervention. *Id.*

        1.     Genworth's Motion to Intervene is Timely.

In determining whether intervention is timely, the Eleventh Circuit examines "(1) the length of time during which the proposed intervenor knew or reasonably should have known of the interest in the case before moving to intervene; (2) the extent of prejudice to the existing parties as a result of the proposed intervenor's failure to move for intervention as soon as it knew or reasonably should have known of its interest; (3) the extent of prejudice of the proposed intervenor if the motion is denied; and (4) the existence of unusual circumstances militating either

for or against a determination that their motion was timely." *Georgia v. U.S. Army Corp. of Eng'rs*, 302 F.3d 1242, 1259 (11th Cir. 2002) (citing *Chiles*, 865 F.2d at 1213).

Applying the facts to each of the aforementioned factors amply supports the finding that Genworth has timely moved to intervene in the instant action. Genworth learned of its interest in the action only on December 31, 2013, when Price was arrested during a routine traffic stop. Upon learning that Price was alive and that it could be entitled to recover the funds it paid under Price's life insurance policy, Genworth took immediate action to resolve this issue by contacting the Receiver's counsel, who has failed to respond. Specifically, on January 7, 2014, Genworth contacted Receiver's counsel and requested return of the funds paid to the Receiver due to Price's faked death and sought a report from the Receiver detailing any information that was required from Genworth to facilitate repayment of the proceeds of the Policy. Since then, Genworth's Florida counsel has attempted to contact the Receiver's counsel, still to no avail. Because the Receiver has not yet disbursed funds to any of the creditors, the existing parties to this suit are in no way prejudiced by the granting of this Motion. In contrast, however, Genworth will be gravely prejudiced if it is denied the opportunity to intervene in this case and will lose *over one million dollars* that it paid to the Receiver as death

benefits that were not properly due. Accordingly, Genworth's Motion to Intervene as of Right is timely and should be granted.

> 2. Genworth has an interest relating to the property or transaction which is the subject of the action.

Genworth has an interest in the *exact* property that is the subject of the action styled *S.E.C. v. Price*, No. 12-cv-2296 (N.D. Ga. July 2, 2012). After receiving a Proof of loss claimant statement on January 14, 2013 from the Receiver and Price's Presumptive Death Certificate, Genworth paid $1,038,414,48—face value of the Policy plus interest and refund of premium—under Price's life insurance policy. Currently, the Receiver holds and actively seeks to distribute these assets that are comprised of funds that legally belong to Genworth because no death has occurred in the instant case that obligated Genworth to pay the benefits under the Policy. If the Court distributes the funds in accordance with the Receiver's proposed plan, funds to which Genworth is entitled will incorrectly be paid to various entities. Consequently, Genworth has a legally protectable interest in the instant case and a vested interest in what happens to its funds, and accordingly, this factor also favors granting Genworth's Motion to Intervene of Right.

3. Disposition of the Action Will Impede or Impair Genworth's Ability to Protect Its Interest.

Disposition of the instant action will impede and impair Genworth's ability to recover its funds, which it was not legally obligated to pay. To determine whether intervention as of right is warranted under this prong, the courts have stated that the intervor's interest should be one the law recognizes as being owed by the applicant. *Mt. Hawley Ins. Co. v. Sandy Lake Properties, Inc.*, 425 F.3d 1308, 1310-11 (11th Cir. 2005). Various courts confronting a similar set of facts where an insurance company paid the proceeds under a life insurance policy and the insured later turned up alive have found that the beneficiaries were unjustly enriched and that the trustee was liable for conversion when he distributed funds to the beneficiaries even after learning the insured was alive. *See, e.g., Liberty Life Ins. Co. v. Myers*, 2013 WL 530317 (D. Ariz. Feb. 12, 2013). Moreover, an insurance company can recover the benefits paid under a life insurance policy when an insured had not died and engaged in a scheme to defraud the insurer. *Prudential Ins. Co. of Am. v. Harris*, 748 F. Supp. 445 (M.D. La. 1990); *see also N.Y. Life Ins. Co. v. Nashville Trust Co.*, 200 Tenn. 513 (1956) (holding that when an insured disappeared and caused the court to enter a judgment requiring the insurance company to pay the proceeds of life insurance policies, the insurer was entitled to a constructive trust against the proceeds of the policies held by the

insured's beneficiary when the insured was alive). If Genworth is not made a party to this suit, and the Court approves the Receiver's proposed plan of distribution of the assets to various creditors, Genworth will have absolutely no recourse in recovering its money. Because the issue of who is entitled to disbursement of the receivership assets is now hotly contested, it is crucial that Genworth is permitted to intervene in the pending suit and be allowed to assert claims and arguments for why it is entitled to repayment of the proceeds under the Policy.

        4.      Genworth's Interest is Not Adequately Protected by the Existing Parties to the Suit.

Intervention is also warranted because Genworth's interests in recovering its funds are not protected by the existing parties to the lawsuit. It is only when the intervenor has interests identical to the present parties to the suit that courts deny intervention. *Chiles*, 685 F.2d at 1215. However, in this case, Genworth's interests are not aligned with and indeed are antagonistic to the current parties to the instant action. In stark contrast to the creditors seeking disbursement of the Receivership assets, Genworth opposes distribution of its funds to various entities that are not entitled to the money. Rather, Genworth seeks to preserve the Receivership assets until its funds are recovered and asks the Court to postpone approving distribution of the Receivership funds. That Genworth is being inadequately represented by present parties to suit is evidenced by the fact that the

Receiver has not asked the court to defer ruling on the proposed distribution of the receivership assets despite Genworth's demand for repayment, and the Receiver's counsel has failed to respond to the undersigned counsel to resolve this issue. Accordingly, Genworth's must be permitted to intervene as of right.

### B. In the Alternative, the Court Should Grant Genworth's Motion for Permissive Intervention.

Pursuant to Rule 24(b)(2) of the Federal Rules of Civil Procedure, a party may be permitted to intervene in a pending lawsuit even if it has not met the criteria for intervention as of right. "On timely motion, the court may permit anyone to intervene who: (B) has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b) (Permissive Intervention, In General); *see also Chiles*, 685 F.2d at 1213. The granting of this motion is purely discretionary. For the reasons already set forth, Genworth's Motion to Intervene is timely filed; accordingly, it will focus on the remaining factors under this analysis.

Genworth seeks to assert claims against the Receiver that share common questions of law and fact with the underlying action, namely whether or not Genworth's payment of the proceeds under Price's life insurance policy are properly part of the Receivership assets. Without resolution of this issue, the funds may be improperly disbursed. Further, the basic question of which entities are

12

entitled to the Receivership assets, and in which amounts, is the ultimate inquiry the pending suit seeks to resolve.

In exercising its discretionary authority, the district court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). As set forth above, the existing parties are not unduly delayed or prejudiced in this action because this honorable Court has yet to authorize any payment of the Receivership assets. Moreover, claims of the various creditors seeking disbursement of the Receivership assets are intertwined with Genworth's demand for the return of its funds, so a minor delay resulting in a proper and just determination is beneficial to all the entities involved and will prevent further litigation. Accordingly, Genworth should be entitled to permissively intervene if its motion for intervention of as of right is denied.

### C.  A Stay Pending Resolution of Genworth's Claims is Proper Here.

Because Genworth has a direct and immediate stake in the Receivership assets, the Court should defer ruling on the Receiver's Motion to Approve (A) Investors and Creditors Claims Procedure; and (B) Initial Plan of Distribution until it is determined which entities are properly entitled to the Receivership assets. Until such a determination is made, this Court should stay the proceedings pending resolution of Genworth's claims.

## **CONCLUSION**

Genworth's Motion for Intervention as of Right must be granted at this stage of the pending suit so it can adequately ensure that its interests are being protected and vigorously asserted. Genworth will be unduly prejudiced if its Motion to Intervene is denied while the existing parties to the suit will not be harmed at all if Genworth is allowed to intervene. Moreover, if the Court finds that Genworth fails to meet the standard for intervention as of right, the Court should permit Genworth to intervene under its discretionary authority to accord Genworth the opportunity to protect its interests and prevent further litigation.

WHEREFORE, for the reasons stated in its Motion to Intervene and herein, Genworth respectfully requests that this Court enter an order allowing Genworth to intervene in the instant action and sue Melanie E. Damian, Receiver, and that the Court defers issuing an order on the Receiver's Motion to Approve (A) Investors and Creditors Claims Procedure and (B) Initial Plan of Distribution.

This 22nd day of January, 2014.

*s/ David J. Forestner*
David J. Forestner
Georgia Bar No. 269177
Carlton Fields Jorden Burt, P.A.
One Atlantic Center, Suite 3000
1201 W. Peachtree Street
Atlanta, GA 30309

Phone: 404-815-3400
Fax: 404-815-3415
Email: dforestner@cfjblaw.com

And

Raul Cuervo
Carlton Fields Jorden Burt, P.A.
Miami Tower
100 S.E. Second Street, Suite 4200
Miami, FL  33131-2113
Phone: 305-530-0050
Fax: 305-530-0055
Email: rcuervo@cfjblaw.com

***Attorneys for Plaintiff in Intervention***
***Genworth Life Insurance Company***

## LOCAL RUL 5.1(C), CERTIFICATION

Pursuant to Local Rule 5.1(C), I hereby certify that the foregoing has been prepared with Times New Roman, 14 point.

*/s/ David J. Forestner*
David M. Forestner

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

    Plaintiff,

v.

AUBREY LEE PRICE *et al.*,

    Defendants.

CASE NO. 1:12-CV-2296 TCB

GENWORTH LIFE
INSURANCE COMPANY

    Plaintiff in Intervention,

v.

MELANIE DAMIAN,
in her capacity as Receiver,

    Defendant in Intervention.
_____/

## CERTIFICATE OF SERVICE

I hereby certify that I have this date served a true and correct copy of *Genworth Life Insurance Company's Accompanying Memorandum Of Law In Support Of Its Emergency Motion To Intervene And Sue The Receiver And To Stay The Receiver's Motion To Approve (A) Investors And Creditors Claims Procedure;*

*And (B) Initial Plan Of Distribution* on opposing counsel, by electronic mail and by depositing a copy of same in the United States Mail, adequate postage affixed thereon, addressed to:

Madison Graham Loomis
W. Shawn Murnahan
Securities & Exchange Commission
950 East Paces Ferry Road, N.E., Suite 900
Atlanta, GA  30326-1382

Robert J. Waddell, Jr.
Laura Elizabeth Reinhold
McGuire Woods, LLP
1230 Peachtree Street, N.E.
Suite 2100, Promenade II
Atlanta, GA  30309

Kenneth Dante Murena
Damian & Valori, LLP
1000 Brickell Avenue, Suite 1020
Miami, FL  33131

Peter Muller
Goodman McGuffey Lindsey & Johnson, LLP
530 Stephenson Avenue, Suite 300
Savannah, GA  31405-5987

Alexander B. Feinberg
Christopher C. Frost
John A. Little, Jr.
Maynard, Cooper & Gale, P.C.
1901 Sixth Avenue North
2400 Regions Harbert Plaza
Birmingham, AL  35203

This 22nd day of January, 2014.

/s/ *David J. Forestner*
David J. Forestner
Georgia Bar No. 269177
Carlton Fields Jorden Burt, P.A.
One Atlantic Center, Suite 3000
1201 W. Peachtree Street, NW
Atlanta, GA 30309

***Attorneys for Plaintiff in Intervention***
***Genworth Life Insurance Company***