# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

### CASE NO.  1:12-cv-2296-TCB

Securities and Exchange Commission,

     Plaintiff,

vs.

Aubrey Lee Price, *et. al.*,

     Defendants.

_____/

Genworth  Life  Insurance  Company,
Protective  Life  Insurance  Company,
Household Life Insurance Company,

     Plaintiffs in Intervention,

vs.

 Melanie E. Damian, as Receiver, *et. al.,*

     Defendant in Intervention.
_____/

## THE RECEIVER'S MOTION TO COMPEL DISCOVERY FROM GENWORTH LIFE INSURANCE COMPANY, AND INCORPORATED MEMORANDUM OF LAW

     Defendant in Intervention, Melanie E. Damian, as Receiver for the Estate of

Aubrey Lee Price, PFG, LLC, PFGBI, LLC, Montgomery Asset Management,

LLC f/k/a PFG Asset Management, Montgomery Asset Management, LLC f/k/a

PFG Asset Management (the "Receiver"), pursuant to Federal Rules of Civil Procedure 26, 36, 37, and Local Rule 37.1 moves this Court for entry of an Order compelling Genworth Life Insurance Company ("Genworth") to produce certain facts and documents responsive to the Receiver's Request for Production, and an order requiring Genworth to amend certain of its answers to the Receiver's Request for Admissions.

## INTRODUCTION

The central issues in this matter are whether and to what extent Genworth and the other life insurance companies are entitled to repayment of their death benefits for Aubrey Lee Price ("Price") where it was known that he was merely presumed deceased and had disappeared under suspicious circumstances.  The Receiver has requested that Genworth produce certain documents critical to the Receiver's defenses, including the voluntary payment and equitable estoppel doctrines.  Genworth has complied in some respects, but continues to withhold unprivileged documents that are directly relevant or would lead to the discoverability of admissible evidence.  Specifically, Genworth has withheld the unprivileged facts discussed by its employees and in-house counsel as well as unprivileged, discoverable documents drafted nearly six months *prior* to the Receiver's claim for death benefits.  Genworth has also withheld materials that are routinely ordered produced in similar life insurance claims litigation, such as its

life insurance claims handling guidelines.

The following withheld facts and documents are discoverable and should be ordered produced:

1. Genworth's entire claims file, including all facts discussed by Genworth's employees and in-house counsel and all related internal documents (responsive to Receiver's Request No. 2); and

2. Genworth's policies, procedures, guidelines, or best practices pertaining to the payment of life insurance benefits, including those pertaining to death investigations (responsive to Receiver's Request No. 12).

Finally, Genworth's responses to the Receiver's Request for Admissions Nos. 1, 2, 3, 5, and 6 are non-responsive and legally insufficient under Rule 36.

## **PROCEDURAL HISTORY**

The Receiver served Genworth with her First Request for Production, Request for Admissions, and Interrogatories on July 21, 2014.[1]  The Receiver requested that Genworth provide its responses prior to the August 18, 2014 deadline for the parties' Joint Statement of Stipulated Facts [D.E. 210], but Genworth's counsel refused. Genworth thereafter served its objections and responses on August 20, 2014.[2]   On September 3, 2014, the parties conferred via

---

[1] A copy of the Receiver's discovery requests are attached hereto as Exhibit A.

[2] A copy of Genworth's objections and responses are attached hereto as Exhibit B.

telephone in an attempt to resolve Genworth's deficient responses and failure to produce responsive documents.   On September 17, 2014, the Receiver sent a detailed letter to Genworth's counsel in a second good faith effort to informally resolve the issues raised, requesting that Genworth produce additional responsive documents, disclose facts communicated by its employees and in-house counsel, and amend certain of its admissions.[3]  Counsel for Genworth indicated that he would respond as requested by September 22, 2014.  As of September 24, 2014, no response has been received from Genworth.

## THE DISCOVERY REQUESTS AND OBJECTIONS AT ISSUE

Pursuant to Local Rule 37.1(A), the following requests and responses are at issue:

**Receiver's Request No. 2**: The entire claim file(s) for the Claim, whether local, field, regional or home office, including files held by any entity affiliated, contractually or otherwise, with Genworth.  This Request includes but is not limited to the claim file jacket(s), notes, claim notes, system notes, investigative reports, daily diaries, communication logs, statistical and coding information, letters, reports, media reports or news articles, invoices and billing, records of phone calls, e-mails, or other documents addressing the Claim.   This Request specifically includes any claim-related files maintained by claims management agencies, internal and external investigators, or independent adjusters assigned to this Claim.   If any requested information is electronically stored and has not already been reproduced in the claim file(s), produce a screenshot or screen capture of the electronically stored information.

**Genworth's Response No. 2**: Objection. This request seeks information that is protected by the attorney-client privilege, including internal memoranda

---

[3] A copy of the Receiver's meet-and-confer letter is attached hereto as Exhibit C.

and correspondence between counsel for Genworth and others. This request is overly broad and also seeks information that is not reasonably calculated to lead to the discovery of admissible evidence because the Policy was in effect long before the Receiver became involved, and accordingly, there exist a voluminous amount of internal notes that have no bearing on any issues in this litigation.  Notwithstanding the foregoing objections, the claim file for the Receiver's claim on Price's Policy will be produced at a mutually agreed time and place, excluding any privileged communications.

**Authority Supporting the Receiver's Motion**:

**A. The requested documents (or facts) are relevant and discoverable.**

Request No. 2 seeks Genworth's claim file and its contents.  Under Rule 26(b)(1), parties "may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party."  *In re Ford Motor Co.,* 345 F.3d 1315, 1316 (11th Cir. 2003); *Alig-Mielcarek v. Jackson*, 286 F.R.D. 521, 525 (N.D. Ga. 2012) ("The rule is to be broadly construed with a bias in favor of wide-open discovery").

This litigation centers upon the facts surrounding Genworth's receipt and payment of the claim for Price's death benefits.  Nevertheless, Genworth has withheld a substantial portion of its claims file under the guise of relevance and attorney-client privilege. In its objection, Genworth claims to withheld a "voluminous amount of internal notes," and in its Amended Privilege Log, Genworth identified fourteen (14) documents responsive to this request.[4]  These items, logged as items P-1 through P-14, also purport to have been withheld on

---

[4] A copy of Genworth's Amended Privilege Log is attached hereto as Exhibit D.

CASE NO.  1:12-cv-2296-TCB

work product grounds.[5]

## B. Facts within attorney-client communications are not privileged.

Genworth's objections should be overruled, and items P-1 through P-10 (or the facts discussed therein) produced.  In the seminal case addressing the scope of the attorney-client privilege held by a corporation, the Supreme Court held that facts that are communicated to or discussed with counsel are not privileged. *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981) (the attorney-client privilege "only protects disclosure of communications, it does not protect disclosure of the underlying facts by those who communicated with the attorney").

Georgia's courts agree.[6]  In *Tenet Healthcare Corp. v. Louisiana Forum Corp.,* 273 Ga. 206, 207–208(1), 538 S.E.2d 441 (2000), the Supreme Court of Georgia noted that Georgia's attorney-client privilege has been confined "to its narrowest permissible limits" and that:

> Inasmuch as the exercise of the privilege results in the exclusion of evidence, a narrow construction of the privilege comports with the view that the ascertainment of as many facts as possible leads to the truth, the discovery of which is the object of all legal investigation.

*Id.; see also Bryant v. State*, 282 Ga. 631, 636 (2007).  Facts communicated to counsel are not privileged.  *See*, *e.g.*, *Ostroff v. Coyner*, 369 S.E.2d 298, 187 Ga.

---

[5] The Receiver does not contest the discoverability of items P-11 through P-14.

[6] Whether documents are protected by the attorney-client privilege is a substantive issue governed by state law.  *See GAB Bus. Serv., Inc. v. Syndicate 627*, 809 F.2d 755, 762 (11th Cir. 1987).

App. 109, 115  (1988) ("the mere fact that a statement is made to an attorney for use in preparing for litigation does not render it a communication to the attorney within the privileged category…'It is axiomatic that one cannot render privileged that which is otherwise not privileged merely by placing it in the hands of his attorney' "); *accord United States v. Davita, Inc.,* Civ. No. 1:07-CV-2509, 2014 WL 4116590 at *3 (N.D. Ga. Mar. 31, 2014).

The Receiver has clarified that she does not seek Genworth's legal advice, simply all <u>facts</u> contained within the only items that might possibly qualify as privileged, including items P-1, P-5, P-7. *See* Ex. C at pg. 1-2.  Genworth's attorney-client privilege objections are thus invalid.

C. <u>**Certain of Genworth's privilege objections are legally insufficient.**</u>

Genworth's attorney-client privilege objections to the additional disputed documents – items P-2, P-3, P-4, P-6, and P-8 – are legally insufficient as they fail to establish the privileged nature of the withheld documents.  <u>Genworth does not contend that these items pertain to legal advice</u>, though they were withheld on that basis.  *See* Ex. D.  Because they do not pertain to legal advice, the privilege does not apply.  *Ostroff*, 187 Ga. App. at 115-116.  Nor is the fact that the communications involved in-house counsel a *per se* bar to their production. *Davita*, 2014 WL 4116590 at *4 (communications between a client and corporate counsel are not cloaked with the presumption of privilege inherent to

communications with outside litigation counsel).

Similarly, items P-9 and P-10 are vaguely described as communications "regarding Price's insurance policies," and "advice" and "analysis" after Genworth was contacted by law enforcement authorities.  But Genworth's privilege log does not even identify the issue requiring this alleged legal "advice." *Compare* Ex. D, Privilege Log, Item P-1 *with* Item P-9, 10.

Genworth has accordingly failed to meet its burden to establish that the primary purpose of these communications was in fact legal advice, supporting its privilege designations.  *See In re Grand Jury Investigation (Schroeder)*, 842 F.2d 1223, 1225 (11th Cir. 1987) (the party claiming privilege bears the burden of proving that the communications are privileged).  The proffered descriptions of these items confirms that, at best, these items might qualify as work-product, though those claims similarly fail.

### D. <u>Genworth's work product objections are invalid as a matter of law.</u>

Genworth's work product objections are invalid, and items P-2, P-3, P-4, P-6, P-8, P-9, and P-10 should be produced in their entirety.  Work product immunity does not apply in the first-party insurance context where a claim has not yet been made.[7]  *See Harper v. Auto-Owners Ins. Co.*, 138 F.R.D. 655, 663 (S.D. Ind. 1991)

---

[7] Whether documents are protected by the work product doctrine is a procedural question governed by federal law in a diversity action.  *Underwriters Ins. Co. v. Atlanta Gas Light Co.*, 248 F.R.D. 663, 667 (N.D. Ga. Feb. 19, 2008).

("anticipation of litigation is *presumed unreasonable* under the Rule before a final decision is reached on the claim") (emphasis added).  Indeed, <u>no court</u> has ever held that documents generated by an insurer *prior to the receipt of a claim* are work product immune.  *See Lett v. State Farm Fire & Cas. Co.*, 115 F.R.D. 501, 503 (N.D. Ga. 1987) (anticipation of litigation is "the point where the probability of litigating the claim is substantial and imminent"); *see also Janicker v. George Washington University,* 94 F.R.D. 648, 650 (D.D.C. 1982) (rejecting the contention that a defendant who anticipates the contingency of litigation automatically qualifies an "in house" report as work product).

No court has done so because claims management is part of an insurer's regular business conduct.  *Atlanta Gas Light Co.*, 248 F.R.D. at 667.  To do so here would expand the boundaries of work-product immunity to the point that *all* communications – regardless of whether they were "in anticipation of litigation" or not – based upon nothing more than insurer fiat.  Here, items P-1 through P-10 could not possibly have been prepared in anticipation of litigation, as each of these items were drafted up to <u>*six months prior*</u> to the Receiver's claim for Price's death benefits.  No claim existed at that time, and thus litigation could not have been "substantial" or "imminent."[8]  Accordingly, all such non-privileged documents

---

[8] Because the date these materials were drafted relative to the date of the Receiver's claim is conclusive evidence that they were not prepared in anticipation of litigation, the Receiver does not address the "substantial need" prong of Rule

should be produced, along with all <u>facts</u> contained within any privileged documents.[9]

> **Receiver's Request No. 12**: All documents governing or relating to the policies, procedures, guidelines, or best practices of Genworth's payment of life insurance benefits, including but not limited to those addressing claims investigations prior to the payment of death benefits.

> **Genworth's Response No. 12**: Objection. This request is overly broad, vague, not limited to a relevant time period, and seeks material that is not within the permissible scope of discovery.  Genworth's policies, procedures, and guidelines with regard to its payment of life insurance benefits and claims investigation generally are neither relevant to any issues presented in this litigation, nor is this request reasonably calculated to lead to the discovery of admissible evidence.

**Authority Supporting the Receiver's Motion**:

**E.    Genworth's claims handling guidelines and materials are relevant and discoverable**.

Request No. 12 seeks Genworth's life insurance claims handling and investigative guidelines.  As this litigation involves a disputed claim and

---

26(b)(3) here.  The Receiver contends the date of Price's reappearance and capture, December 31, 2013, is the first date the parties could have reasonably anticipated litigation concerning the death benefits paid and at issue here.  Assuming *arguendo* this Court finds that the documents are work product immune, the Receiver's substantial need is clear: the withheld information cannot be obtained from any other party or third-party source, and the information is the only reliable indication as to what Genworth in fact knew and believed prior to its payment of the claim.

[9] The Receiver acknowledges that an *in camera* review may be appropriate with respect to certain of Genworth's privilege objections [P-1, P-5, P-7, P-9, and P-10], though its work product objections are legally unsupportable.  *See, e.g., Abdallah v. Coca-Cola Co.,* Civ. No. A1:98CV3679RWS, 2000 WL 33249254 (N.D. Ga. Jan. 25, 2000).

Genworth's conduct at the time it paid the claim, these guidelines are plainly relevant to the Receiver's defenses and reasonably calculated to lead to the discoverability of admissible evidence.  At a minimum, these materials detail Genworth's standard claims handling procedures (including verification of death procedures) and provide the rubric for its investigation and assessment of the claim at issue.

These items are routinely produced in claims-related insurance litigation, as an insurer's failure to comply with its own guidelines may provide insight into the reasoning behind its decisions at issue during that process.  *See, e.g., Acree v. Hartford Life & Acc. Ins. Co.,* 917 F. Supp. 2d 1296, 1317 (M.D. Ga. 2013) (insurer's claims analysts relied upon the company's claims guidelines in making and refining their claims decisions).  Genworth's claims handling guidelines and verification of death procedures are also relevant to other critical issues in this case, as the claim at issue was paid based solely upon a presumptive death certificate and under circumstances all parties recognized as suspicious.[10]

These materials are also reasonably calculated to lead to the discovery of admissible evidence concerning Genworth's contention that it is entitled to repayment.  For example, its guidelines and related materials are direct evidence of

---

[10] It is undisputed that despite Price's apparent suicide, a nationwide manhunt produced no credible evidence of his death and that he remained wanted by law enforcement for a securities fraud scheme until his capture on December 31, 2013.

its specific business practices that bear upon the issue of whether it reasonably should have made payment on the claim under the circumstances present here. *See, e.g., Am. Gen. Life Ins. Co. v. Schoenthal Family, LLC,* 248 F.R.D. 298, 304 (N.D. Ga. 2008) *aff'd*, 555 F.3d 1331 (11th Cir. 2009) (addressing the relevance of such materials in the context of a *Daubert* challenge).   And, they are relevant to the issue of whether its guidelines comport with generally accepted standards in the life insurance industry and Georgia law, entitling it to repayment.

Recognizing these facts, the other life insurance carriers in this matter have *already consented* to the production of these materials pending the entry of a confidentiality agreement.   During the conferral process with Genworth, the Receiver also offered to limit the scope of the materials sought to those that were in effect as of the date of the Receiver's claim.   Genworth has refused.   This Court should order their production.

> **Receiver's Admission No. 1**: Admit that, prior to its payment of the Claim, Genworth was aware that Aubrey Lee Price was declared presumptively dead.

> **Genworth's Admission No. 1**: Admitted that on or near the time that the Receiver submitted her Claim on Price's Policy, in which the Receiver claimed that Price had committed suicide, the Receiver submitted to Genworth the Order Granting Petition for Presumptive Death Certificate and represented that Price had been declared dead.

> **Authority Supporting the Receiver's Motion**:

**F**.   <u>**Genworth's Proposed Admissions are non-responsive.**</u>

Each of Genworth's responses to the Receiver's Requests for Admissions at issue here are equivocal, ambiguous and non-responsive, rendering them legally insufficient.  The Eleventh Circuit has recognized that "Rule 36 is a time-saver, designed 'to expedite the trial and to relieve the parties of the cost of proving *facts* that will not be disputed at trial.' " *Perez v. Miami-Dade Cnty.*, 297 F.3d 1255, 1268 (11th Cir. 2002) (citing 8A Wright, Miller & Marcus, *Federal Practice and Procedure* § 2252 (2d ed.1994) (emphasis in original)).

Rule 36 thus provides a mechanism by which the parties can limit the scope of discovery and contested issues in advance.  It also provides a procedure through which a party may withdraw or amend its admissions based upon the discovery of new evidence.  FED. R. CIV. P. 36(b).  Though Genworth specifically moved this court in the parties' Joint Preliminary Report and Scheduling Plan [D.E. 191, pg. 7] for an expedited discovery period, Genworth has now objected and qualified its answers to requests that are noncontroversial, undisputed, or that it has no reasonable good-faith basis to contest.  This Court should order Genworth to amend its responses.

Request No. 1 asks Genworth to admit that it knew Price was merely declared presumptively deceased prior to the payment of its claim.  Instead of admitting this fact, Genworth responds that it received documents and a court order

containing this fact from the Receiver.  Genworth's answer implies that it has some basis to deny or disclaim its corporate knowledge of this fact, but does not establish any good-faith basis for doing so.  *See* FED. R. CIV. P. 36(a)(4). This Court has found similar requests for admissions of a party's knowledge "fairly straightforward" and a party's failure to appropriately answer "inexcusable," warranting sanctions.  *See Allstate Ins. Co. v. Ever Island Elec. Co.*, CIV. No. 1:03-CV-3817-JEC, 2007 WL 2728979 at * 5, n.5  (N.D. Ga. Sept. 17, 2007).

> **Receiver's Admission No. 2**: Admit that the Policy was properly reassigned to the Receiver pursuant to Judge Batten's *Order Appointing Receiver*, D.E. 20.

> **Genworth's Admission No. 2**: Genworth objects to this Request to the extent that it seeks a legal conclusion, to which no response is required. Notwithstanding the foregoing objection, Genworth admits only that it received the Court's Order Appointing Receiver from the Receiver.

> **Authority Supporting the Receiver's Motion**:

Request No. 2 asks Genworth to admit that its policy was properly reassigned to the Receiver pursuant to this Court's *Order Appointing Receiver* [D.E. 20].  As clarified during the parties' conferrals, this request does not seek Genworth's stipulation to a legal conclusion, it requests an admission from Genworth as to whether it has any factual basis to contend that the reassignment of the policy was fraudulent or improper.  This information is the same information Genworth has withheld and that is the subject of items P-1, P-5, and P-7 in its Amended Privilege Log.  *See* Ex. D.  That Genworth did in fact make the

requested beneficiary change and pay the claim following its proffered consultation with counsel leaves no reasonable good-faith basis for it to refuse to admit this non-controversial fact.  Yet it has refused to do so.

**Receiver's Admission No. 3**: Admit that Genworth did not contest any proceedings or court order declaring Aubrey Lee Price presumptively dead prior to its payment of the Claim.

**Genworth's Admission No. 3**: Genworth objects to the term "contest" as vague and overbroad. Notwithstanding this objection, admitted that Genworth paid the claim after receiving the Receiver's claim form, which represented that Price died by suicide and the Order Granting Petition for Presumptive Death Certificate.

**Authority Supporting the Receiver's Motion**:

Request No. 3 asks Genworth to admit that it did not contest any proceeding or court order declaring Price presumptively deceased prior to its payment of the claim.  Genworth's non-response is egregious, as it is undisputed that Genworth was not a party to such proceedings, did not seek to intervene in those proceedings, and never challenged or sought reconsideration of the court's order following those proceedings.  Nevertheless, Genworth's answer is completely non-responsive and it has refused to amend its answer.

\*    \*    \*    \*    \*    \*

**Receiver's Admission No. 5**: Admit that Genworth did not contest payment of the Claim prior to its payment of the Claim.

**Genworth's Admission No. 5**: Genworth objects to the term "contest" as vague and overbroad. Notwithstanding the foregoing objection, admitted

that following the Receiver's submission of the Claim form stating that Price died by suicide and the Court's Order Granting Petition for Presumptive Death Certificate, Genworth paid the Claim.

**Authority Supporting the Receiver's Motion**:

Request No. 5 asks Genworth to admit that it did not contest payment of the Receiver's claim prior to payment.  As in its response to Request No. 4, the assertion that the term "contest" is vague and overbroad in the context of a life insurance policy − that itself contains an industry-standard *incontestability* clause − is disingenuous.  It is undisputed that Genworth did not contest payment of the claim prior to its payment.  Genworth cannot justify its non-responsive answer, yet it has refused to amend its response.

> **Receiver's Admission No. 6**: Admit that Genworth does not contend that the Receiver's conduct in making the Claim for the Policy's death benefits was fraudulent.

> **Genworth's Admission No. 6**: Genworth has made a reasonably inquiry, and the information that it knows or can readily obtain is insufficient to admit or deny this request at this time. Genworth cannot know the intent of the Receiver, which is an essential element of a claim for fraud. Genworth contends that the Receiver, standing in the shoes of Price, is furthering Price's fraud by refusing to repay the funds due and owing Genworth, and to that extent, the request is denied.

**Authority Supporting the Receiver's Motion**:

Request No. 6 asks whether Genworth has a factual basis to contend that the

Receiver's original <u>claim</u> for Price's death benefits was fraudulent.[11]  It does not

seek the non-responsive admission offered by Genworth.

While a party's reasonable inquiry and statement that it cannot admit or

deny can be legally sufficient, that Genworth has proffered that it has consulted

with legal counsel on this issue calls the accuracy of its response into question.

*Compare* Ex. D, P-1, P-5, and P-7 *with* Genworth's Admission No. 6.; *see also*

*Interland, Inc. v. Bunting,* Civ. No. 1:04-CV-444-ODE, 2005 WL 2414990 at *10

(N.D. Ga. Mar. 31, 2005) ("Defendant is warned, however, that if facts developed

during trial or further litigation expose his failure to make a reasonable inquiry

before responding to [the] request, he will be held accountable pursuant to Rule

37(c)").  Genworth's inconsistent positions cannot be reconciled: either it made

reasonable inquiry into the factual basis for the requested admission or it did not.

Its proffer that it consulted with legal counsel and its present knowledge of the

facts to date warrant a responsive, unambiguous and unequivocal response.

## <u>CONCLUSION</u>

**WHEREFORE**, Genworth has improperly withheld the <u>facts</u> of any

communications this Court deems privileged, and improperly designated

communications that do not sufficiently constitute or pertain to legal advice as

privileged [P-1, P-5, P-7, P-9, P-10].  All facts in any such communications this

---

[11] The scope of this request was limited through the parties' conferrals.

CASE NO.  1:12-cv-2296-TCB

Court deems privileged should be produced.   Genworth has also improperly withheld a number of unprivileged internal documents generated well before the date Price reappeared and the parties reasonably anticipated litigation, December 31, 2013.  These unprivileged documents cannot qualify as protected work product as a matter of law given the dates they were drafted and must be produced [P-2, P-3, P-4, P-6, P-8, P-9, P-10]. Genworth's claims handling guidelines and related materials are relevant to the Receiver's defenses and reasonably calculated to lead to the discovery of admissible evidence and should also be ordered produced. Finally, Genworth's proposed admissions are non-responsive and legally insufficient, and they should be ordered amended by this Court, along with any other relief this Court deems equitable, just, and proper.

Respectfully submitted,

**VER PLOEG & LUMPKIN, P.A.**

/s/ Jason S. Mazer
**Jason S. Mazer**
Florida Bar No. 0149871
jmazer@vpl-law.com
**Matthew L. Baldwin**
Florida Bar No.  27463
mbaldwin@vpl-law.com
100 S.E. 2nd Street, 30th Floor
Miami, Florida 33131
Telephone:  (305) 577-3996
Facsimile:  (305) 577-3558
*Special Insurance Counsel for the Receiver, Admitted Pro Hac Vice*

and

**DAMIAN & VALORI, LLP**
**Kenneth Dante Murena, P.A.**
Florida Bar No. 147486
kmurena@dvllp.com
**Guy F. Giberson, P.A.**
Florida Bar No.  627402
ggiberson@dvllp.com
1000 Brickell Avenue, Suite 1020
Miami, Florida 33131
Telephone:  (305) 371-3960
Facsimile:  (305) 371-3965
*Counsel for the Receiver,*
*Admitted Pro Hac Vice*


and

**PETITT    WORRELL    CRAINE**
**WOLFE, LLC**
**Andrew Worrell, Esquire**
Georgia Bar No.  311027
Andrew@petittworrell.com
Suite 1030, One Glenlake
1 Glenlake Parkway
Atlanta, Georgia 30328
Telephone: (404) 249-7480
Facsimile: (404) 442-4463
*Co-Counsel for the Receiver*

217292_1
D032.100

CASE NO.  1:12-cv-2296-TCB

## **LOCAL RULE 5.1 CERTIFICATION**

By signature below, counsel certifies that the foregoing document was prepared in Times New Roman, 14-point font in compliance with Local Rule 5.1.

## **LOCAL RULE 37.1 CERTIFICATION**

By signature below, counsel for the Receiver certifies that he has conferred with counsel for Genworth in an attempt to resolve these issues as described herein but has been unable to do so in in compliance with Local Rule 37.1.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 24, 2014 I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in this manner specified, *via* transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

/s/ Jason S. Mazer
**Jason S. Mazer**

217292_1
D032.100

| SERVICE LIST | |
|---|---|
| **Madison Graham Loomis, Esq.**<br>**W. Shawn Murnahan, Esq.**<br>Securities & Exchange Commission-GA<br>950 East Paces Ferry Road, N.E.<br>Suite 900<br>Atlanta, Georgia 30326<br>Telephone:  (404) 842-7600<br>Email: loomism@sec.gov<br>Email:  murnahanw@sec.gov<br>*Securities and Exchange Commission* | **Robert J. Waddell, Jr., Esq.**<br>**Laura E. Reinhold, Esq.**<br>MCGUIRE WOODS, LLP<br>Suite 2100, Promenade II<br>1230 Peachtree Street, N.E.<br>Atlanta, Georgia  30309<br>Telephone:  (404) 443-5500<br>Email: rwaddell@mcguirewoods.com<br>Email:  lreinhold@mcguirewoods.com<br>*Counsel for FDIC* |
| **Peter D. Muller**<br>GOODMAN MCGUFFEY LINDSEY &<br>JOHNSON, LLP<br>Suite 300<br>532 Stephenson Avenue<br>Savannah, GA 31405-5987<br>Telephone:  (912) 503-2170<br>pmuller@gmlj.com<br>*Counsel for Receiver, Melanie Damian* | **David J. Forestner, Esq.**<br>CARLTON FIELDS JORDEN BURT, P.A.<br>One Atlantic Center, Suite 3000<br>1201 W. Peachtree Street<br>Atlanta, Georgia 30309<br>Telephone:  (404) 815-3400<br>Email: dforestner@cfjblaw.com<br>*Counsel for Plaintiff in Intervention,<br>Genworth Life Insurance Company* |
| **Christopher C. Frost, Esq.**<br>**C. Andrew Kitchen, Esq.**<br>**Alexander B. Feinberg, Esq.**<br>MAYNARD, COOPER & GALE, P.C.<br>1901 Sixth Avenue North<br>2400 Regions Harbert Plaza<br>Birmingham, Alabama 35203<br>Telephone:  (205) 254-1186<br>Email: cfrost@maynardcooper.com<br>Email: dkitchen@maynardcooper.com<br>Email: afeinberg@maynardcooper.com<br>*Counsel for Plaintiffs in Intervention,<br>Protective Life Insurance Company and<br>Household Life Insurance Company* | **Raul Cuervo, Esq.**<br>CARLTON FIELDS JORDEN BURT, P.A.<br>100 S.E. 2nd Street<br>Suite 4200<br>Miami, Florida 33131<br>Telephone:  (305) 530-0050<br>Email: rcuervo@cfjblaw.com<br>*Counsel for Plaintiff in Intervention,<br>Genworth Life Insurance Company* |

217292_1<br>D032.100

CASE NO.  1:12-cv-2296-TCB

| **Alan Francis Curley** | **Philip Keith Lichtman** |
|---|---|
| ROBINSON CURLEY & CLAYTON, P.C. | MILLS, PASKERT, DIVERS P.C. |
| 300 South Wacker Drive | One Atlantic Center |
| Chicago, IL 60606 | 1201 West Peachtree Street |
| Telephone:  (312) 663-3100 | Suite 2610 |
| acurley@robinsoncurley.com | Atlanta, GA 30309 |
| *Counsel for Plaintiffs in Intervention,* | Telephone :  (404) 870-8200 |
| *Genworth Life Insurance Company* | klichtman@mpdlegal.com |
| | *Counsel for Plaintiffs in Intervention, St.* |
| | *Paul Mercury Insurance Company* |

217292_1
D032.100