EXHIBIT

**EXHIBIT C**

BRENTON N. VER PLOEG
R. HUGH LUMPKIN
STEPHEN A. MARINO, JR.
EILEEN L. PARSONS
JASON S. MAZER
CHRISTINE A. GUDAITIS
MEGHAN C. MOORE

ANDREW L. GORDON, OF COUNSEL



FACSIMILE (305) 577-3558
E-MAIL VPL-LAW@VPL-LAW.COM
WEBSITE WWW.VPL-LAW.COM
(PLEASE REPLY TO MIAMI OFFICE ADDRESS)

DANYA J. PINCAVAGE
MATTHEW B. WEAVER
W. ALLEN BONNER
MARIA R. CALDERA
BENJAMIN C. HASSEBROCK
ASHLEY B. HACKER
ROCHELLE N. WILLIS
ALEX A. STERN
MATTHEW L. BALDWIN
HEATHER J. GORIN
CARY D. STEKLOF
DALE S. DOBULER
MALLORY L. COLD
ANDREA L. DEFIELD
CLAUDIA MEDINA

September 17, 2014

**VIA ELECTRONIC MAIL AND U.S. MAIL**

Raul A. Cuervo, Esquire
Namarata S. Joshi, Esquire
CARLTON FIELDS JORDEN BURT, P.A.
100 S.E. Second Street
Suite 4200
Miami, Florida 33131
Email: rcuervo@cfblaw.com
Email: njoshi@cfblaw.com

    Re:   *Securities and Exchange Commission vs. Abrey Lee Price, et al.*
           Case No.: 1:12-cv-2296-TCB, U.S.D.C. Northern District of Georgia
           Our File No.: D032.100

Dear Mr. Cuervo and Ms. Joshi:

    We write regarding Genworth Life Insurance Company's (hereafter, "Genworth") Responses to the Trustee's First Request for Production, Request for Admissions, and Interrogatories. For the reasons set forth herein, and as discussed during our recent telephone conference, the Receiver believes Genworth's responses are deficient. Pursuant to N.D. Ga. Local Rule 37.1(A)(1), please consider this our renewed effort to resolve these deficiencies without the Court's involvement. We hope that you have already reconsidered your positions discussed during our conferral call on September 3, 2014 and addressed more fully herein. If we cannot resolve these issues before the close of business on Monday, September 22, 2014, we will seek the court's intervention.

    I.   **Genworth's Amended Privilege Log**

    We believe that items logged as P-1 through P-10 (or the facts contained therein) have been improperly withheld from Genworth's document production. We request that your client reconsider its decision to withhold these documents on attorney-client privilege and work product grounds.

Raul A. Cuervo, Esquire
Namarata S. Joshi, Esquire
September 17, 2014
Page 2 of 4

### A. Attorney-Client Privilege

It is elementary that the attorney-client privilege does not permit <u>facts</u> that are communicated to or discussed with counsel to be withheld. *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981) (the attorney-client privilege "only protects disclosure of communications, it does not protect disclosure of the underlying facts by those who communicated with the attorney"). But no facts contained in any of these alleged attorney-client privileged communications have been disclosed. We reiterate our request for you to detail and disclose all facts contained within any and all documents you contend are privileged.

The only documents that even purport appear to pertain to legal advice in Genworth's Amended Privilege Log are items P-1, P-5, P-7, P-9, and P-10. Items P-1, P-5, and P-7 are described as communications with in-house counsel regarding the beneficiary change. Even assuming items P-1, P-5, and P-7 contain protected legal advice, Genworth cannot refuse to disclose all facts therein. Genworth has thus far refused to admit to the Receiver's Request for Admissions Nos. 2 and 6, addressing the same subject: whether the Receiver's conduct in making the claim and requesting that she be made the beneficiary of the policy was fraudulent.

That Genworth did in fact make the requested beneficiary change and pay the claim to the Receiver leaves no reasonable basis for it to refuse to admit to these non-controversial facts. During our conferral call, you indicated you would consider revising your client's responses to these admissions. As there is no evidence whatsoever suggesting to the contrary, we ask that you do so. Should Genworth learn of any facts supporting a different position or contention through discovery, the Federal Rules permit it to amend or withdraw its admissions.

Items P-9 and P-10 are vaguely described as communications "regarding Price's insurance policies" and "analysis" after Genworth was contacted by law enforcement authorities. Genworth's assertion of privilege here is legally insufficient, and the items do not constitute work-product either. For the reasons detailed, *infra*, they should be produced in full. Even assuming they contain protected legal advice, these documents pertain to the heart of the fact issue in this matter: whether Genworth knew and appreciated the risks of payment on a life insurance policy where the insured was merely presumed dead. Any facts contained within these documents are not privileged and must be disclosed.

### B. Work Product

The work product doctrine does not permit documents to be withheld in the first-party context where a claim has not yet been made. *See Harper v. Auto-Owners Ins. Co.*, 138 F.R.D. 655, 663 (S.D. Ind. 1991) ("anticipation of litigation is presumed unreasonable under the Rule before a final decision is reached on the claim"). Here, it is undisputed that items P-1 through P-

216946_1
D032.100

Raul A. Cuervo, Esquire
Namarata S. Joshi, Esquire
September 17, 2014
Page 3 of 4

10 on Genworth's Amended Privilege Log were all created *six months prior to a claim being made*. Thus, there can be no doubt that these documents are not protected work-product.

As an insurance company, Genworth cannot reasonably argue that these documents, drafted months before it ever received a claim, were created in anticipation of litigation. As you know, every insurer has a duty to investigate, evaluate and make a decision with respect to claims made by its insured. Genworth's position here amounts to a statement that it *preemptively* anticipated litigation over that claim that *had not yet been made*. That is a position bare of any legal support. *See Lett v. State Farm Fire & Cas. Co.*, 115 F.R.D. 501, 503 (N.D.Ga. 1987) (anticipation of litigation is "the point where the probability of litigating the claim is substantial and imminent"); *see also Janicker v. George Washington University*, 94 F.R.D. 648, 650 (D.D.C. 1982) (rejecting the contention that a defendant who anticipates the contingency of litigation automatically qualifies an "in house" report as work product).

The date these documents were drafted confirms that they were prepared in the ordinary course of business and are therefore discoverable. It is well-settled that even in the early stages of a formal claim investigation, the insurer is - - or should be - - primarily concerned *not* with the contingency of litigation, but with deciding whether to pay the policyholder, and, if so, how much. *See Lett*, 115 F.R.D. at 503. Furthermore, "[e]ven after litigation is justifiably anticipated, routine or ordinary investigations or reports are not work product and may be obtained as normal discovery without a special showing of need." *Harper*, 138 F.R.D. at 661 (citing *Pete Rinaldi's Fast Foods, Inc. v. Great Am. Ins. Cos.*, 123 F.R.D. 198, 202 n.4 (M.D.N.C. 1988)).

Items P-2 through P-4, P-6, and P-8 through P-10 are not work product and must be disclosed. Each of these items (except for P-9) were drafted in June 2012, six months before the Receiver's claim was made. P-9 was drafted two weeks later. Given the absence of a claim at that time, much less a preliminary claim investigation, Genworth has no reasonable, good-faith basis to withhold these documents on work product grounds. The fact that the document was prepared by Genworth's in-house counsel does not affect the calculus. *See Mission Nat. Ins. Co. v. Lilly*, 112 F.R.D. 160, 163 (D.Minn. 1986) (an insurer cannot cloak its claims handling decisions or investigation with work product protection simply by virtue of assigning them to an attorney).

## II. Genworth's Responses to the Receiver's Request for Admissions

Beyond the Receiver's Request for Admissions Nos. 2 and 6 addressed *supra*, we believe that Genworth's responses to Admissions Nos. 1, 3, and 5 should be amended. Admission No. 1 requests an admission that Genworth was aware prior to its payment of the claim that Price was declared presumptively dead. Instead of simply admitting to this fact, Genworth responded that it received the Receiver's claim attaching the Order Granting Petition for Presumptive Death

Raul A. Cuervo, Esquire
Namarata S. Joshi, Esquire
September 17, 2014
Page 4 of 4

Certificate and representing that Price had been declared presumptively deceased. We trust that Genworth's response is not designed to be a veiled disclaimer of its corporate knowledge and that the fact of Genworth's knowledge on this issue is not being contested. We do not wish to waste the court's time and our clients' respective resources litigating or pursuing discovery on uncontested issues. Please amend your client's response to Admission No. 1 accordingly, or confirm that any apparent semantic defect or qualification was unintended.

Admission No. 3 addresses whether Genworth contested any proceedings or the court order declaring Price presumptively deceased prior to its payment of the claim. Though this is a straightforward and noncontroversial fact, Genworth's response raises objections that call into question its good faith in that it admits merely that it paid the claim after receiving the Receiver's claim form. Respectfully, it is undisputed that no party contested any proceedings or court order declaring Price deceased, and Genworth's response should be amended accordingly. For the same reasons, Genworth's response to Admission No. 5 should also be amended.

### III.     Genworth's Responses to the Receiver's Requests for Production No. 12

Genworth has objected to the production of documents responsive to Request No. 12, its policies, procedures, guidelines and best practices relating to its claims investigations and handling of life insurance death benefits. The Receiver's defenses in this case pertain to the voluntary payment and equitable estoppel doctrines. The application of these doctrines depends upon an analysis of Genworth's knowledge and conduct prior to its payment of the claim. Thus its policies, procedures, guidelines and best practices pertaining to its life insurance claims handling are clearly relevant and reasonably calculated to lead to the discovery of admissible evidence. Life insurers also routinely produce these materials in similar claims litigation, and this case is no exception. They should be produced, though we agree to limit to the scope of our request to those materials that were in effect as of January 2013. As we have previously indicated, we have no objection to their being provided upon the condition of a confidentiality agreement and protective order governing their use in this litigation.

Very truly yours,

Jason S. Mazer
Matthew L. Baldwin

JSM:lmp

216946_1
D032.100