# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, ) ) ) Plaintiff, ) ) v. ) ) ) AUBREY LEE PRICE; et al ) ) Defendants, ) | Civil Action No. 1:12-cv-2296-TCB |

### INTERVENTION PLAINTIFFS PROTECTIVE LIFE INSURANCE COMPANY'S AND HOUSEHOLD LIFE INSURANCE COMPANY'S RESPONSE TO INTERVENTION DEFENDANT MELANIE E. DAMIAN'S STATEMENT OF UNDISPUTED FACTS

Pursuant to Local Rule 56.1(B)(2) and the Instructions to Parties and Counsel (ECF Doc. No. 6), Intervention Plaintiffs Protective Life Insurance Company and Household Life Insurance Company, (collectively, the "Insurers"), hereby respond to Intervention Defendant Melanie E. Damian's Statement of Undisputed Facts (ECF Doc. No. 244-1).[1] In addition, pursuant to Local Rule 56.1(B)(2)(b), the Insurers set forth additional material facts which warrant a

---

[1] Pursuant to Local Rule 56.1(B)(2)(b), the Insurers incorporate by reference their Statements of Undisputed Material Facts filed in support of their Motions for Summary Judgment. (ECF Doc. Nos. 240-1, 241-1).

denial of the Intervention Defendant's Motion for Summary Judgment (and which support the entry of summary judgment in favor of the Insurers).

## Response to the Receiver's Undisputed Statement of Facts

1. Defendant in Intervention, Melanie E. Damian, as the Receiver for the Estate of Aubrey Lee Price, *et al.* (the "Receiver"), hereby submits this Statement of Undisputed Facts in conjunction with her Motion for Summary Judgment and Incorporated Memorandum of Law (the "Motion") in accordance with Local Rule 56.1(B).

**Insurers' Response:** To the extent a response is required, not disputed.

2. The parties to this matter have previously stipulated to two different statements of undisputed facts, including (1) a Joint Statement of Stipulated Facts [D.E. 210] (designated "Stipulation I" in the Receiver's Motion), and (2) a Joint Supplemental Statement of Stipulated Facts [D.E. 231] (designated "Stipulation II" in the Receiver's Motion). Stipulation I and Stipulation II are incorporated by reference into the Motion as Exhibits "A" and "B," respectively. Stipulation I and Stipulation II are also attached hereto as Exhibits "A" and "B," respectively, to which the Receiver refers the Court in satisfaction of Local Rule 56.1(B).

**Insurers' Response:** Not disputed. To the extent a response is required for the facts set forth in Exhibit A and Exhibit B, the Insurers do not dispute the

parties' stipulated facts contained therein.

3. The parties have also stipulated that all of the records produced in discovery in this matter are accurate and authentic copies of their respective business records. Stipulation II at ¶ 2. Household Life Insurance Company's documents bear the Bates label "Household" and Protective Life Insurance Company's documents bear the Bates label "Protective." These records are incorporated by reference into the Motion accordingly.

**Insurers' Response:** Not disputed.

### Intervention Plaintiff Household Life Insurance Company's Statement of Additional Material Facts

4. Household Life Insurance Company Policy No. 4270711 (the "Household Policy") is only payable upon the death of the insured, Aubrey Lee Price: "If the insured **dies** while this Policy is in force during its Term Period, Household Life Insurance Company will pay the face amount to the Beneficiary, subject to the provisions of this Policy. . . . Any proceeds payable because of the **death** of the Insured will be paid when we receive satisfactory proof of the Insured's **death** and the surrender of the Policy to us." (Household Policy, attached as Exhibit B to Household Life Insurance Company's Motion for Summary Judgment Brief ("Household Motion"), ECF Doc. No. 240-4, at

Household000001, Household000005) (emphasis added).[2]  The Household Policy further states:

- "Face Amount Payable *at Death of Insured* During Term Period"

- "The Beneficiary means the person to receive the proceeds in the event of *the Insured's death*"

- "Payment of Proceeds – Proceeds payable upon *the death of the Insured* are equal to the amount of insurance in force on the *date of death* plus any benefits provided by the attached Policy riders less any premium that is due and unpaid on the *date of death*"

- "Any proceeds payable because of *the death of the Insured* will be paid to the Beneficiary"

- "Face Amount Payable *at Death of Insured* During Term Period"

(*Id.*, at Household000001, Household000005, Household000007, Household000010) (emphasis added).

5. Following Price's disappearance on June 16, 2012, the Receiver cooperated with federal and state authorities in the search for Price, but she conducted no independent investigation concerning whether Price was alive or

---

[2] For the Court's convenience, because the additional material facts stated herein are supported by the same exhibits as those attached to the Insurers' respective Motions for Summary Judgment (ECF Doc. Nos. 240, 241), the Insurers will cite to the exhibits attached to their respective Motions for Summary Judgment rather than submit the same exhibits again here.

deceased.  (Receiver Melanie Damian Deposition Transcript, attached as Exhibit C to Household Motion, ECF Doc. No. 240-5, at pp. 30:19 – 31:2).

6. Following Price's disappearance on June 16, 2012, the Receiver conducted numerous interviews with individuals in an effort to locate Price's assets.  (Receiver's Verified Interrogatory Response No. 2, attached as Exhibit D to Household Motion, ECF Doc. No. 240-6).  Among other people, the Receiver interviewed Price's wife, daughters, sister, mother, and father. (*Id.*)  The Receiver also interviewed Price's colleagues and employees, and over fifty investors defrauded by Price.  (*Id.*)  During these interviews, the Receiver inquired about Price's whereabouts.  (Exhibit C to Household Motion, ECF Doc. No. 240-5, at p. 26:13-25).  Based upon these interviews, and possessing no evidence suggesting Price was alive, the Receiver concluded that Price died by suicide.  (*Id.*, at pp. 61:3-9; 61:18-21; 63:11-20; 99:25 – 100:24).

7. Following Price's disappearance on June 16, 2012, the Receiver made herself the owner and beneficiary of the Household Policy so she could keep the Household Policy up to date and make a claim for the Household Policy death proceeds to the extent Price could be declared deceased.  (*Id.*, at p. 81:7-14; *see also* Receiver's Initial Report, ECF Doc. No. 47, at p. 32).

8.     The Receiver filed the claim seeking payment of the proceeds of the Household Policy because she was convinced that Price was deceased. (Exhibit C to Household Motion, ECF Doc. No. 240-5, at pp. 88:18 – 89:12).

9.     In her January 14, 2013 claim letter, the Receiver informed Household that:

> Following an extensive search by the U.S. Coast Guard, the FBI, and other law enforcement authorities, he [Mr. Price] was declared missing at sea and presumed dead. Shortly after his disappearance, documents and other physical evidence were discovered by his family and co-workers that confirmed Mr. Price's intent in boarding the Key West Express was to commit suicide. On December 31, 2012, following an evidentiary hearing into the matter, Aubrey Lee Price was declared legally deceased . . . .

(January 14, 2013 Claim Letter, attached as Exhibit F to Household Motion, ECF Doc. No. 240-8).

10.    On February 4, 2013, the Receiver completed a Term Life Claim Form, in which she represented that Price died by suicide. (Joint Statement of Stipulated Facts, attached as Exhibit A to Household Motion, ECF Doc. No. 240-3, at ¶ 24; Exhibit C to Motion, ECF Doc. No. 240-5, at pp. at pp. 93:2 – 94:7; 95:4-7; Term Life Claim Form, attached as Exhibit G to Household Motion, ECF Doc. No. 240-9, at Household000032).

11.    Having received the Order Granting Petition for Presumptive Death Certificate, the Receiver's sworn declaration that she knew of no credible evidence

6

of Price's continued existence after his disappearance, and the Term Life Claim Form, Household issued two checks to the Receiver in the total amount of $543,561.64 (the "Household Payment") on March 8, 2013.  (Exhibit A to Household Motion, ECF Doc. No. 240-3, at ¶ 25).  Household relied upon the aforementioned documents and the Receiver's statements in issuing the Household Payment, and Household did not undertake an independent investigation as to whether Price was alive or deceased.  (Joint Supplemental Statement of Stipulated Facts, attached as Exhibit H to Household Motion, ECF Doc. No. 240-10, at ¶ 15).

12. The Receiver *admits* that it was reasonable for Household to make the Household Payment under the circumstances.  (Exhibit C to Household Motion, ECF Doc. No. 240-5, at p. 173:15-18).

13. The Receiver testified that she has sufficient funds in her trust accounts to return the full amount of the Household Policy proceeds.  (*Id.*, at p. 124:14-19).

14. The Receiver testified that she has no opinion or belief concerning the following topics: (1) whether Price's presumptive death certificate was due proof of Price's death; (2) whether or not an insurer can rely upon a presumptive death certificate issued by a court of law; or (3) whether Household should have

7

questioned the Receiver's representation that Price died by suicide. (*Id.*, at pp. 98:10-14; 132:18-21; 126:2-7).

### Intervention Plaintiff Protective Life Insurance Company's Statement of Additional Material Facts

15. Protective Life Insurance Company Policy No. L26007137 (the "Protective Policy") is only payable upon the death of the insured, Aubrey Lee Price: "We will pay the Death Benefit promptly after we receive, at our Home Office, due proof that the Insured **died** prior to the Final Expiration Date and while the Policy was in Full Force." (Protective Policy, attached as Exhibit A to Protective Life Insurance Company's Motion for Summary Judgment Brief ("Protective Motion"), ECF Doc. No. 241-3, at Protective0000004) (emphasis added). The Protective Policy further states:

- "Payable *at Death* Prior to the Final Expiration Date"

- "Death Benefit is the amount payable when *you die*"

- "Beneficiary – The Beneficiary is named on Page 3 unless changed by the Owner. At the time of *your death*, the Beneficiary will be as set forth in the designation then in effect"

- "Beneficiary Succession – At the time of *your death*, the Death Benefit will be paid: (a) to the primary Beneficiary, if living, if not: (b) to the contingent Beneficiary, if living, if not: (c) to the Insured's estate"

- "Level Term Life Insurance Payable *at Death* Prior to the Final Expiration Date"

(*Id.*, at Protective000004, Protective000005, Protective000010, Protective000011) (emphasis added).

16.  Following Price's disappearance on June 16, 2012, the Receiver cooperated with federal and state authorities in the search for Price, but she conducted no independent investigation concerning whether Price was alive or deceased. (Receiver Melanie Damian Deposition Transcript, attached as Exhibit C to Protective Motion, ECF Doc. No. 241-5, at pp. 30:19 – 31:2).

17.  Following Price's disappearance on June 16, 2012, the Receiver conducted numerous interviews with individuals in an effort to locate Price's assets. (Receiver's Verified Interrogatory Response No. 2, attached as Exhibit D to Protective Motion, ECF Doc. No. 241-6). Among other people, the Receiver interviewed Price's wife, daughters, sister, mother, and father. (*Id.*) The Receiver also interviewed Price's colleagues and employees, and over fifty investors defrauded by Price. (*Id.*) During these interviews, the Receiver inquired about Price's whereabouts. (Exhibit C to Protective Motion, ECF Doc. No. 241-5, at p. 26:13-25). Based upon these interviews, and possessing no evidence suggesting

Price was alive, the Receiver concluded that Price died by suicide. (*Id.*, at pp. 61:3-9; 61:18-21; 63:11-20; 99:25 – 100:24).

18. Following Price's disappearance on June 16, 2012, the Receiver made herself the owner and beneficiary of the Protective Policy so she could keep the Protective Policy up to date and make a claim for the Protective Policy death proceeds to the extent Price could be declared deceased. (*Id.*, at p. 81:7-14; *see also* Receiver's Initial Report, ECF Doc. No. 47, at p. 32).

19. The Receiver filed the claim seeking payment of the proceeds of the Protective Policy because she was convinced that Price was deceased. (Exhibit C to Protective Motion, ECF Doc. No. 241-5, at pp. 88:18 – 89:12).

20. In her January 14, 2013 claim letter, the Receiver informed Protective that:

> Following an extensive search by the U.S. Coast Guard, the FBI, and other law enforcement authorities, he [Mr. Price] was declared missing at sea and presumed dead. Shortly after his disappearance, documents and other physical evidence were discovered by his family and co-workers that confirmed Mr. Price's intent in boarding the Key West Express was to commit suicide. On December 31, 2012, following an evidentiary hearing into the matter, Aubrey Lee Price was declared legally deceased . . . .

(January 14, 2013 Claim Letter, attached as Exhibit F to Protective Motion, ECF Doc. No. 241-8).

21. On March 14, 2013, the Receiver completed a Claimant's Statement for Death Benefit, in which she represented that Price had died by suicide. (Joint Statement of Stipulated Facts, attached as Exhibit B to Protective Motion, ECF Doc. No. 241-4, at ¶ 15; Exhibit C to Protective Motion, ECF Doc. No. 241-5, at p. 97:1-24; Claim Form, attached as Exhibit G to Protective Motion, ECF Doc. No. 241-9, at Protective000188).

22. On May 3, 2013, the Receiver submitted Price's Death Certificate to Protective. (Death Certificate, attached as Exhibit H to Protective Motion, ECF Doc. No. 241-10).

23. Having received the Order Granting Petition for Presumptive Death Certificate, the Receiver's sworn declaration that she knew of no credible evidence of Price's continued existence after his disappearance, Price's Death Certificate, and the Claimant's Statement for Death Benefit, Protective issued a check to the Receiver in the amount of $251,510.32 (the "Protective Payment") on July 3, 2013. (Exhibit B to Protective Motion, ECF Doc. No. 241-4, at ¶ 17). Protective relied upon the aforementioned documents and the Receiver's statements in issuing the Protective Payment, and Protective did not undertake an independent investigation as to whether Price was alive or deceased. (Joint Supplemental Statement of

Stipulated Facts, attached as Exhibit I to Protective Motion, ECF Doc. No. 241-11, at ¶ 3).

24. The Receiver *admits* that it was reasonable for Protective to make the Protective Payment under the circumstances. (Exhibit C to Protective Motion, ECF Doc. No. 241-5, at p. 173:15-18).

25. The Receiver testified that she has sufficient funds in her trust accounts to return the full amount of the Protective Policy proceeds. (*Id.*, at p. 124:14-19).

26. The Receiver testified that she has no opinion or belief concerning the following topics: (1) whether Price's presumptive death certificate was due proof of Price's death; (2) whether or not an insurer can rely upon a presumptive death certificate issued by a court of law; or (3) whether Protective should have questioned the Receiver's representation that Price died by suicide. (*Id.*, at pp. 98:10-14; 132:18-21; 126:2-7).

Dated: February 10, 2015.	Respectfully submitted,

/s/ Alexander B. Feinberg
Alexander B. Feinberg
Georgia Bar. No. 956505

**OF COUNSEL:**
C. Andrew Kitchen
Alexander B. Feinberg
Christopher C. Frost
MAYNARD, COOPER & GALE, PC
1901 Sixth Avenue North
2400 Regions Harbert Plaza
Birmingham, Alabama 35203
Telephone: 205-254-1000
Facsimile: 205-254-1999

*Attorneys for Intervention Plaintiffs Protective Life Insurance Company and Household Life Insurance Company*

## **LOCAL RULE 7.1(D) CERTIFICATION**

By signature below, counsel certifies that the foregoing document was prepared in Times New Roman, 14 point font in compliance with Local Rule 5.1B.

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of February, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such following to counsel of record.   In the event that the CM/ECF system does not send notification of such filing any counsel of record, undersigned counsel will serve the following them via U.S. Mail.

>	*/s/ Alexander B. Feinberg*
>	Of Counsel