IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CASE NO. 1:12-cv-2296-TCB

Securities and Exchange Commission,

    Plaintiff,

vs.

Aubrey Lee Price, PFG, LLC, PFGBI, LLC, Montgomery Asset Management, LLC f/k/a PFG Asset Management, Montgomery Asset Management, LLC f/k/a PFG Asset Management,

    Defendants.
_____/

Genworth Life Insurance Company, Protective Life Insurance Company, Household Life Insurance Company,

    Plaintiffs in Intervention,

vs.

Melanie E. Damian, as Receiver for the Estate of Aubrey Lee Price, PFG, LLC, PFGBI, LLC, Montgomery Asset Management, LLC f/k/a PFG Asset Management,

    Defendant in Intervention.
_____/

CASE NO.  1:12-cv-2296-TCB

# THE RECEIVER'S RESPONSE TO PROTECTIVE LIFE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT[1]

Defendant in Intervention, Melanie E. Damian, as the Receiver for the Estate of Aubrey Lee Price, *et al.* (the "Receiver"), hereby files her Response to Protective Life Insurance Company's ("Protective") Motion for Summary Judgment and states:

## INTRODUCTION

Protective's Motion for Summary Judgment (the "Motion") asks this Court to (1) simply assume that the carrier has established its causes of action, (2) refuse to apply the voluntary payment doctrine pursuant to a misapprehension of Florida law, and (3) provide a remedy in equity foreclosed by statute and prior decisions from the Georgia Supreme Court.  This invitation to error should be declined.

Protective's Motion must be denied because the carrier failed to meet its burden to establish any of its claims with reference to the undisputed facts. Protective instead lists the elements of its alleged causes of action and asserts, without citation to the record, that the Receiver has never suggested that Protective cannot prove those elements.  This is both false and facially insufficient to support judgment as a matter of law in the carrier's favor.

---

[1] In accordance with Local Rule 56.1, the Receiver has attached as Exhibit "A" her Response and Counterstatement to Protective Life Insurance Company's Statement of Undisputed Material Facts.

CASE NO.  1:12-cv-2296-TCB

After requesting that this Court assume the *prima facie* validity of its claims, Protective attacks only two of the Receiver's nine affirmative defenses – the voluntary payment doctrine and equitable estoppel.  Unable to reconcile its position with Florida's voluntary payment doctrine, Protective contends that doctrine is supplanted by a statute that is inapplicable under the facts of this case.  Worse, Protective omits mention of clear Georgia law requiring a jury to determine the factual issues on which its equitable claims are based.  Summary Judgment in the carrier's favor should be denied.

## MEMORANDUM OF LAW

### I.  Protective's Motion is Facially Insufficient to Support Judgment as a Matter of Law

At a bare minimum, the party moving for summary judgment carries "the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (internal quotations omitted).  Protective's Motion fails to meet this basic threshold and should be denied on this basis alone.

Protective's Motion does nothing more than recite the elements for declaratory judgment, money had and received, and conversion under Georgia

law.[2]  The carrier advances no argument to establish these causes of action in light of the undisputed facts.  Protective instead simply asserts, without any citation to the record, that:

> The Receiver has never so much as suggested that Protective has not or cannot prove the elements of its claims, and her counsel, in conferences with the undersigned leading up to this filing, has conceded that the two affirmative defenses they have raised are their only defenses in this case.

Motion, p. 11.  Neither assertion is (1) true, or (2) capable of establishing entitlement to judgment as a matter of law.  Pursuant to Local Rule 56.1(B)(1), this Court "will not consider any fact: (a) not supported by a citation to evidence . . . ; (b) supported by a citation to a pleading rather than to evidence; (c) stated as an issue or legal conclusion; or (d) set out only in the brief and not in the movant's statement of undisputed facts."

First, the Receiver's Answer, Defenses, and Affirmative Defenses to Protective's complaint denies the allegations of each cause of action where appropriate and denies the carrier is entitled to any of the relief requested [D.E. 172].  Next, the Receiver' motion for summary judgment argues, *inter alia*, that Protective "has not or cannot prove the elements of its claims." [D.E. 251].  The

---

[2] Protective assumes the applicability of Georgia law, rather than Florida law, to its causes of action.  For the reasons discussed in this section, the carrier's Motion does not support summary judgment regardless of which state's law controls.

Receiver has also never "conceded" that voluntary payment and equitable estoppel are her only two affirmative defenses in this case.  Indeed, her answer to Protective's complaint asserts nine affirmative defenses – none of which have been withdrawn or stricken.  And, unidentified "conferences with the undersigned [counsel for Protective] leading up to this filing" do not constitute undisputed facts to be considered by this Court on a motion for summary judgment.  Protective's Motion should accordingly be denied.

## II. Florida Statutes § 725.04 Does Not Supplant the Voluntary Payment Doctrine Where the Contract Requires Payment Upon Receipt of "Due Proof" of Death

Protective's claims are foreclosed by Florida's voluntary payment doctrine: "money voluntarily paid upon claim of right with full knowledge of all of the facts, cannot be recovered back merely because the party, at the time of payment, was ignorant, or mistook the law, as to his liability."  *Taylor, Bean & Whitaker Mortgage Corp. v. GMAC Mortgage Corp.*, No. 5:05-cv-260-oc-GRJ, 2007 WL 1114045, *3 (M.D. Fla. Apr. 12, 2007) (citing *Jefferson County v. Hawkins,* 2 So. 362, 365 (Fla. 1887)).  As detailed in the Receiver's motion for summary judgment, Protective made the decision to tender the policy proceeds with full knowledge of all the facts and the possibility that Price might still be alive.  *See* Receiver's Motion for Summary Judgment, pp. 12-14.  Notably, Protective's Motion makes no argument that Florida's voluntary payment doctrine is

inapplicable on its face.

Instead, the carrier contends that the doctrine is supplanted by Florida Statutes Section 725.04.  Under Chapter 725 of the Florida Statutes entitled "Unenforceable Contracts," section 725.04 provides:

> When a suit is instituted by a party to a contract and by the terms of the contract there was *no enforceable obligation* to make the payment or the making of the payment was excused, the defense of voluntary payment may not be interposed by the person receiving payment to defeat recovery of the payment.

*Id*. (emphasis added).  In invoking this statute, Protective *concedes* that it paid the Receiver's claim pursuant to the terms of its policy.  Motion, p. 13.  The carrier nevertheless argues that the voluntary payment doctrine does not apply because its payment obligation was predicated on Price being actually deceased.[3]  But, this position ignores the contract language and exhibits a fundamental misunderstanding of the statute.

The only two cases cited by Protective demonstrate why Section 725.04 is inapplicable here.  Florida courts have recognized that this provision "speaks only to those situations in which the contract *on its face does not call for payment*, or the contract on its face excuses payment." *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 249 F. Supp. 2d 703, 711 (D. Md. 2003); *Sundance Apartments I,*

---

[3] For the reasons stated in Exhibit "A," the Receiver disputes Protective's assertion that "there was no obligation to make payment unless Price was deceased." Motion, p. 13.

*Inc. v. Gen. Elec. Capital Corp.*, 581 F. Supp. 2d 1215, 1224 (S.D. Fla. 2008) (emphasis added).  *Sensormatic* and *Sundance* both dealt with overpayments that the plaintiffs were never contractually obligated to make in the first instance.[4]  In other words, based on the known facts at the time of payment, the recipient of the money was not entitled to payment under the contract.[5]  These are not the facts of this case.

Protective does not contend that its insurance policy "on its face does not call for payment."  Entirely to the contrary, it "made its Payment to the Receiver pursuant to the Policy."  Motion, p. 13.  Notwithstanding Price's mysterious disappearance, Protective made that payment because it was so obligated under the insurance contract upon accepting "due proof" of Price's death:

> Death Benefit Payable – We will pay the Death Benefit promptly after we receive, at our Home Office, *due proof* that the Insured died prior to the Final Expiration Date and while this Policy was in Full Force.

---

[4] The plaintiff in *Sensormatic* sought repayment of commissions because "the contract on its face only called for commissions to be paid on CCTV equipment that fit within a certain category, and [ ] the CCTV equipment sold by ADT did not fit within that category."  *Sensormatic*, 249 F. Supp. 2d at 711.  Similarly, the plaintiff in *Sundance* alleged that "the prepayment amounts it made in excess of normal 'yield maintenance' were outside the scope of the prepayment fee due under the terms of the Loan Agreement and were therefore not made pursuant to an enforceable obligation."  *Sundance*, 581 F. Supp. 2d at 1225.

[5] The *Sensormatic* court found that "the payment, albeit made pursuant to the contract, was not an enforceable obligation under the contract."  *Sensormatic*, 249 F. Supp. 2d at 711.  Likewise, the *Sundance* court held that the payment "was not expressly referenced in the Loan Agreement and therefore was not an enforceable obligation."  *Sundance*, 581 F. Supp. 2d at 1225.

Case 1:12-cv-02296-TCB   Document 261   Filed 02/10/15   Page 8 of 17

CASE NO. 1:12-cv-2296-TCB

*See* Exhibit "B," Protective009 (emphasis added). Protective is not claiming this is an unenforceable contract provision or that it did not require payment at the time the carrier tendered the insurance proceeds to the Receiver. Rather, the insurer argues it should be excused from having paid pursuant to an enforceable contract provision based on information it learned after the fact. Section 725.04 does not apply in this situation.

Protective provides no basis other than Section 725.04 to avoid application of Florida's voluntary payment doctrine. Because this statute is inapplicable, the Receiver, and not Protective, is entitled to summary judgment.

### III. Protective Cannot Recover in Equity as a Matter of Law

#### A. Principles of Equity Embodied in Georgia Statutory and Common Law Preclude the Relief Protective Seeks

Protective cannot surmount the threshold inquiry for equitable relief under Georgia law. The Supreme Court of Georgia has held that "[i]gnorance of a fact by both parties shall not justify the interference of equity." *Folsom, 256 Ga*. at 406. It is undisputed that neither party was aware Price was alive-in-fact at the time of payment. The Court should deny equitable relief on this basis alone.

Setting aside this dispositive obstacle, a party's ability to obtain equitable relief based on a mistake is governed by a Georgia statute that has been narrowly construed by this state's Supreme Court. O.C.G.A. § 23-2-32 is entitled "Relief in

8 of 17

220461_1
D032.100

equity in cases of negligence by complainant," and states:

> (a) The negligence of the complaining party, preventing relief in equity, is that want of reasonable prudence, the absence of which would be a violation of legal duty.
>
> (b) Relief may be granted even in cases of negligence by the complainant if it appears that the other party has not been prejudiced thereby.

Ga. Code Ann. § 23-2-32.  The Georgia Supreme Court has expressly interpreted this statute in the context of an action for money had and received and held that

> the plaintiff generally can recover a payment *mistakenly* made when that mistake was caused by his lack of diligence or his negligence in ascertaining the true facts *and* the other party would not be prejudiced by refunding the payment – subject to a weighing of the equities between the parties by the trier of fact.

*Folsom*, 256 Ga. at 406 (emphasis added).  Protective's claim for relief fails at multiple steps of this inquiry.

First, the carrier cannot cite any evidence establishing that the decision to pay the Receiver's claim was the product of mistake.  Protective elected to pay in accordance with its policy after determining it had received "satisfactory proof" of Price's death.  Absent some mistake about then-existing facts, the equitable exception to the voluntary payment statute outlined by the Supreme Court of Georgia does not apply.

Second, even if the carrier could prove a mistake, Protective still cannot demonstrate that it arose from negligence in ascertaining the true facts.  The carrier

has stipulated that it "did not pay the Claim as a result of . . . negligence." Stipulation II at ¶ 9. Nor can Protective demonstrate a mistake as the product of a lack of diligence because it admittedly employed no diligence whatsoever.[6] A party that fails to exercise diligence is barred from equitable relief pursuant to both Georgia statutory and common law. *See* Ga. Code Ann. § 23-2-29 ("If a party, by reasonable diligence, could have had knowledge of the truth, equity shall not grant relief; nor shall the ignorance of a fact known to the opposite party justify an interference if there has been no misplaced confidence, misrepresentation, or other fraudulent act"); *City of Jefferson v. Trustees of Martin Inst.*, 199 Ga. 71, 78 (Ga. 1945) ("Where a party seeks to be relieved in Equity [ ] from the effect of a mistake, he must show due diligence on his part . . . Courts of equity grant relief only in favor of the diligent") (internal citations omitted).

Finally, the Receiver's good faith, acknowledged by Protective, and the resulting prejudice to the Receivership Estate from repayment would still preclude recovery by Protective. As the Supreme Court of Georgia has recognized:

> Even where money is paid under a mistake of fact, or in ignorance of facts, it cannot be recovered, unless the circumstances are such that the party receiving it ought not, in equity and good conscience, to be allowed [sic] to retain it . . . If [the person receiving the money] has acted in good faith and in good conscience with the person paying the money, he is entitled to retain it.

---

[6] Protective has stipulated it undertook no independent investigation into Price's disappearance. Stipulation II at ¶ 3.

*Folsom*, 256 Ga. at 405-06.  It is undisputed that the Receiver has not engaged in any fraud in connection with her claim.  Stipulation II at ¶ 13.

And, there is no question the Receiver would suffer prejudice as a result of repaying the policy proceeds.  Protective's funds have been used to administer the Receivership Estate and to maximize the long-term recovery for the victims of Price's misconduct and creditors.  Indeed, the Receivership Estate incurred fees and expenses in reliance on the funds from Protective's payments.[7]  And, only limited receivership resources remain.[8]  This is not a situation where the Receiver "has lost nothing by the payment of the money, and will be in no worse position after the mistake is corrected," as evidenced by her Interim Applications.  *Pine Belt Lumber Co. v. Morrison & Harvey*, 79 S.E. 363, 364 (Ga. Ct. App. 1913).  For all of the reasons detailed above, Protective should be denied equitable relief as a matter of law.  In the event the Court were inclined to entertain such a remedy, however, it is unquestionably a jury's province to weigh "(1) the degree of

---

[7] *See* Interim Applications for Order Authorizing Payment of Fees and Expenses of Receiver and her Professionals (the "Interim Applications"), D.E. 54, 70, 86, 101, 113, 148, 170, 217, 229.

[8] As addressed in the Interim Applications, Household Life Insurance Company's payment of $543,561.64 and Protective's payment of $251,510.32 represent a significant portion of the funds remaining in the receivership's financial accounts.  At least $348,000.00 of these proceeds were expended prior to Price's discovery and arrest on December 31, 2013.  *See* D.E. 54, 70, 86, 101, 113, 148, 170, 217, 229.

negligence on the plaintiff's part in erroneously paying over the money, (2) the level of good faith with which the defendant acted in receiving and retaining the money, and (3) prejudice, i.e., whether the defendant's position has so changed that it would be unfair to require him to pay the money back." *Gulf Life. Ins. Co. v. Folsom*, 907 F.2d 1115, 1119 (11th Cir. 1990).

    B.    <u>The Doctrine of Equitable Estoppel Does Not Apply</u>

Protective last argues that "[i]f the doctrine of equitable estoppel has any application in this case, it should apply to estop the Receiver from refusing to return the payment." Motion, p. 16. This position lacks merit.

"Equitable estoppel may be used to prevent a party from denying at the time of litigation a representation that was made by that party and accepted and reasonably acted upon by another party with detrimental results to the party that acted thereon." *Georgia Invs. Int'l, Inc. v. Branch Banking & Trust Co.*, 700 S.E.2d 662, 664 (Ga. Ct. App. 2010). In order for the doctrine to apply in the first instance, a party must be seeking to deny a previous representation. Ultimately, the carrier contends the Receiver should be estopped from arguing that "prior to his reappearance and arrest, there was abundant evidence that Price was alive." Motion, p. 23. The Receiver has not so argued, nor has she taken any position in

this litigation inconsistent with her prior dealings with the carrier.[9] The mere fact that the Receiver believed Price to be deceased before he was discovered alive does not support a claim for equitable estoppel.

## CONCLUSION

Protective cannot avoid the voluntary payment doctrine because it knew that Price had only been declared presumptively deceased and, despite acknowledged uncertainty concerning his death, undertook no investigation to ascertain the truth of Price's whereabouts. Protective made a calculated decision to pay, rather than contest or investigate, the Receiver's claim in the face of known uncertainty regarding its insured. While this decision turned out to be misguided, there is no basis to compel repayment to the considerable detriment of the aggrieved investors.[10] The Receiver respectfully requests that Protective's Motion for Summary Judgment be denied.

Respectfully submitted,

---

[9] Protective also argues the Receiver is estopped from taking any position regarding the prudence of its decision to pay without questioning her or conducting an independent investigation. *See* Motion, pp. 14-16. To support this contention, the carrier cites the Receiver's deposition testimony where she expresses no opinion on these issues. *Id*. at 15-16. The Receiver has already designated Donald L. Dinsmore as an expert to address claim handling issues. The Receiver's inability to testify to issues beyond her knowledge is not a basis for estoppel.

[10] Nothing, of course, prevents Protective from suing Price and/or making a claim in the Estate's claims process for the value of its payment and receiving a distribution in accordance with a court-approved plan.

CASE NO. 1:12-cv-2296-TCB

**VER PLOEG & LUMPKIN, P.A.**

/s/ Jason S. Mazer
**Jason S. Mazer**
Florida Bar No. 0149871
jmazer@vpl-law.com
**Cary D. Steklof**
Florida Bar No. 86257
csteklof@vpl-law.com
100 S.E. 2nd Street, 30th Floor
Miami, Florida 33131
Telephone: (305) 577-3996
Facsimile: (305) 577-3558
*Special Insurance Counsel for the Receiver, Admitted Pro Hac Vice*

and

**DAMIAN & VALORI, LLP**
**Kenneth Dante Murena, P.A.**
Florida Bar No. 147486
kmurena@dvllp.com
**Guy F. Giberson, P.A.**
Florida Bar No. 627402
ggiberson@dvllp.com
1000 Brickell Avenue, Suite 1020
Miami, Florida 33131
Telephone: (305) 371-3960
Facsimile: (305) 371-3965
*Counsel for the Receiver, Admitted Pro Hac Vice*

and

**PETITT WORRELL CRAINE WOLFE, LLC**
**Andrew Worrell, Esquire**
Georgia Bar No. 311027
Andrew@petittworrell.com
Suite 1030, One Glenlake

14 of 17

CASE NO. 1:12-cv-2296-TCB

1 Glenlake Parkway
Atlanta, Georgia 30328
Telephone: (404) 249-7480
Facsimile: (404) 442-4463
*Co-Counsel for the Receiver*

## LOCAL RULE 5.1 CERTIFICATION

By signature below, counsel certifies that the foregoing document was prepared in Times New Roman, 14-point font in compliance with Local Rule 5.1.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 10, 2015 I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in this manner specified, *via* transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

/s/ Jason S. Mazer
**Jason S. Mazer**

## SERVICE LIST

220461_1
D032.100

CASE NO.  1:12-cv-2296-TCB

| | |
|---|---|
| **Madison Graham Loomis, Esq.**<br>**W. Shawn Murnahan, Esq.**<br>Securities & Exchange Commission-GA<br>950 East Paces Ferry Road, N.E.<br>Suite 900<br>Atlanta, Georgia 30326<br>Telephone:  (404) 842-7600<br>Email: loomism@sec.gov<br>Email:  murnahanw@sec.gov<br>*Securities and Exchange Commission* | **Robert J. Waddell, Jr., Esq.**<br>MCGUIRE WOODS, LLP<br>Suite 2100, Promenade II<br>1230 Peachtree Street, N.E.<br>Atlanta, Georgia  30309<br>Telephone:  (404) 443-5500<br>Email: rwaddell@mcguirewoods.com<br>*Counsel for FDIC* |
| **Peter D. Muller**<br>GOODMAN MCGUFFEY LINDSEY &<br>JOHNSON, LLP<br>Suite 300<br>532 Stephenson Avenue<br>Savannah, GA 31405-5987<br>Telephone:  (912) 503-2170<br>pmuller@gmlj.com<br>*Counsel for Receiver, Melanie Damian* | **David J. Forestner, Esq.**<br>CARLTON FIELDS JORDEN BURT, P.A.<br>One Atlantic Center, Suite 3000<br>1201 W. Peachtree Street<br>Atlanta, Georgia 30309<br>Telephone:  (404) 815-3400<br>Email: dforestner@cfjblaw.com<br>*Counsel for Plaintiff in Intervention, Genworth Life Insurance Company* |
| **C. Andrew Kitchen, Esq.**<br>MAYNARD, COOPER & GALE, P.C.<br>275 Battery Street<br>Suite 1350<br>San Francisco, California 94111<br>Telephone:  (415) 704-7433<br>Email: dkitchen@maynardcooper.com<br>*Counsel for Plaintiffs in Intervention, Protective Life Insurance Company and Household Life Insurance Company* | **Raul Cuervo, Esq.**<br>CARLTON FIELDS JORDEN BURT, P.A.<br>100 S.E. 2nd Street<br>Suite 4200<br>Miami, Florida 33131<br>Telephone:  (305) 530-0050<br>Email: rcuervo@cfjblaw.com<br>*Counsel for Plaintiff in Intervention, Genworth Life Insurance Company* |

CASE NO. 1:12-cv-2296-TCB

| | |
|---|---|
| **Christopher C. Frost, Esq.**<br>**Alexander B. Feinberg, Esq.**<br>MAYNARD, COOPER & GALE, P.C.<br>1901 Sixth Avenue North<br>2400 Regions Harbert Plaza<br>Birmingham, Alabama 35203<br>Telephone: (205) 254-1186<br>Email: cfrost@maynardcooper.com<br>Email: afeinberg@maynardcooper.com<br>*Counsel for Plaintiffs in Intervention, Protective Life Insurance Company and Household Life Insurance Company* | **Philip Keith Lichtman**<br>MILLS, PASKERT, DIVERS P.C.<br>One Atlantic Center<br>1201 West Peachtree Street<br>Suite 2610<br>Atlanta, Georgia 30309<br>Telephone : (404) 870-8200<br>klichtman@mpdlegal.com<br>*Counsel for Plaintiffs in Intervention, St. Paul Mercury Insurance Company* |
| **Alan Francis Curley**<br>ROBINSON CURLEY & CLAYTON, P.C.<br>300 South Wacker Drive<br>Chicago, IL 60606<br>Telephone: (312) 663-3100<br>acurley@robinsoncurley.com<br>*Counsel for Federal Deposit Insurance Corporation ("FDIC")* | |

17 of 17