IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CASE NO. 1:12-cv-2296-TCB

Securities and Exchange Commission,

    Plaintiff,

vs.

Aubrey Lee Price, PFG, LLC, PFGBI, LLC, Montgomery Asset Management, LLC f/k/a PFG Asset Management, Montgomery Asset Management, LLC f/k/a PFG Asset Management,

    Defendants.

_____/

Genworth Life Insurance Company, Protective Life Insurance Company, Household Life Insurance Company,

    Plaintiffs in Intervention,

vs.

Melanie E. Damian, as Receiver for the Estate of Aubrey Lee Price, PFG, LLC, PFGBI, LLC, Montgomery Asset Management, LLC f/k/a PFG Asset Management, Montgomery Asset Management, LLC f/k/a PFG Asset Management,

    Defendant in Intervention.

_____/

# RECEIVER'S RESPONSE AND COUNTERSTATEMENT TO PROTECTIVE LIFE INSURANCE COMPANY'S STATEMENT OF UNDISPUTED MATERIAL FACTS

1. The individual at the heart of this matter is Aubrey Lee Price ("Price"), who was insured under Protective Life Insurance Company Policy No. L26007137 (the "Protective Policy" or "Policy") in the amount of $250,000.00. (Policy No. L26007137, attached as Exhibit A to Brief in Support of Motion for Summary Judgment ("Brief"); Joint Statement of Stipulated Facts, ECF Doc. No. 210, at ¶ 5, attached as Exhibit B to Brief).

**RESPONSE:** Admitted.

2. The Protective Policy is only payable upon the death of the insured: "We will pay the Death Benefit promptly after we receive, at our Home Office, due proof that the Insured **died** prior to the Final Expiration Date and while the Policy was in Full Force." (Exhibit A to Brief, at Protective0000004) (emphasis supplied).

**RESPONSE:** The Receiver denies Protective's characterization that the Policy "is only payable upon the death of the insured." The Policy language speaks for itself, and provides that "[w]e will pay the Death Benefit promptly after we receive, at our Home Office, *due proof* that the Insured died prior to the Final Expiration Date and while this Policy was in Full Force. Protective009 (emphasis added).

3. On July 2, 2012, the Securities and Exchange Commission ("SEC") filed a Complaint for Injunctive Relief against Price and other defendants, alleging offering and advisory fraud perpetrated against investors. (Exhibit B to Brief, at ¶ 6).

**RESPONSE:**  Admitted.

4. On August 10, 2012, this Court appointed Intervention Defendant Melanie Damian (the "Receiver") as Receiver to marshal and preserve all Receivership assets. (*Id.*, at ¶ 7).

**RESPONSE:**  Admitted.

5. On June 16, 2012, Price disappeared after last being seen boarding the Key West Express, a commuter boat, that travels from Northern Florida to the Florida Keys. (*Id.*, at ¶ 8).

**RESPONSE:**  Admitted.

6. Various federal and state authorities conducted an extensive nationwide manhunt for Price, but could not locate him. (*Id.*, at ¶ 9).

**RESPONSE:**  Admitted.

7. Following Price's disappearance on June 16, 2012, the Receiver cooperated with federal and state authorities in the search for Price, but she conducted no independent investigation concerning whether Price was alive or deceased. (Receiver Melanie Damian Deposition Transcript, at pp. 30:19 – 31:2,

attached as Exhibit C to Brief).

**RESPONSE:** The Receiver's testimony on this matter specifically stated:

> Q: Can you describe for me what you did – strike that.
>
> So other than your interviewing certain witnesses, you did not take any other independent investigation to determine whether Price was alive or dead following his disappearance?
>
> A: No, it's not my charge to find him.

*Id.* at 30:17 – 23.

8. Following Price's disappearance on June 16, 2012, the Receiver conducted numerous interviews with individuals in an effort to locate Price's assets. (Receiver's Verified Interrogatory Response No. 2, attached as Exhibit D to Brief). Among other people, the Receiver interviewed Price's wife, daughters, sister, mother, and father. (*Id.*) The Receiver also interviewed Price's colleagues and employees, and over fifty investors defrauded by Price. (*Id.*) During these interviews, the Receiver inquired about Price's whereabouts. (Exhibit C to Brief, at p. 26:13-25). Based upon these interviews, and possessing no evidence suggesting Price was alive, the Receiver concluded that Price died by suicide. (*Id.*, at pp. 61:3-9; 61:18-21; 63:11-20; 99:25 – 100:24).

**RESPONSE:** Denied to the extent none of the above citations support the statement that "the Receiver concluded that Price died by suicide." Admitted as to

the remaining statements.

9. Following Price's disappearance on June 16, 2012, the Receiver made herself the owner and beneficiary of the Protective Policy so she could keep the Policy up to date and make a claim for the Policy death proceeds to the extent Price could be declared deceased. (*Id.*, at p. 81:7-14; *see also* Receiver's Initial Report, ECF Doc. No. 47, at p. 32).

**RESPONSE:** Admitted.

10. On December 31, 2012, Price was declared legally deceased by Honorable Greg S. Parker, Circuit Court Judge of the Third Judicial Circuit, Hamilton County, Florida, Case No. 2012-CA-424. (Order, attached as Exhibit E to Brief; Exhibit B to Brief, at ¶ 11).

**RESPONSE:** Denied, as Price was declared *presumptively* deceased pursuant to the Circuit Court's Order of Presumptive Death. Joint Statement of Stipulated Facts, D.E. 210, ¶ 11 (hereafter referred to as "Stipulation I").

11. In connection with the Florida proceeding, the Receiver represented to the court in a sworn affidavit: "I am unaware of any credible evidence as to Mr. Price's existence subsequent to the events that took place on June 16, 2012," and "I have no objection to the entry of an order on the petition granting declaration of the death of Aubrey Lee Price and ordering the issuance of presumptive death certificate." (Exhibit B to Brief, at ¶ 10; Exhibit C to Brief, at p. 84:2-12; Exhibit

5 of 14

E to Brief, at Protective000139).

**RESPONSE:** Admitted.

12. Following issuance of the order declaring Price legally deceased, the Receiver filed a claim seeking payment of the death proceeds of the Protective Policy. (Exhibit B to Brief, at ¶ 13).

**RESPONSE:** Denied, as the Receiver filed a claim seeking payment from Protective after issuance of the order declaring Price *presumptively* deceased. Stipulation I at ¶ 13.

13. The Receiver filed the claim seeking payment of the proceeds of the Protective Policy because she was convinced that Price was deceased. (Exhibit C to Brief, at pp. 88:18 – 89:12).

**RESPONSE:** Admitted.

14. Specifically, on January 14, 2013, the Receiver notified Protective that she was making a claim on the Protective Policy and submitted the Order Granting Petition for Presumptive Death Certificate as well as a copy of the sworn declaration she filed with the court that issued Price's death certificate, in which she stated she had no objection to the entry of the certificate and further declared, "I am unaware of any credible evidence as to Mr. Price's continued existence subsequent to the events that took place on June 16, 2012." (Exhibit B to Brief, at ¶ 14; January 14, 2013 Letter, attached as Exhibit F to Brief).

220638
D032.100

**RESPONSE:**  Admitted.

15.   In her January 14, 2013 claim letter, the Receiver informed Protective that:

> Following an extensive search by the U.S. Coast Guard, the FBI, and other law enforcement authorities, he [Mr. Price] was declared missing at sea and presumed dead. Shortly after his disappearance, documents and other physical evidence were discovered by his family and co-workers that confirmed Mr. Price's intent in boarding the Key West Express was to commit suicide. On December 31, 2012, following an evidentiary hearing into the matter, Aubrey Lee Price was declared legally deceased . . . .

(Exhibit F to Brief).

**RESPONSE:**  Admitted.

16.   On March 14, 2013, the Receiver completed a Claimant's Statement for Death Benefit, in which she represented that Price had died by suicide. (Exhibit B to Brief, at ¶ 15; Exhibit C to Brief, at p. 97:1-24; Claim Form, at Protective000188, attached as Exhibit G to Brief).

**RESPONSE:**  Admitted.

17.   On May 3, 2013, the Receiver submitted Price's Death Certificate to Protective.  (Death Certificate, attached as Exhibit H to Brief).

**RESPONSE:**  Admitted.

18.   By its terms, the Protective Policy only becomes payable upon Price's death.  (Exhibit A to Brief, at Protective000004).

**RESPONSE:** The Receiver denies Protective's characterization that the Policy "only becomes payable upon Price's death." The Policy language speaks for itself, and provides that "[w]e will pay the Death Benefit promptly after we receive, at our Home Office, *due proof* that the Insured died prior to the Final Expiration Date and while this Policy was in Full Force. Protective009 (emphasis added).

19. Having received the Order Granting Petition for Presumptive Death Certificate, the Receiver's sworn declaration that she knew of no credible evidence of Price's continued existence after his disappearance, Price's Death Certificate, and the Claimant's Statement for Death Benefit, Protective issued a check to the Receiver in the amount of $251,510.32 (the "Protective Payment" or "Payment") on July 3, 2013. (Exhibit B to Brief, at ¶ 17). Protective relied upon the aforementioned documents and the Receiver's statements in issuing the Protective Payment, and Protective did not undertake an independent investigation as to whether Price was alive or deceased. (Joint Supplemental Statement of Stipulated Facts, ECF Doc. No. 231, at ¶ 3, attached as Exhibit I to Brief).

**RESPONSE:** The Receiver admits the first sentence. The Receiver further admits that Protective "did not undertake an independent investigation as to whether Price was alive or deceased." By stipulation between the parties, Protective "relied on claim documents submitted by the Receiver, including the Hamilton County, Florida Circuit Court's Order and Presumptive Death Certificate for Mr. Price."

Stipulation II, ¶ 3.

20.　　The Protective Payment consisted of the Policy proceeds of $250,000.00, a premium refund of $3.17, and interest of $1,506.85.  (Exhibit B to Brief, at ¶ 18).

**RESPONSE:**  Admitted.

21.　　The Receiver *admits* that it was reasonable for Protective to make the Payment under the circumstances.  (Exhibit C to Brief, at p. 173:15-18).

**RESPONSE:**  Admitted.

22.　　On December 31, 2013, having evaded the FBI and other authorities for more than eighteen months, Price was discovered alive when he was arrested pursuant to a routine traffic stop in Georgia.  (Exhibit B to Brief, at ¶ 19).

**RESPONSE:**  Admitted.

23.　　As Price was not dead, on January 10, 2014, Protective demanded that the Receiver return the $251,510.32.  (*Id.*, at ¶ 20).

**RESPONSE:**  Admitted.

24.　　The Receiver has refused to return the $251,510.32 to Protective. (*Id.*, at ¶ 21).

**RESPONSE:**  Admitted.

25.　　The Receiver testified that she has sufficient funds in her trust accounts to return the full amount of the Protective Policy proceeds. (Exhibit C to

Brief, at p. 124:14-19).

**RESPONSE:**  Admitted.

26.    The Receiver testified that she has no opinion or belief concerning the following topics: (1) whether Price's presumptive death certificate was due proof of Price's death; (2) whether or not an insurer can rely upon a presumptive death certificate issued by a court of law; or (3) whether Protective should have questioned the Receiver's representation that Price died by suicide.  (Exhibit C to Brief, at pp. 98:10-14; 132:18-21; 126:2-7).

**RESPONSE:**  Denied with respect to (1), because the Receiver was questioned as to whether the presumptive death certificate "constituted proof that Mr. Price was dead" – not whether it constituted "due proof" under the Protective Policy language.  *Id*. at 98:10-14.  Admitted as to (2) and (3).

CASE NO. 1:12-cv-2296-TCB

Respectfully submitted,

**VER PLOEG & LUMPKIN, P.A.**

/s/ Jason S. Mazer
**Jason S. Mazer**
Florida Bar No. 0149871
jmazer@vpl-law.com
**Cary D. Steklof**
Florida Bar No. 86257
csteklof@vpl-law.com
100 S.E. 2nd Street, 30th Floor
Miami, Florida 33131
Telephone: (305) 577-3996
Facsimile: (305) 577-3558
*Special Insurance Counsel for the Receiver, Admitted Pro Hac Vice*

and

**DAMIAN & VALORI, LLP**
**Kenneth Dante Murena, P.A.**
Florida Bar No. 147486
kmurena@dvllp.com
**Guy F. Giberson, P.A.**
Florida Bar No. 627402
ggiberson@dvllp.com
1000 Brickell Avenue, Suite 1020
Miami, Florida 33131
Telephone: (305) 371-3960
Facsimile: (305) 371-3965
*Counsel for the Receiver, Admitted Pro Hac Vice*

and

**PETITT   WORRELL   CRAINE WOLFE, LLC**
**Andrew Worrell, Esquire**

220638
D032.100

CASE NO. 1:12-cv-2296-TCB

>Georgia Bar No. 311027
>Andrew@petittworrell.com
>Suite 1030, One Glenlake
>1 Glenlake Parkway
>Atlanta, Georgia 30328
>Telephone: (404) 249-7480
>Facsimile: (404) 442-4463
>*Co-Counsel for the Receiver*

## LOCAL RULE 5.1 CERTIFICATION

By signature below, counsel certifies that the foregoing document was prepared in Times New Roman, 14-point font in compliance with Local Rule 5.1.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 10, 2015 I electronically filed the foregoing document with the Clerk of Court using CM/ECF as Exhibit A to the Receiver's Response to Protective's Motion for Summary Judgment. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in this manner specified, *via* transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

>/s/ Jason S. Mazer
>**Jason S. Mazer**

220638
D032.100

CASE NO.  1:12-cv-2296-TCB

| SERVICE LIST | |
|---|---|
| **Madison Graham Loomis, Esq.**<br>**W. Shawn Murnahan, Esq.**<br>Securities & Exchange Commission-GA<br>950 East Paces Ferry Road, N.E.<br>Suite 900<br>Atlanta, Georgia 30326<br>Telephone:  (404) 842-7600<br>Email: loomism@sec.gov<br>Email:  murnahanw@sec.gov<br>*Securities and Exchange Commission* | **Robert J. Waddell, Jr., Esq.**<br>MCGUIRE WOODS, LLP<br>Suite 2100, Promenade II<br>1230 Peachtree Street, N.E.<br>Atlanta, Georgia  30309<br>Telephone:  (404) 443-5500<br>Email: rwaddell@mcguirewoods.com<br>*Counsel for FDIC* |
| **Peter D. Muller**<br>GOODMAN MCGUFFEY LINDSEY &<br>JOHNSON, LLP<br>Suite 300<br>532 Stephenson Avenue<br>Savannah, GA 31405-5987<br>Telephone:  (912) 503-2170<br>pmuller@gmlj.com<br>*Counsel for Receiver, Melanie Damian* | **David J. Forestner, Esq.**<br>CARLTON FIELDS JORDEN BURT, P.A.<br>One Atlantic Center, Suite 3000<br>1201 W. Peachtree Street<br>Atlanta, Georgia 30309<br>Telephone:  (404) 815-3400<br>Email: dforestner@cfjblaw.com<br>*Counsel for Plaintiff in Intervention,*<br>*Genworth Life Insurance Company* |
| **C. Andrew Kitchen, Esq.**<br>MAYNARD, COOPER & GALE, P.C.<br>275 Battery Street<br>Suite 1350<br>San Francisco, California 94111<br>Telephone:  (415) 704-7433<br>Email: dkitchen@maynardcooper.com<br>*Counsel for Plaintiffs in Intervention,*<br>*Protective Life Insurance Company and*<br>*Household Life Insurance Company* | **Raul Cuervo, Esq.**<br>CARLTON FIELDS JORDEN BURT, P.A.<br>100 S.E. 2nd Street<br>Suite 4200<br>Miami, Florida 33131<br>Telephone:  (305) 530-0050<br>Email: rcuervo@cfjblaw.com<br>*Counsel for Plaintiff in Intervention,*<br>*Genworth Life Insurance Company* |

220638
D032.100

CASE NO. 1:12-cv-2296-TCB

| | |
|---|---|
| **Christopher C. Frost, Esq.**<br>**Alexander B. Feinberg, Esq.**<br>MAYNARD, COOPER & GALE, P.C.<br>1901 Sixth Avenue North<br>2400 Regions Harbert Plaza<br>Birmingham, Alabama 35203<br>Telephone: (205) 254-1186<br>Email: cfrost@maynardcooper.com<br>Email: afeinberg@maynardcooper.com<br>*Counsel for Plaintiffs in Intervention, Protective Life Insurance Company and Household Life Insurance Company* | **Philip Keith Lichtman**<br>MILLS, PASKERT, DIVERS P.C.<br>One Atlantic Center<br>1201 West Peachtree Street<br>Suite 2610<br>Atlanta, Georgia 30309<br>Telephone : (404) 870-8200<br>klichtman@mpdlegal.com<br>*Counsel for Plaintiffs in Intervention, St. Paul Mercury Insurance Company* |
| **Alan Francis Curley**<br>ROBINSON CURLEY & CLAYTON, P.C.<br>300 South Wacker Drive<br>Chicago, IL 60606<br>Telephone: (312) 663-3100<br>acurley@robinsoncurley.com<br>*Counsel for Federal Deposit Insurance Corporation ("FDIC")* | |

14 of 14