IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE ) | |
| COMMISSION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. |
| ) | 1:12-cv-2296-TCB |
| ) | |
| AUBREY LEE PRICE; et al ) | |
| ) | |
| Defendants, ) | |

**INTERVENTION PLAINTIFF HOUSEHOLD LIFE INSURANCE COMPANY'S
REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Intervention Plaintiff Household Life Insurance Company, ("Household"), hereby submits this reply ("Reply") in support of its Motion for Summary Judgment (ECF Doc. No. 240) ("Motion") and in opposition to Receiver Melanie E. Damian's response to Household's Motion for Summary Judgment ("Response").

**INTRODUCTION**

The only genuine dispute in this case is the proper application of the law to the undisputed facts. Motions for summary judgment exist to efficiently dispose of such cases. *The Lamar Co. v. City of Marietta, Ga.*, 538 F. Supp. 2d 1366, 1372 (N.D. Ga. 2008) ("It is axiomatic that where questions of law alone are involved in

a case, summary judgment is appropriate"). The undisputed facts in this case, which the Receiver has either admitted or stipulated to, are: (1) at the time Household made its payment to the Receiver ("Payment"), the Policy was only payable upon the death of Price;[1] (2) Price is alive; (3) Household has demanded return of the Payment; and (4) the Receiver has refused to return it. (*See* ECF Doc. No. 210, at ¶¶ 27-28). These facts alone are sufficient to establish the elements of Household's claims. The other material facts in this case, which are derived from the parties' joint stipulations of fact (ECF Doc. Nos. 210, 231) and the Receiver's deposition testimony, demonstrate the inefficacy of the Receiver's purported defenses. Consequently, summary judgment in Household's favor is warranted.

## ARGUMENT[2]

**I.    Household has Satisfied its Burden on its Claims.**

"The purpose of summary judgment is to explore the available evidence to determine whether there is a genuine issue of material fact requiring a trial . . .

---

[1] *See* Receiver's Response to Household's Request for Admission No. 1, attached hereto as Exhibit A.

[2] Household adopts and incorporates by reference the facts and arguments set forth in its previous filings (ECF Doc. No. 240-1, 240-2, 258, 259), as well as in the reply of Protective Life Insurance Company being filed contemporaneously herewith. In response to Household's Statement of Undisputed Facts, the Receiver does not set forth any separately numbered additional facts as required by Local Rule 56.1(B)(2)(b). Thus, to the extent the Receiver attempts to rely on additional facts in her Response, such reliance is improper per Local Rule 56.1(B)(1).

Summary judgment is granted when no such issue is discovered and the Court finds the movant entitled to judgment as a matter of law." *Milton v. Bob Maddox Chrysler Plymouth, Inc.*, 868 F. Supp. 320, 322 (S.D. Ga. 1994); *see also Oden v. Lockheed Martin ASCO*, No. 1:06-CV-1343 TWT, 2008 WL 542676, at *4 (N.D. Ga. Feb. 22, 2008) ("When considering motions for summary judgment, the court does not make decisions as to the merits of disputed factual issues . . . Rather, the court only determines whether there are genuine issues of material fact to be tried"). The standards governing summary judgment do not require Household to argue about facts that are not in dispute. The material facts in this case are entirely undisputed. The Receiver's contention that Household has not satisfied its burden on summary judgment is wrong and demonstrates the futility of the Receiver's attempt to avoid its obligation to return the funds that rightfully belong to Household.

The Receiver begins her Response[3] by arguing that Household's Motion "does no more than recite the elements for declaratory judgment, money had and received, and conversion under Georgia." (Receiver's Response, at p. 4). In fact,

---

[3] Household notes that Cary D. Steklof is included in the attorney signature block in the Receiver's Response, as well as in other filings, as being admitted *pro hac vice* in this case. (*See, e.g.,* ECF Doc. Nos. 260-1, 261, 262). Because Mr. Steklof is not a member of the bar of this Court and has not applied for *pro hac vice* admission in this case, his inclusion in the pleadings is improper. *See* Local Rule 83.1.

following the recitation of the elements of each of its claims, Household provided an explanation of the basis for its Motion and the facts that demonstrate why each element of its claims is satisfied. (*See* Household Motion, at p. 10). The Receiver faults Household for the brevity with which it addressed the law and facts establishing its claims, but such brevity was warranted given the following undisputed facts: (1) the Payment is specific and identifiable money that was only to be paid upon Price's death; (2) Price is alive; (3) Household demanded return of the Payment; and (4) the Receiver refused to return it.

Household's brevity was also justified given that, prior to the filing of Household's Motion, the Receiver's sole focus had been on whether the voluntary payment doctrine and/or equitable estoppel doctrines could defeat Household's claims. In opposing Household's Motion to Intervene (ECF Doc. No. 123), the Receiver focused exclusively on these two defenses. (*See* ECF Doc. No. 138-2, at pp. 13-22) (arguing that Household's claims fail based on the voluntary payment doctrine and the doctrine of equitable estoppel). Most significantly, during written discovery, Household served the following Request for Admission on the Receiver:

> **1. Admit that the Policy was only payable upon Price's death.**
>
> **RESPONSE:  Admitted that the Policy "*was* only payable" only upon the death of Price, denied that payment of the Policy's death**

4

> **benefits is not presently enforceable despite the parties' subsequent discovery that Price is alive.**

(*See* Exhibit A). The clear import of this admission is that, under the terms of the Policy, the proceeds were only payable upon Price's death, and thus, the Receiver had no right to retain the Payment unless one of her purported defenses (*i.e.*, voluntary payment or equitable estoppel) applied to defeat Household's claims.

In an email to this Court regarding whether the Insurers' depositions were necessary, the Receiver again indicated that the voluntary payment and equitable estoppel doctrines were the exclusive bases for her defense to Household's claims:

> The discovery sought by the Receiver is directly relevant to the legal claims at issue in this case, as well as to her defenses. Georgia appellate courts have repeatedly indicated that certain facts are directly relevant to a trial court's determination of whether or not the voluntary payment statute and equitable estoppel doctrine prohibit a party's attempt to recovery payments under circumstances like those present here.

(*See* October 10, 2014 email from Matthew Baldwin to Julie Smilley, attached hereto as Exhibit B).

The Receiver was also asked at her deposition why she contends that she is entitled to retain the Payment. Once again, her response focused on the voluntary

5

payment and equitable estoppel doctrines.[4]  (*See* Melanie Damian Deposition Transcript, at p. 22:3-19, attached hereto as Exhibit C).[5]

In sum, throughout this litigation, the Receiver has never meaningfully contested Household's ability to establish a *prima facie* case on its claims, but has instead relied on the voluntary payment and equitable estoppel doctrines in an attempt to defeat Household's claims.  This attempt fails.

## II. The Voluntary Payment Doctrine Does Not Defeat Household's Claims.

The Receiver contends that the voluntary payment doctrine (O.C.G.A § 13-1-13) defeats Household's claims for two reasons.  First, the Receiver argues that Household knew all the material facts at the time it paid the Receiver's claim.  In essence, despite previously testifying in a Florida proceeding and in this litigation that there was no evidence that Price was alive at the time she made her claim,[6] the Receiver now argues that the evidence that she possessed before she made the claim was sufficient to create uncertainty on Household's part regarding whether

---

[4] In her Response, the Receiver points to the affirmative defenses in her Answer to argue that her defense to Household's claims is premised on more than simply the voluntary payment and equitable estoppel doctrines. Tellingly, however, those two defenses are the only ones raised in her Response.

[5] The portions of the Receiver's deposition cited herein were also previously included as Exhibit C to Household's Motion for Summary Judgment (ECF. Doc. No. 240-5) and in the Sealed Deposition of Melanie E. Damian submitted by the Insurers (ECF Doc. No. 248).

[6] *See, e.g.,* Exhibit C, at pp. 22:18-19; 63:11-20; 87:8-20; 88:18 – 89:12.

6

Price was deceased. As discussed below, the factual record and the doctrine of judicial estoppel undermine this argument. Second, the Receiver argues Household had no valid reason for failing to ascertain the truth that Price was alive because it did not conduct its own independent investigation. This argument also fails, as it lacks any legal foundation.

As explained below, there was no recognized uncertainty on the part of Household at the time it paid the Receiver's claim. However, even if this Court concludes otherwise, the voluntary payment doctrine does not preclude Household from recovering because it is undisputed that Price fraudulently concealed his whereabouts. *See Liberty Life Ins. Co. v. Myers*, No. CV 10-2024-PHX-JAT, 2013 WL 530317, at *1-2, 18 (D. Ariz. Feb. 12, 2013) ("*Liberty*").

### A.  Household did not pay the Receiver with recognized uncertainty regarding whether Price was deceased.

The Receiver insists that the voluntary payment doctrine defeats Household's claims because, according to the Receiver, there were facts sufficient to generate uncertainty on the part of Household as to whether Price was deceased at the time Household paid the Receiver.[7] Specifically, the Receiver attempts to

---

[7] The Receiver is wrong that the relevant inquiry is whether Household was uncertain about whether Price was dead or alive "at the time the Receiver requested payment under the policy." (Receiver's Response, at p. 6). The Receiver concedes as much in the next sentence of the her Response, in which she

7

show uncertainty by pointing to Household's knowledge of the following facts: (1) Price has only been declared "presumptively" deceased; (2) Price was wanted by federal authorities; and (3) his body had not been recovered. (Receiver's Response, at p. 6). The Receiver neglects to mention that she also knew all of this information prior to submitting a claim to Household, yet the information did absolutely nothing to lead her to suspect or conclude that Price might be still alive at the time she made the claim or accepted payment of the Payment. (Exhibit C, at pp. 22:18-19; 88:14-24).

The doctrine of judicial estoppel forecloses any argument by the Receiver that the aforementioned facts constitute credible evidence sufficient to create uncertainty as to whether Price was dead at the time the Payment was made:

> Judicial estoppel is a doctrine that is designed to protect the integrity of the judicial system by preventing parties from asserting positions inconsistent with one successfully asserted by the same party in a prior proceeding. . . . A position has been asserted successfully when it has been accepted by the court.

*S.J. Groves & Sons Co. v. Fulton Cnty.*, 967 F. Supp. 501, 503 (N.D. Ga. 1996); *see Bishop's Prop. & Investments, LLC v. Protective Life Ins. Co.*, 597 F. Supp. 2d

---

acknowledges that the proper inquiry is whether Household was uncertain about whether Price was dead *at the time it paid the Receiver's claim. See e.g., Bohannon v. Manhattan Life Ins. Co.*, 555 F.2d 1205, 1212 (5th Cir. 1977).

1354, 1360-61 (M.D. Ga. 2009).   In her sworn declaration filed in support of the Petition for Order Granting Presumptive Death Certificate, the Receiver declared:

> ***I am unaware of any credible evidence as to Mr. Price's existence subsequent to the events that took place on June 16, 2012*** [the date Price disappeared].

(*See* Order for Presumptive Death Certificate, attached as Exhibit E to Household Motion, ECF Doc. No 240-7, at Household000021) (emphasis added).   The court accepted this position, as it granted the Petition and in so doing, expressly stated that:

> ***The Receiver*** has worked closely with federal investigators and others in search of Aubrey Lee Price and any potential assets he or his corporate entities may have and ***is unaware of any evidence as to Mr. Price's existence subsequent to the events that took place on June 16, 2012***.

(*Id.*, at ¶ 8) (emphasis added). Consequently, the doctrine of judicial estoppel operates to prevent the Receiver from arguing: (1) that any evidence that she was aware of prior to Household making the Payment (including the evidence she cites in her Response) was sufficient to generate uncertainty on the part of Household regarding whether Price was dead following his disappearance; or (2) that Household had knowledge of all the material facts at the time it made the Payment.

The Receiver next argues that because Household relied on investigations performed by the Receiver and by law enforcement, Household did not have a valid reason for its failure to ascertain that Price was alive.  (Receiver's Response,

9

at pp. 7-8). This argument fails for a myriad of reasons. First and foremost, the undisputed facts demonstrate that, at the time Household paid the claim, there was no evidence that Price was anything other than deceased, and that had Household undertaken an investigation it would have reached the same conclusion that the Receiver reached—that Price was deceased. (*See* Exhibit C, at pp. 109:6-15; 126:15-19; 131:25 – 132:8; 173:15-18).

Second, the Receiver cites no law to support her argument that Household was required to undertake an independent investigation in order to avoid application of the voluntary payment doctrine. Instead, the Receiver relies exclusively on an affidavit from a purported expert. That affidavit is required to be stricken from the record based on the Receiver's failure to comply with the Federal Rules of Civil Procedure and this Court's Local Rules.[8]

Third, the Receiver ignores that she was not the typical beneficiary making a claim, but rather a federally-appointed officer of the Court who had worked closely with law enforcement and who admittedly had a duty to honestly discharge her responsibilities as Receiver. (Exhibit C, at p. 12:17-20). As such, Household acted reasonably in relying on her representation that Price was deceased. (*Id.*, at

---

[8] *See* the Insurers' Motion to Strike the Affidavit of Donald L. Dinsmore, which is being filed contemporaneously with this Reply. In addition to being procedurally improper, the arguments set forth in the affidavit have no merit for the reasons stated in Household's Motion and in this Reply.

p. 173:15-18). In short, neither the law nor the facts lend any support to the argument that Household did not have a valid reason for its failure to ascertain the truth that Price was alive simply because it did not conduct its own investigation.[9] Because Household made the Payment based on the firm yet mistaken belief that Price was deceased, the voluntary payment doctrine is inapplicable and Household is entitled to summary judgment in its favor.

### B. Even if Household paid the Receiver's claim with some uncertainty regarding whether Price was deceased, Household is still entitled to recover because Price fraudulently concealed his whereabouts.

The Receiver cites no factually similar cases to support her voluntary payment defense, likely because the most relevant authorities, including *Liberty,* undermine the Receiver's arguments. In *Liberty*, Eric Myers ("Eric") increased his life insurance and then absconded. 2013 WL 530317 at *1-2. Despite multiple

---

[9] In a final effort to show that the voluntary payment doctrine defeats Household's claims, the Receiver cites to Household's claims-handling guidelines and to an internet article contained in Household's claims file. As the Receiver acknowledges, that internet article, which was written less than a month after Price disappeared, was accessed by Household on January 14, 2013, the "day the Receiver made her claim and months before Household paid it." (Receiver's Response, at p. 12). In light of the article, Household referred the claim to its fraud examiner on January 17, 2013, *before* the Receiver submitted a Term Life Claim Form, in which she represented that Price had *actually* died by suicide. (ECF Doc. No. 210, at ¶ 24). Having reviewed all of the information provided by the Receiver, information that the Receiver has conceded rendered Household's payment reasonable (Exhibit C, at p. 173:15-18), Household concluded that Price was deceased and paid the claim in full.

investigations by law enforcement, Eric successfully concealed his whereabouts. *Id.* Eventually, one of Eric's relatives obtained a presumptive death certificate and submitted a claim to the insurer, which the insurer paid in full. *Id.* When Eric reappeared, the insurer sued the beneficiaries to recover the portion of the policy proceeds that had been transferred to them. *Id.*, at *6.[10]

The court granted summary judgment to the insurer. *Id.*, at *18. The court rejected an argument that the voluntary payment doctrine defeated the insurer's claims for two independent reasons. *Id.*, at *7-11. First, the Court found that the insurer was entitled to recover the payment because neither party regarded the fact of Eric's death as uncertain at the time the insurer paid. *Id.*, at *8-9. Second, and importantly, the court found that ***even if the fact of Eric's death had been uncertain at the time the payments were made, the insurer could still recover the proceeds because Eric had fraudulently concealed his whereabouts.*** *Id.*, at *9-10. The facts here are nearly identical to those in *Liberty* and warrant the same result—summary judgment to Household. At the time Household made the Payment, neither the Receiver nor Household regarded the fact of Price's death as

---

[10] The Receiver criticizes Household for not mentioning that, in *Liberty*, the insurer did not obtain full repayment. However, the Receiver overlooks that in *Liberty*, the insurer only sought repayment of a portion of the policy proceeds, and it obtained repayment of that amount. *See Liberty*, 2013 WL 530317 at *15, n.1. Here, Household seeks *full* reimbursement of the Payment it made to the Receiver.

uncertain. However, even if this Court were to conclude otherwise, that conclusion would not prevent Household from recovering, because it is undisputed that Price fraudulently concealed his whereabouts after disappearing. (*See* ECF Doc Nos. 243, 251, at p. 14) (conceding Price's fraud). Under *Liberty*, which is the most recent and factually analogous case, Price's fraud alone precludes application of the voluntary payment doctrine.[11]

### III. The Receiver's Equitable Estoppel Arguments Cannot Defeat Household's Claims.

The Receiver contends that O.C.G.A § 23-2-32 defeats Household's claims. This argument fails, as it is premised on a fundamental misunderstanding of *Gulf Life Ins. Co. v. Folsom*, 349 S.E.3d 368 (Ga. 1986) ("*Gulf*").[12] *Gulf* involved a suit by an insurer ("Gulf") to recover an overpayment it mistakenly made to an insured ("Folsom") due to a computer error. *Id.*, at 368-69. Folsom requested and was

---

[11] The Receiver attempts to distinguish *Liberty* by arguing that, under Georgia law, only fraud on the part of the recipient of a payment can defeat the voluntary payment doctrine. (Receiver's Response, at p. 12, n.10). However, the cases relied on by the Receiver are all distinguishable. In none of those cases was the action of a third party integral to the payor's decision to make the payment. Here, as in *Liberty*, the insured's fraud was absolutely integral to the insurer's decision to pay.

[12] The Receiver's reliance on dicta from *Gulf* that "ignorance of a fact by both parties shall not justify the interference of equity" is misplaced. The *Folsom* Court did not decide the case before it on that basis, even though the facts indicate that neither party was aware of the true facts at the time the mistaken payment was made. *See Gulf*, 349 S.E.2d at 369; *see also Liberty*, 2013 WL 530317, at *1-2.

paid roughly $56,000, representing the cash value of the policies. *Id.*, at 369. A year later, Folsom again requested payment of the policies' cash value. *Id.* Due to a computer error, Gulf did not realize that the policies had no cash value, and thus mistakenly paid Folsom another $62,000. *Id.* Importantly, at the time it made the second payment, Gulf had information in its paper file that would have revealed the fact that the policies had no value. *Id.*

The district court entered summary judgment in favor of Folsom, finding that the overpayment was caused solely by Gulf's negligence and thus, there was no valid reason for Gulf's failure to ascertain the true value of the policies when it made the second payment. *Id.*, at 370. Consequently, the court held that O.C.G.A § 13-1-13 defeated Gulf's claim. *Id*. On appeal, the Eleventh Circuit certified a question to the Georgia Supreme Court in light of the conflict between § 13-1-13 and § 23-2-32. *See Gulf Life Ins. Co. v. Folsom*, 806 F.2d (11th Cir. 1986). In *Gulf*, the Georgia Supreme Court answered the certified question as follows:

> In an action for money had and received, the plaintiff generally can recover a payment mistakenly made when that mistake was caused by his lack of diligence or his negligence in ascertaining the true facts and the other party would not be prejudiced by refunding the payment-subject to a weighing of the equities between the parties by the trier of fact.

349 S.E.2d at 373. In other words, the Supreme Court in *Gulf* granted potential relief to plaintiffs who negligently make payments despite having information in

their possession from which they could ascertain the true facts. In such situations, plaintiffs can still recover under § 23-2-32, provided that the other party would not be prejudiced, and subject to a weighing of the equities.

Neither *Gulf* nor § 23-2-32 has any application to this case. As the Receiver has stipulated, Household did not make the Payment as a result of negligence. (ECF Doc. No. 231, at ¶ 21). The Receiver's reliance on § 23-2-32 is misplaced and does nothing to preclude entry of summary judgment in Household's favor.

## CONCLUSION

For the reasons set forth above and in its prior briefing, Household respectfully requests summary judgment in its favor.

Dated: March 3, 2015. Respectfully submitted,

*/s/ Alexander B. Feinberg*
Alexander B. Feinberg
Georgia Bar. No. 956505

**OF COUNSEL:**
C. Andrew Kitchen
Alexander B. Feinberg
Christopher C. Frost
MAYNARD, COOPER & GALE, PC
1901 Sixth Avenue North
2400 Regions Harbert Plaza
Birmingham, Alabama 35203
Telephone: 205-254-1000
Facsimile: 205-254-1999

*Attorneys for Intervention Plaintiff*
*Household Life Insurance Company*

## **LOCAL RULE 7.1(D) CERTIFICATION**

By signature below, counsel certifies that the foregoing document was prepared in Times New Roman, 14 point font in compliance with Local Rule 5.1B.

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of March, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such following to counsel of record. In the event that the CM/ECF system does not send notification of such filing any counsel of record, undersigned counsel will serve the following them via U.S. Mail.

> */s/ Alexander B. Feinberg*
> Of Counsel