IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CASE NO. 1:12-cv-2296-TCB

Securities and Exchange Commission,

    Plaintiff,

vs.

Aubrey Lee Price, PFG, LLC, PFGBI, LLC, Montgomery Asset Management, LLC f/k/a PFG Asset Management, Montgomery Asset Management, LLC f/k/a PFG Asset Management,

    Defendants.
_____/

Genworth Life Insurance Company, Protective Life Insurance Company, Household Life Insurance Company,

    Plaintiffs in Intervention,

vs.

Melanie E. Damian, as Receiver for the Estate of Aubrey Lee Price, PFG, LLC, PFGBI, LLC, Montgomery Asset Management, LLC f/k/a PFG Asset Management,

    Defendant in Intervention.
_____/

# THE RECEIVER'S REPLY TO INTERVENTION PLAINTIFFS PROTECTIVE LIFE INSURANCE COMPANY'S AND HOUSEHOLD LIFE INSURANCE COMPANY'S RESPONSE TO INTERVENTION DEFENDANT MELANIE E. DAMIAN'S STATEMENT OF UNDISPUTED FACTS

Defendant in Intervention, Melanie E. Damian, as the Receiver for the Estate of Aubrey Lee Price, *et al*. (the "Receiver"), by and through the undersigned, and pursuant to all pertinent Federal Rules of Civil Procedure, hereby replies to Intervention Plaintiffs Protective Life Insurance Company's ("Protective") and Household Life Insurance Company's ("Household" and, collectively, the "Parties") Response to Intervention Defendant Melanie E. Damian's Statement of Undisputed Facts, and states as follows:

**Reply to Response to the Receiver's Undisputed Statement of Facts**

1.     Defendant in Intervention, Melanie E. Damian, as the Receiver for the Estate of Aubrey Lee Price, *et al.* (the "Receiver"), hereby submits this Statement of Undisputed Facts in conjunction with her Motion for Summary Judgment and Incorporated Memorandum of Law (the "Motion") in accordance with Local Rule 56.1(B).

**RESPONSE**:     There is no dispute amongst the Parties.

2.     The parties to this matter have previously stipulated to two different statements of undisputed facts, including (1) a Joint Statement of Stipulated Facts

[D.E. 210] (designated "Stipulation I" in the Receiver's Motion), and (2) a Joint Supplemental Statement of Stipulated Facts [D.E. 231] (designated "Stipulation II" in the Receiver's Motion). Stipulation I and Stipulation II are incorporated by reference into the Motion as Exhibits "A" and "B," respectively. Stipulation I and Stipulation II are also attached hereto as Exhibits "A" and "B," respectively, to which the Receiver refers the Court in satisfaction of Local Rule 56.1(B).

**RESPONSE**:   There is no dispute amongst the Parties.

3.   The parties have also stipulated that all of the records produced in discovery in this matter are accurate and authentic copies of their respective business records. Stipulation II at ¶ 2. Household Life Insurance Company's documents bear the Bates label "Household" and Protective Life Insurance Company's documents bear the Bates label "Protective." These records are incorporated by reference into the Motion accordingly.

**RESPONSE**:   There is no dispute amongst the Parties.

### Reply to Intervention Plaintiff Household Life Insurance Company's Statement of Additional Material Facts[1]

4.   Household Life Insurance Company Policy No. 4270711 (the "Household Policy") is only payable upon the death of the insured, Aubrey Lee

---

[1] With the exception of Fact No. 4 below, Household simply restates verbatim certain facts from its Statement of Undisputed Material Facts filed in conjunction with its Motion for Summary Judgment. In an abundance of caution, the Receiver repeats the same responses to these facts.

Price: "If the insured **dies** while this Policy is in force during its Term Period, Household Life Insurance Company will pay the face amount to the Beneficiary, subject to the provisions of this Policy. . . . Any proceeds payable because of the **death** of the Insured will be paid when we receive satisfactory proof of the Insured's **death** and the surrender of the Policy to us." (Household Policy, attached as Exhibit B to Household Life Insurance Company's Motion for Summary Judgment Brief ("Household Motion"), ECF Doc. No. 240-4, at Household00000 1, Household000005) (emphasis added).[2] The Household Policy further states:

- "Face Amount Payable *at Death of Insured* During Term Period"

- "The Beneficiary means the person to receive the proceeds in the event of *the Insured's death*"

- "Payment of Proceeds – Proceeds payable upon *the death of the Insured* are equal to the amount of insurance in force on the *date of death* plus any benefits provided by the attached Policy riders less any premium that is due and unpaid on the *date of death*"

- "Any proceeds payable because of *the death of the Insured* will be paid to the Beneficiary"

- "Face Amount Payable *at Death of Insured* During Term Period" (*Id.*, at    Household000001, Household000005, Household000007, Household00001 0) (emphasis added).

**RESPONSE**:   The Receiver denies Household's characterization that the Policy "is only payable upon the death of the insured." The Policy language

speaks for itself, and provides that "[a]ny proceeds payable because of the death of the Insured will be paid when we receive *satisfactory proof* of the Insured's death and the surrender of the Policy to us." Household005 (emphasis added).

5.  Following Price's disappearance on June 16, 2012, the Receiver cooperated with federal and state authorities in the search for Price, but she conducted no independent investigation concerning whether Price was alive or deceased. (Receiver Melanie Damian Deposition Transcript, attached as Exhibit C to Household Motion, ECF Doc. No. 240-5, at pp. 30:19 – 31:2).

**RESPONSE**: The Receiver admits that she cooperated with federal and state authorities in the search for Price, but denies that she conducted no independent investigation concerning whether Price was alive or deceased. The Receiver's testimony on this matter specifically stated:

> Q: Can you describe for me what you did – strike that.
> So other than your interviewing certain witnesses, you did not take any other independent investigation to determine whether Price was alive or dead following his disappearance?
>
> A: No, it's not my charge to find him.

*Id.* at 30:17 – 23.

6.  Following Price's disappearance on June 16, 2012, the Receiver conducted numerous interviews with individuals in an effort to locate Price's

221032_1
D032.100

assets. (Receiver's Verified Interrogatory Response No. 2, attached as Exhibit D to Household Motion, ECF Doc. No. 240-6). Among other people, the Receiver interviewed Price's wife, daughters, sister, mother, and father. (*Id.*) The Receiver also interviewed Price's colleagues and employees, and over fifty investors defrauded by Price. (*Id.*) During these interviews, the Receiver inquired about Price's whereabouts. (Exhibit C to Household Motion, ECF Doc. No. 240-5, at p. 26:13-25). Based upon these interviews, and possessing no evidence suggesting Price was alive, the Receiver concluded that Price died by suicide. (*Id.*, at pp. 61:3-9; 61:18-21; 63:11-20; 99:25 – 100:24).

**RESPONSE**:   Denied to the extent none of the above citations support the statement that "the Receiver concluded that Price died by suicide."  Admitted as to the remaining statements.

7. Following Price's disappearance on June 16, 2012, the Receiver made herself the owner and beneficiary of the Household Policy so she could keep the Household Policy up to date and make a claim for the Household Policy death proceeds to the extent Price could be declared deceased. (*Id.*, at p. 81:7-14; *see also* Receiver's Initial Report, ECF Doc. No. 47, at p. 32).

**RESPONSE**:   Admitted, except that the Receiver listed "Melanie E. Damian as Receiver of the Estate of Aubrey L. Price" as the owner and beneficiary of the Household Policy.

8. The Receiver filed the claim seeking payment of the proceeds of the Household Policy because she was convinced that Price was deceased. (Exhibit C to Household Motion, ECF Doc. No. 240-5, at pp. 88:18 – 89:12).

**RESPONSE**:   Admitted.

9. In her January 14, 2013 claim letter, the Receiver informed Household that:

> Following an extensive search by the U.S. Coast Guard, the FBI, and other law enforcement authorities, he [Mr. Price] was declared missing at sea and presumed dead. Shortly after his disappearance, documents and other physical evidence were discovered by his family and co-workers that confirmed Mr. Price's intent in boarding the Key West Express was to commit suicide. On December 31, 2012, following an evidentiary hearing into the matter, Aubrey Lee Price was declared legally deceased. . . .

(January 14, 2013 Claim Letter, attached as Exhibit F to Household Motion, ECF Doc. No. 240-8).

**RESPONSE**:   Admitted.

10. On February 4, 2013, the Receiver completed a Term Life Claim Form, in which she represented that Price died by suicide. (Joint Statement of Stipulated Facts, attached as Exhibit A to Household Motion, ECF Doc. No. 240-3, at ¶ 24; Exhibit C to Motion, ECF Doc. No. 240-5, at pp. at pp. 93:2 – 94:7; 95:4- 7; Term Life Claim Form, attached as Exhibit G to Household Motion, ECF Doc. No. 240-9, at Household000032).

**RESPONSE**: Admitted.

11. Having received the Order Granting Petition for Presumptive Death Certificate, the Receiver's sworn declaration that she knew of no credible evidence of Price's continued existence after his disappearance, and the Term Life Claim Form, Household issued two checks to the Receiver in the total amount of $543,561.64 (the "Household Payment") on March 8, 2013. (Exhibit A to Household Motion, ECF Doc. No. 240-3, at ¶ 25). Household relied upon the aforementioned documents and the Receiver's statements in issuing the Household Payment, and Household did not undertake an independent investigation as to whether Price was alive or deceased. (Joint Supplemental Statement of Stipulated Facts, attached as Exhibit H to Household Motion, ECF Doc. No. 240-10, at ¶ 15).

**RESPONSE**: The Receiver admits the first sentence.  The Receiver further admits that Household "did not undertake an independent investigation as to whether Price was alive or deceased."  By stipulation between the parties, "Household relied on the claim submission by the Receiver, the Hamilton County, Florida Circuit Court's Order and Presumptive Death Certificate for Mr. Price in paying the Receiver's claim."  Stipulation II at ¶ 15.

12. The Receiver *admits* that it was reasonable for Household to make the Household Payment under the circumstances. (Exhibit C to Household Motion, ECF Doc. No. 240-5, at p. 173:15-18).

**RESPONSE**:   Admitted.

13. The Receiver testified that she has sufficient funds in her trust accounts to return the full amount of the Household Policy proceeds. (*Id.*, at p. 124:14-19).

**RESPONSE**:   Admitted.

14. The Receiver testified that she has no opinion or belief concerning the following topics: (1) whether Price's presumptive death certificate was due proof of Price's death; (2) whether or not an insurer can rely upon a presumptive death certificate issued by a court of law; or (3) whether Household should have questioned the Receiver's representation that Price died by suicide. (*Id.*, at pp. 98:10-14; 132:18-21; 126:2-7).

**RESPONSE**:   Denied with respect to (1), because the Receiver was questioned as to whether the presumptive death certificate "constituted proof that Mr. Price was dead" – not whether it constituted "due proof" under the Protective Policy language. *Id*. at 98:10-14. Admitted as to (2) and (3).

CASE NO. 1:12-cv-2296-TCB

**Reply to Intervention Plaintiff Protective Life Insurance Company's Statement of Additional Material Facts[2]**

15.  Protective Life Insurance Company Policy No. L26007137 (the "Protective Policy") is only payable upon the death of the insured, Aubrey Lee Price: "We will pay the Death Benefit promptly after we receive, at our Home Office, due proof that the Insured **died** prior to the Final Expiration Date and while the Policy was in Full Force." (Protective Policy, attached as Exhibit A to Protective Life Insurance Company's Motion for Summary Judgment Brief ("Protective Motion"), ECF Doc. No. 24 1-3, at Protective0000004) (emphasis added). The Protective Policy further states:

- "Payable *at Death* Prior to the Final Expiration Date"

- "Death Benefit is the amount payable when *you die*"

- "Beneficiary – The Beneficiary is named on Page 3 unless changed by the Owner. At the time of *your death*, the Beneficiary will be as set forth in the designation then in effect"

- "Beneficiary Succession – At the time of *your death*, the Death Benefit will be paid: (a) to the primary Beneficiary, if living, if not: (b) to the contingent Beneficiary, if living, if not: (c) to the Insured's estate"

**RESPONSE**: The Receiver denies Protective's characterization that the Policy "is only payable upon the death of the insured." The Policy language

---

[2] With the exception of Fact No. 15 below, Household simply restates verbatim certain facts from its Statement of Undisputed Material Facts filed in conjunction with its Motion for Summary Judgment. In an abundance of caution, the Receiver repeats the same responses to these facts.

221032_1
D032.100

speaks for itself, and provides that "[w]e will pay the Death Benefit promptly after we receive, at our Home Office, *due proof* that the Insured died prior to the Final Expiration Date and while this Policy was in Full Force. Protective009 (emphasis added).

16.  Following Price's disappearance on June 16, 2012, the Receiver cooperated with federal and state authorities in the search for Price, but she conducted no independent investigation concerning whether Price was alive or deceased. (Receiver Melanie Damian Deposition Transcript, attached as Exhibit C to Protective Motion, ECF Doc. No. 241-5, at pp. 30:19–31:2).

**RESPONSE**:  The Receiver admits that she cooperated with federal and state authorities in the search for Price, but denies that she conducted no independent investigation concerning whether Price was alive or deceased.  The Receiver's testimony on this matter specifically stated:

> Q:   Can you describe for me what you did – strike that.
>      So other than your interviewing certain witnesses, you did not take any other independent investigation to determine whether Price was alive or dead following his disappearance?
>
> A:   No, it's not my charge to find him.

*Id*. at 30:17 – 23.

17.  Following Price's disappearance on June 16, 2012, the Receiver

conducted numerous interviews with individuals in an effort to locate Price's assets. (Receiver's Verified Interrogatory Response No. 2, attached as Exhibit D to Protective Motion, ECF Doc. No. 241-6). Among other people, the Receiver interviewed Price's wife, daughters, sister, mother, and father. (*Id.*) The Receiver also interviewed Price's colleagues and employees, and over fifty investors defrauded by Price. (*Id.*) During these interviews, the Receiver inquired about Price's whereabouts. (Exhibit C to Protective Motion, ECF Doc. No. 241-5, at p. 26:13-25). Based upon these interviews, and possessing no evidence suggesting Price was alive, the Receiver concluded that Price died by suicide. (*Id.*, at pp. 61:3-9; 61:18-21; 63:11-20; 99:25 – 100:24).

**RESPONSE**:   Denied to the extent none of the above citations support the statement that "the Receiver concluded that Price died by suicide." Admitted as to the remaining statements.

18.   Following Price's disappearance on June 16, 2012, the Receiver made herself the owner and beneficiary of the Protective Policy so she could keep the Protective Policy up to date and make a claim for the Protective Policy death proceeds to the extent Price could be declared deceased. (*Id.*, at p. 81:7-14; *see also* Receiver's Initial Report, ECF Doc. No. 47, at p. 32).

1.   **RESPONSE**:   Admitted, except that the Receiver listed "Melanie E. Damian as Receiver of the Estate of Aubrey L. Price" as the owner and

beneficiary of the Household Policy.

19. The Receiver filed the claim seeking payment of the proceeds of the Protective Policy because she was convinced that Price was deceased. (Exhibit C to Protective Motion, ECF Doc. No. 241-5, at pp. 88:18 – 89:12).

**RESPONSE**:   Admitted.

20. In her January 14, 2013 claim letter, the Receiver informed Protective that:

> Following an extensive search by the U.S. Coast Guard, the FBI, and other law enforcement authorities, he [Mr. Price] was declared missing at sea and presumed dead. Shortly after his disappearance, documents and other physical evidence were discovered by his family and co-workers that confirmed Mr. Price's intent in boarding the Key West Express was to commit suicide. On December 31, 2012, following an evidentiary hearing into the matter, Aubrey Lee Price was declared legally deceased. . . .

(January 14, 2013 Claim Letter, attached as Exhibit F to Protective Motion, ECF Doc. No. 241-8).

**RESPONSE**:   Admitted.

21. On March 14, 2013, the Receiver completed a Claimant's Statement for Death Benefit, in which she represented that Price had died by suicide. (Joint Statement of Stipulated Facts, attached as Exhibit B to Protective Motion, ECF Doc. No. 241-4, at ¶ 15; Exhibit C to Protective Motion, ECF Doc. No. 241-5, at p. 97:1-24; Claim Form, attached as Exhibit G to Protective Motion, ECF Doc. No.

241-9, at Protective000188).

**RESPONSE**:     Admitted.

22.     On May 3, 2013, the Receiver submitted Price's Death Certificate to Protective. (Death Certificate, attached as Exhibit H to Protective Motion, ECF Doc. No. 241-10).

**RESPONSE**:     Admitted.

23.     Having received the Order Granting Petition for Presumptive Death Certificate, the Receiver's sworn declaration that she knew of no credible evidence of Price's continued existence after his disappearance, Price's Death Certificate, and the Claimant's Statement for Death Benefit, Protective issued a check to the Receiver in the amount of $251,510.32 (the "Protective Payment") on July 3, 2013. (Exhibit B to Protective Motion, ECF Doc. No. 241-4, at ¶ 17). Protective relied upon the aforementioned documents and the Receiver's statements in issuing the Protective Payment, and Protective did not undertake an independent investigation as to whether Price was alive or deceased. (Joint Supplemental Statement of Stipulated Facts, attached as Exhibit I to Protective Motion, ECF Doc. No. 241-11, at ¶3).

**RESPONSE**:     The Receiver admits the first sentence.  The Receiver further admits that Protective "did not undertake an independent investigation as to whether Price was alive or deceased."  By stipulation between the parties,

221032_1
D032.100

Protective "relied on claim documents submitted by the Receiver, including the Hamilton County, Florida Circuit Court's Order and Presumptive Death Certificate for Mr. Price." Stipulation II at ¶ 3.

24.   The Receiver *admits* that it was reasonable for Protective to make the Protective Payment under the circumstances. (Exhibit C to Protective Motion, ECF Doc. No. 241-5, at p. 173:15-18).

**RESPONSE**:   Admitted.

25.   The Receiver testified that she has sufficient funds in her trust accounts to return the full amount of the Protective Policy proceeds. (*Id.*, at p. 124:14-19).

**RESPONSE**:   Admitted.

26.   The Receiver testified that she has no opinion or belief concerning the following topics: (1) whether Price's presumptive death certificate was due proof of Price's death; (2) whether or not an insurer can rely upon a presumptive death certificate issued by a court of law; or (3) whether Protective should have questioned the Receiver's representation that Price died by suicide. (*Id.*, at pp. 98:10-14; 132:18-21; 126:2-7).

**RESPONSE**:   Denied with respect to (1), because the Receiver was questioned as to whether the presumptive death certificate "constituted proof that Mr. Price was dead" – not whether it constituted "due proof" under the Protective Policy

language. *Id*. at 98:10-14. Admitted as to (2) and (3).

        Respectfully submitted,

        **VER PLOEG & LUMPKIN, P.A.**

        /s/ Jason S. Mazer
        **Jason S. Mazer**
        Florida Bar No. 0149871
        jmazer@vpl-law.com
        100 S.E. 2nd Street, 30th Floor
        Miami, Florida 33131
        Telephone: (305) 577-3996
        Facsimile: (305) 577-3558
        *Special Insurance Counsel for the Receiver, Admitted Pro Hac Vice*

        and

        **DAMIAN & VALORI, LLP**
        **Kenneth Dante Murena, P.A.**
        Florida Bar No. 147486
        kmurena@dvllp.com
        **Guy F. Giberson, P.A.**
        Florida Bar No. 627402
        ggiberson@dvllp.com
        1000 Brickell Avenue, Suite 1020
        Miami, Florida 33131
        Telephone: (305) 371-3960
        Facsimile: (305) 371-3965
        *Counsel for the Receiver, Admitted Pro Hac Vice*

        and

        **PETITT WORRELL CRAINE WOLFE, LLC**
        **Andrew Worrell, Esquire**

16 of 19

CASE NO. 1:12-cv-2296-TCB

> Georgia Bar No. 311027
> Andrew@petittworrell.com
> Suite 1030, One Glenlake
> 1 Glenlake Parkway
> Atlanta, Georgia 30328
> Telephone: (404) 249-7480
> Facsimile: (404) 442-4463
> *Co-Counsel for the Receiver*

## LOCAL RULE 5.1 CERTIFICATION

By signature below, counsel certifies that the foregoing document was prepared in Times New Roman, 14-point font in compliance with Local Rule 5.1.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 3, 2015 I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in this manner specified, *via* transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

> /s/ Jason S. Mazer
> **Jason S. Mazer**

CASE NO.  1:12-cv-2296-TCB

| SERVICE LIST | |
|---|---|
| **Madison Graham Loomis, Esq.**<br>**W. Shawn Murnahan, Esq.**<br>Securities & Exchange Commission-GA<br>950 East Paces Ferry Road, N.E.<br>Suite 900<br>Atlanta, Georgia 30326<br>Telephone:  (404) 842-7600<br>Email: loomism@sec.gov<br>Email:  murnahanw@sec.gov<br>*Securities and Exchange Commission* | **Robert J. Waddell, Jr., Esq.**<br>MCGUIRE WOODS, LLP<br>Suite 2100, Promenade II<br>1230 Peachtree Street, N.E.<br>Atlanta, Georgia  30309<br>Telephone:  (404) 443-5500<br>Email: rwaddell@mcguirewoods.com<br>*Counsel for FDIC* |
| **Peter D. Muller**<br>GOODMAN MCGUFFEY LINDSEY &<br>JOHNSON, LLP<br>Suite 300<br>532 Stephenson Avenue<br>Savannah, GA 31405-5987<br>Telephone:  (912) 503-2170<br>pmuller@gmlj.com<br>*Counsel for Receiver, Melanie Damian* | **David J. Forestner, Esq.**<br>CARLTON FIELDS JORDEN BURT, P.A.<br>One Atlantic Center, Suite 3000<br>1201 W. Peachtree Street<br>Atlanta, Georgia 30309<br>Telephone:  (404) 815-3400<br>Email: dforestner@cfjblaw.com<br>*Counsel for Plaintiff in Intervention,<br>Genworth Life Insurance Company* |
| **C. Andrew Kitchen, Esq.**<br>MAYNARD, COOPER & GALE, P.C.<br>275 Battery Street<br>Suite 1350<br>San Francisco, California 94111<br>Telephone:  (415) 704-7433<br>Email: dkitchen@maynardcooper.com<br>*Counsel for Plaintiffs in Intervention,<br>Protective Life Insurance Company and<br>Household Life Insurance Company* | **Raul Cuervo, Esq.**<br>CARLTON FIELDS JORDEN BURT, P.A.<br>100 S.E. 2nd Street<br>Suite 4200<br>Miami, Florida 33131<br>Telephone:  (305) 530-0050<br>Email: rcuervo@cfjblaw.com<br>*Counsel for Plaintiff in Intervention,<br>Genworth Life Insurance Company* |

221032_1
D032.100

| | |
|---|---|
| **Christopher C. Frost, Esq.**<br>**Alexander B. Feinberg, Esq.**<br>MAYNARD, COOPER & GALE, P.C.<br>1901 Sixth Avenue North<br>2400 Regions Harbert Plaza<br>Birmingham, Alabama 35203<br>Telephone: (205) 254-1186<br>Email: cfrost@maynardcooper.com<br>Email: afeinberg@maynardcooper.com<br>*Counsel for Plaintiffs in Intervention, Protective Life Insurance Company and Household Life Insurance Company* | **Philip Keith Lichtman**<br>MILLS, PASKERT, DIVERS P.C.<br>One Atlantic Center<br>1201 West Peachtree Street<br>Suite 2610<br>Atlanta, Georgia 30309<br>Telephone : (404) 870-8200<br>klichtman@mpdlegal.com<br>*Counsel for Plaintiffs in Intervention, St. Paul Mercury Insurance Company* |
| **Alan Francis Curley**<br>ROBINSON CURLEY & CLAYTON, P.C.<br>300 South Wacker Drive<br>Chicago, IL 60606<br>Telephone: (312) 663-3100<br>acurley@robinsoncurley.com<br>*Counsel for Federal Deposit Insurance Corporation ("FDIC")* | **Wm. Matthew Suber**<br>BUTLER & HOSCH, P.A.<br>1303 Hightower Trail, Suite 315<br>Sandy Springs, Georgia 30350<br>Telephone: (678) 298-2117<br>msuber@closingsource.net<br>*Counsel for Amerisave Mortgage Corporation* |

221032_1
D032.100