IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, ) ) ) Plaintiff, ) ) v. ) ) ) AUBREY LEE PRICE; et al ) ) Defendants, ) | Civil Action No. 1:12-cv-2296-TCB |

**INTERVENTION PLAINTIFFS PROTECTIVE LIFE INSURANCE COMPANY'S AND HOUSEHOLD LIFE INSURANCE COMPANY'S OPPOSITION TO THE RECEIVER'S CLAIM TO THE LIFE INSURANCE PROCEEDS**

Intervention Plaintiffs Protective Life Insurance Company ("Protective") and Household Life Insurance Company ("Household"), (collectively, the "Insurers"), hereby submit this opposition ("Opposition") to the Receiver's Claim to the Life Insurance Proceeds ("Receiver's Claim" or "Claim") (ECF Doc. No. 284).

## INTRODUCTION

In its Order granting summary judgment in the Insurers' favor ("Order") (ECF Doc. No. 281), this Court found that while the Insurers had succeeded on all of their claims and were entitled to repayment from the Receiver, the Receiver could possibly retain any funds that "were attributable to the insurers and were

disbursed prior to Price's discovery and arrest," provided the Receiver could make such a showing. (Order at p. 48). Stated differently, this Court permitted the Receiver to retain any portions of the funds paid to the Receiver by the Insurers that the Receiver could demonstrate were **both** "attributable exclusively" to the Insurers **and** actually disbursed prior to December 31, 2013, the date Price was arrested.[1] The Receiver has admittedly failed in carrying the burden necessary for her to establish a right to retain any portion of the funds. Accordingly, the Receiver should not be allowed to retain any of the funds paid by the Insurers.

In an effort to comply with the Court's directive to determine which funds were "attributable exclusively" to the Insurers, Protective and Household have undertaken the burden and cost of reviewing the Receiver's expenses. At the very least, as is illustrated below, the Insurers are entitled to an order requiring the Receiver to pay $533,113.90 to Household and $246,676.06 to Protective, representing the amounts due to the Insurers after taking into account the portions of the Receiver's expenses between March 11, 2013 and December 31, 2013 "attributable exclusively" to the Insurers.

---

[1] *See also* Order at p. 28, note 8 (explaining that this Court needed additional information to "ascertain the precise amounts distributed by the receiver and attributable exclusively to the insurance proceeds").

# ARGUMENT

## I. The Receiver's inequitable conduct in calculating her claim entitles the Insurers to a full refund.

In her Claim, the Receiver makes <u>no</u> attempt to comply with this Court's Order by ascertaining the amount of the funds exclusively attributable to the Insurers that she disbursed prior to December 31, 2013. Instead, the Receiver admits that she commingled the policy proceeds with other funds and cannot demonstrate what portions of the funds that she disbursed prior to Price's arrest were attributable exclusively to the insurance proceeds. Having conceded that her own actions have rendered it impossible to precisely trace what portions of the Insurers' funds were disbursed prior to Price's arrest, the Receiver asks this Court to adopt an entirely different calculation methodology from the one directed by this Court's Order. In applying her own self-serving methodology (which she contends entitles her to pay back <u>less than half</u> of the funds paid by the Insurers), the Receiver blatantly ignores both relevant facts and the clear language of the Court's Order.

Specifically, the Receiver utilizes three improper tactics in an inappropriate attempt to drastically reduce the Insurers' recovery. First, in calculating the amount of funds contained in the Receiver's account between March 11, 2013 and December 31, 2013, the Receiver improperly and inexplicably excludes the

$480,000.00 that it paid to Genworth Life Insurance Company ("Genworth") almost a year after Price was arrested. By doing so, the Receiver improperly reduces the amount of cash she had on hand when Price was arrested, thereby resulting in a reduced recovery for the Insurers.

Second, in calculating the amount of funds disbursed by the Receiver prior to Price's arrest, the Receiver includes amounts that were not actually disbursed, but were merely "earmarked" for certain purposes. Nothing in the Order permits the Receiver to treat funds that were merely "earmarked" for eventual payment as if they were actually disbursed prior to Price's arrest.

Third, the Receiver's calculations assume that both Insurers' funds were deposited into the Receiver's account on March 11, 2013, despite the fact that Protective's funds were not deposited until July 9, 2013. By ignoring this fact, the Receiver's calculations improperly increase the amount of expenses allegedly attributable to Protective, thereby improperly reducing Protective's potential recovery.

The Receiver has intentionally ignored relevant facts and this Court's Order in a brazen attempt to prevent the Insurers from obtaining funds to which they are legally entitled. "It is a well-recognized maxim that he who seeks equity must do equity." *S. Crescent Rehab. & Ret. Ctr., Inc. v. Georgia Dep't of Cmty. Health*, 660 S.E.2d 792, 796 (Ga. Ct. App. 2008); *accord Boston & Florida Atl. Coast*

*Land Co. v. Alford*, 8 So. 2d 483, 484 (Fla. 1942). Given the Receiver's failure to comply with the clear language of this Court's Order and ascertain which funds were "exclusively attributable" to the Insurers, she is not entitled to any equitable relief. Consequently, this Court should reject the Receiver's Claim and provide the Insurers with a full refund of the proceeds they paid to the Receiver by ordering the Receiver to pay $543,561.64 to Household and $251,510.32 to Protective.

**II. Alternatively, this Court should award Household $533,113.90 and Protective $246,676.06, representing the amounts due to the Insurers after taking into account the portions of the Receiver's expenses between March 11, 2013 and December 31, 2013 attributable exclusively to the Insurers.**

Despite this Court's Order directing her to account for which expenses are attributable to the Insurers' funds, and despite being in the best position to do so, the Receiver made no attempt to determine the amount of funds exclusively attributable to the Insurers between March 11, 2013 and December 31, 2013. In contrast, the Insurers have conducted an exhaustive review of the bills submitted with the Receiver's fee applications in an effort to determine what portions of those bills during the relevant period are attributable to the Receiver's work related to the Insurers' policies. As demonstrated in Exhibit A attached hereto, the Receiver incurred $15,282.00 in fees between March 11, 2013 and December 31, 2013 dealing with matters exclusively attributable to the Insurers' policies. Using a pro-rata calculation based upon the respective amounts that each Insurer paid to

the Receiver[2], $10,447.74 of those fees are attributable to Household, while $4,834.25 are attributable to Protective. After subtracting those amounts from the amounts paid to the Receiver by the Insurers, Household is entitled to recover from the Receiver $533,113.90 and Protective is entitled to recover $246,676.06.

> **III. In the Further Alternative, if this Court is inclined to rely on the Receiver's own methodology, this Court should enter an order requiring the Receiver to pay $333,233.90 to Household and $196,710.34 to Protective.**

If this Court chooses to rely on the Receiver's own self-serving methodology, this Court should reject the incorrect calculations used by the Receiver and should award Household and Protective $333,233.90 and $196,710.34, respectively. As explained below and illustrated in the spreadsheets attached hereto as Exhibits B and C, these amounts represent the Insurers' respective recoveries under the Receiver's proration methodology when the Receiver's three improper tactics are removed from the analysis.

> **A. The Receiver's calculations improperly exclude from the Receiver's cash on hand on the date of Price's arrest the $480,000.00 she paid to Genworth almost a year after Price's arrest.**

The Receiver claims that the "proper approach" to determining the amount the Insurers are entitled to recover is to utilize a proration model that assumes that,

---

[2] Of the $795,071.96 collectively paid to the Receiver by the Insurers, 68.4% is attributable to Household's payment and 31.6% is attributable to Protective's payment.

6

between date the Insurers' funds were deposited into the Receiver's account and the date of Price's arrest, the funds paid by the Insurers were expended on a proportionate basis with the other funds in the receivership account.

However, despite acknowledging that the relevant inquiry into the Receiver's cash on hand is the cash on hand between the date the Insurers' funds were deposited and the date of Price's arrest, the Receiver attempts to exclude from the cash on hand calculation the $480,000.00 that the Receiver distributed to Genworth in December of 2014, almost a year after Price's arrest. (Receiver's Claim at p. 4, note 1). This $480,000.00 was <u>not</u> disbursed prior to Price's arrest and was contained in the Receiver's account on the date of Price's arrest. There is simply no legitimate basis for excluding the $480,000.00 paid to Genworth from the calculation of the amount of cash the Receiver had on hand between March 11, 2013 and December 31, 2013. Consequently, the amount of cash available from other sources that the Receivership estate had available between March 11, 2013 and December 31, 2013 (the date of Price's arrest), is not $1,271,170.80, as the Receiver contends, but instead $1,751,170.81.

**B.    The Receiver's calculations improperly treat amounts not actually disbursed from the Receiver's account prior to Price's arrest as if they were actually disbursed before Price's arrest.**

This Court's Order was abundantly clear in stating that the Receiver was only entitled to retain those portions of the Insurers' funds that were **actually**

**disbursed** prior to Price's arrest. (Order at p. 48). Despite this clear holding, the Receiver has improperly attempted to include in her calculation of the amounts disbursed prior to Price's arrest amounts that she concedes were "incurred but not paid" before Price's arrest. (Receiver's Claim, Exhibit A, note 1). The amount of expenses that the Receiver claims were "incurred but not paid" prior to Price's arrest totals $302,000.00. There is simply no basis for treating this $302,000.00 as being actually disbursed prior to Price's arrest. As illustrated by Exhibit B, attached hereto, when this $302,000.00 is excluded from the analysis, the actual amount of funds disbursed by the Receiver during the relevant time period is not $1,244,732.21, but rather $942,732.21.

### C. The Receiver's calculations ignore the fact that Protective's policy proceeds were not deposited into the Receiver's account until July of 2013.

While the Receiver's Claim acknowledges that the funds paid by Protective were not deposited into the Receiver's account until July 9, 2013, her calculations simply ignore that fact and treat Protective's funds as if they were deposited on March 11, 2013. Consequently, in conducting her proration analysis, the Receiver attributes a portion of the expenses incurred and disbursed between March 11, 2013 and July 9, 2013 to Protective, despite the undisputed fact that there were no Protective funds in the Receiver's account during that period. (*See* Exhibit C, Section I). The correct approach is to only allocate to Protective those expenses

that were incurred and disbursed after the Protective funds were deposited into the Receiver's account.  Under this approach, which is explained below and in Section II of Exhibit C, attached hereto, Protective is entitled to recover $196,710.34 and Household is entitled to recover $333,233.90.

These correct amounts, representing Household and Protective's respective recoveries, are calculated by performing separate expense allocations for the periods before and after the Protective proceeds were deposited into the Receiver's account on July 9, 2013.  First, during the period between March 11, 2013 and July 9, 2013 (the "pre-payment period"), Household deposited $543,561.64, representing 23.69%, of the $2,294,732.45 in the Receiver's account. Applying this ratio to the $496,022.87 in expenses paid from the Receiver's account during the pre-payment period (*see* Exhibits B at p. 3 and C at p. 2), Household's proportionate share of such expenses is $117,494.75.

In the period between July 9, 2013 (the date of Protective deposit) and December 31, 2013 (the "post-payment period"), the funds in the Receiver's account totaled $2,050,219.90, of which $251,510.32, or 12.27%, was attributable to Protective and $426,066.89, or 20.78%, was attributable to Household.[3]  During the post-payment period, a total of $446,709.34 in expenses was paid from the

---

[3] This $426,066.89 figure represents the difference between the $543,561.64 initially paid in by Household and the $117,494.75 in expenses attributed to Household for the pre-payment period.

9

Receiver's account. (*See* Exhibits B at p. 3 and C at p. 2).  Using a pro rata approach, $54,799.98 of these expenses are allocated to Protective and $92,833.00 are allocated to Household. Accordingly, the total expenses attributable to Protective and Household for the entire period are $54,799.98 and $210,327.74, respectively. Subtracting these attributed expenses from the amounts originally paid by the Insurers yields a recovery of $196,710.34 for Protective and $333,233.90 for Household.

## CONCLUSION

Given the Receiver's inequitable and improper attempts to diminish the Insurers' recovery through her Claim, the Receiver's Claim should be denied in its entirety and the Insurers awarded a full refund of the amounts they paid to the Receiver, plus prejudgment interest.[4]

Alternatively, this Court should enter an order requiring the Receiver to pay $533,113.90 to Household and $246,676.06 to Protective, representing the amounts due to the Insurers after taking into account the portions of the Receiver's expenses between March 11, 2013 and December 31, 2013 attributable exclusively to the Insurers.

---

[4] The Insurers are filing simultaneously herewith a Motion for Prejudgment Interest.

In the further alternative, if this Court is inclined to rely on the Receiver's own methodology, this Court should enter an order requiring the Receiver to pay $333,233.90 to Household and $196,710.34 to Protective.[5]

Dated: April 28, 2015.                              Respectfully submitted,

*/s/ Alexander B. Feinberg*
Alexander B. Feinberg
Georgia Bar. No. 956505

**OF COUNSEL:**
C. Andrew Kitchen
Alexander B. Feinberg
MAYNARD, COOPER & GALE, PC
1901 Sixth Avenue North
2400 Regions Harbert Plaza
Birmingham, Alabama 35203
Telephone: 205-254-1000
Facsimile: 205-254-1999

*Attorneys for Intervention Plaintiffs Protective Life Insurance Company and Household Life Insurance Company*

---

[5] If this Court is inclined to fully agree with the Receiver's Claim, the Insurers request leave to conduct discovery related to the Receiver's Claim.

## **LOCAL RULE 7.1(D) CERTIFICATION**

By signature below, counsel certifies that the foregoing document was prepared in Times New Roman, 14 point font in compliance with Local Rule 5.1B.

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of April, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such following to counsel of record.   In the event that the CM/ECF system does not send notification of such filing any counsel of record, undersigned counsel will serve the following them via U.S. Mail.

>*/s/ Alexander B. Feinberg*
>Of Counsel