IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : <br> : <br> : |
| Plaintiff, | :    Civil Action No. <br> :    1:12-cv-2296-TCB |
| v. | : <br> : |
| AUBREY LEE PRICE, *et al.*, | : <br> : |
| Defendants. | : |
| _____/ | |

## UNOPPOSED MOTION TO APPROVE SETTLEMENT AGREEMENT BETWEEN RECEIVER AND FEDERAL DEPOSIT INSURANCE CORPORATION AS <u>RECEIVER OF MONTGOMERY BANK AND TRUST</u>

Melanie E. Damian, the Court-Appointed Receiver (the "PFG Receiver") for the Estate of Aubrey Lee Price and for PFG, LLC, PFGBI, LLC, Montgomery Asset Management, LLC f/k/a PFG Asset Management, LLC (Florida), and Montgomery Asset Management, LLC f/k/a PFG Asset Management (Georgia) (collectively, the "Receivership Entities"), moves this Court to approve the Settlement Agreement between the PFG Receiver and the Federal Deposit Insurance Corporation as Receiver of Montgomery Bank & Trust (the "FDIC-R"). In support of this Motion, the PFG Receiver states as follows:

## PROCEDURAL AND FACTUAL BACKGROUND

1. On July 2, 2012, Plaintiff the Securities and Exchange Commission filed this action against Defendants. [D.E. 1]. On August 10, 2012, this Court entered its Order Appointing Receiver (the "Receivership Order"), which, among other things, appointed Ms. Damian as Receiver for the Estate of Aubrey Lee Price and the Receivership Entities. [D.E. 20].

2. Pursuant to the Receivership Order, the PFG Receiver is obligated to, among other things, "sue for and collect, recover, receive, and take into possession from third parties all Receivership Property and records relevant thereto[.]" [D.E. 20 at §7(B)].

3. Furthermore, the Receivership Order authorizes the PFG Receiver "[t]o take such action as necessary and appropriate for the preservation of Receivership Property or to prevent the dissipation or concealment of Receivership Property[.]" [D.E. 20 at §7(H)].

4. The Receivership Order also authorizes the PFG Receiver "to pursue, resist and defend all suits, actions, claims and demands which may now be pending or which may be brought by or asserted against the Receivership Estates[.]"

5. On July 6, 2012, Montgomery Bank & Trust ("MB&T or the "Bank"), a Georgia bank, was closed by the Georgia Department of Banking and Finance, and FDIC-R was appointed receiver.

6. Prior to the Bank's closing, Receivership Entity PFGBI, LLC had acquired a controlling interest in Montgomery County Bankshares, Inc. ("MCBI"), the holding company for the Bank.

7. Accordingly, on October 9, 2012, the PFG Receiver filed a proof of claim against the MB&T receivership estate based on PFGBI, LLC's investments in the Bank.

8. On June 26, 2013, the FDIC-R delivered a Notice of Disallowance of Claim to the Receiver, denying the Receivership Estate's claim against the Bank Estate.

9. The PFG Receiver filed a Complaint in the Southern District of Georgia to preserve the Receivership Estate's claims against the Bank Estate, styled *Damian v. FDIC-R*, case number 3:13-cv-00061-DHB-BKE (the "Damian Action"), seeking de novo review by the court of its claim pursuant to 12 U.S.C. § 1821(d)(6).

10. On October 30, 2013, the PFG Receiver and the FDIC-R filed a Joint Motion for a temporary stay of the Damian Action to facilitate settlement

negotiations, which the court granted on November 1, 2013, extending the stay through March 19, 2014. After the parties sought and obtained a further extension of time for the PFG Receiver to file the amended complaint, the PFG Receiver, on April 10, 2014, filed her Amended Complaint.

11. In addition, MBT's parent company, MCBI filed a post-disallowance lawsuit against FDIC-R in the Southern District of Georgia, *Montgomery County Bankshares, Inc. v. FDIC*, No. 3-13-cv-12 ("MCBI Action").

12. On May 8, 2014, at the request of the FDIC-R and MCBI, the court in the MCBI Action administratively closed the MCBI Action for statistical purposes, preserving all rights, claims and defenses of the FDIC-R and MCBI.

13. On May 28, 2014, at the request of the FDIC-R and the Receiver, the court in the Damian Action administratively closed the Damian Action for statistical purposes, preserving all rights, claims and defenses of the parties.

14. The primary purpose of pursuing the Damian Action and the MCBI Action was to preserve the PFG Receiver's claim against the FDIC-R's Receivership Estate and defenses to the FDIC-R's claim against the Estate. The FDIC-R's Receivership Estate is not expected to have any assets from which the PFG Receiver could receive a distribution.

15. The PFG Receiver and the FDIC-R have resolved their disputes concerning various material issues underlying the amount and treatment of the FDIC-R's claim against this Estate, the terms of the claims administration process and distribution plan for this receivership case, the Damian Action, the MCBI Action, the parties cooperation in connection with certain insurance claims, and related matters, and have memorialized such resolution in the Settlement Agreement, a copy of which is attached hereto as **Exhibit A**, which is subject to this Court's approval.

## THE SETTLEMENT AGREEMENT

16. Pursuant to the terms of the Settlement Agreement, the FDIC-R and the PFG Receiver have agreed as follows:

17. The Settlement Agreement provides, in pertinent part, as follows:

   a. The Settlement Agreement will become effective once this Court has entered an order approving it and that order becomes a final non-appealable order;

   b. The FDIC-R's claim against the Estate in the amount of $16,900,000 will be approved by the Receiver and recommended to the Court as an allowed claim to be treated *pari pasu* with the claims of the investors and creditors of the Defendants in the Court-approved Claims Administration Process and Distribution Plan;

   c. The Claims Administration Process and Distribution Plan that the PFG Receiver will propose to the Court shall contain the following material terms:

1. The allowed claim of each investor in the Receivership Entities (collectively, the "Investors") will be determined by calculating the amounts transferred to the Receivership Entities, less any amounts returned to the investor by the Receivership Entities, less any recoveries obtained by the investor from other sources based on the same losses underlying such investor's allowed claims (the total allowed claims of all investors is referred to hereinafter as the "Net Investor Claims"), subject to a claims objections and adjudication process and the Receivership Court's approval. Interest or lost opportunity shall not be considered.

2. Distributions of the Receivership Entities' assets shall be made first to Court-approved administrative expense creditors (collectively "Class 1 Creditors"). After payment in full of the claims of such Class 1 Creditors, distributions of the Receivership Entities' assets shall be made *pro rata* to a single class of creditors consisting of the Net Investor Claims, FDIC-R's $16,900,000 claim, and claims of other general creditors, if any (collectively "Class 2 Creditors").

3. FDIC-R's $16,900,000 claim and the Net Investor Claims shall remain Class 2 Creditor claims regardless of whether the Receivership Court determines that the claims of Genworth Life Insurance Company, Household Life Insurance Company and/or Protective Life Insurance Company ("Intervening Life Insurers") are higher priority, equivalent to, or subordinate to Class 2 Creditors. Distributions to Class 1 Creditors and Class 2 Creditors shall be subject to and consistent with any order of the Receivership Court with respect to the pending Complaints of the Intervening Life Insurers.

4. The *pro rata* distributions paid to FDIC-R shall not exceed 39.9% of the total calculated distributions payable to Class 2 Creditors, nor shall they be less than 33.3% of the total calculated distributions payable to Class 2 Creditors.

d. The Parties shall employ all reasonable efforts to cooperate in securing the proceeds from insurance policies (Nos. EC06801146 and EC06802099) issued by Travelers Insurance Company and/or St. Paul Mercury Insurance Company, a financial institution bond (No. 468PB1740) issued by St. Paul Mercury Insurance Company, and a Financial Advisors Professional Liability Policy (No. FP82344A) issued by Evanston Insurance Company to MAM, including but not limited to possible joint demands on the carriers for a tender of their respective limits of liability.

e. The PFG Receiver's rights and defenses under the Damian Action and the MCBI Action are preserved in the event the Settlement Agreement is not approved by this Court or is deemed to be null and void.

*See* Settlement Agreement at pp. 3-9.

18. The foregoing description of the Settlement Agreement is for summary purposes only and does not constitute a full recitation of the terms of the Settlement Agreement. A review of the foregoing description or this Motion should not be a substitute for a review of the complete Settlement Agreement. *See* Exhibit "A."

19. The Settlement Agreement is beneficial to the Estate because, by fixing the amount the FDIC-R claim at $16,900,000 and requiring the FDIC-R to pursue that claim solely through the claims process in this receivership case rather than through litigation in another forum, it will eliminate the substantial expenses, delays and risks that the Estate would face in litigating the amount of the FDIC-R's claim against the Estate and the Receiver's defenses to such claim in the claims

7

process (or another action brought by the FDIC-R in another forum) and in the Damian Action and the MCBI Action. Indeed, the Settlement Agreement will significantly streamline the claims process by eliminating any objections by the FDIC-R to the claims process and distribution plan and any objections by the PFG Receiver to the FDIC-R's claim, expediting this Court's consideration and approval of the claims process and distribution plan and the PFG's Receiver's determinations regarding the allowance and disallowance of the claims filed against the Estate. And, the Settlement Agreement will allow the PFG Receiver to dismiss the Damian Action and MCBI (of which the PFG Receiver is the majority shareholder) to dismiss the MCBI Action.

20. Further, requiring the FDIC-R to pursue its claim through the claims process and capping that claim at 39.9% of the total amount to be distributed from the Estate will immunize the Estate's funds and other assets from the FDIC-R's purported rights to garnishment, levy and/or other attachment pursuant to FIRREA, and will guaranty that the defrauded investors and any other creditors with allowed claims will receive the majority of the total amount to be distributed from the Estate.

21. Finally, the Estate will benefit from the FDIC-R's cooperation, sharing of resources and information, and possible joint demands with respect to

the claims against insurance policies and a financial institution bond that could result in the Estate recovering millions of dollars.

22. Therefore, the Settlement Agreement is in the best interest of the Receivership Estate, and the PFG Receiver presents it to this Court for approval.

23. Counsel for Plaintiff the Securities and Exchange Commission and counsel for the FDIC-R have informed undersigned counsel that they do not object to the relief requested herein.

**WHEREFORE**, for the foregoing reasons, the PFG Receiver respectfully requests that this Court (i) enter the attached proposed order approving the Settlement Agreement and authorizing the PFG Receiver to fulfill her obligations under, and to otherwise carry out the terms of, the Agreement, and (ii) grant such other and further relief as the Court deems just and proper.

    Respectfully submitted,

    DAMIAN & VALORI, LLP
    *Counsel for the Receiver*
    1000 Brickell Avenue, Suite 1020
    Miami, FL 33131
    T: (305) 371-3960
    F: (305) 371-3965

    /s/ Kenneth Dante Murena
    Kenneth Dante Murena, P.A.
    Florida Bar No. 147486
    kmurena@dvllp.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served via CM/ECF upon all counsel of record on this 30th day of April, 2015.

/s/ Kenneth Dante Murena
Kenneth Dante Murena, P.A.