## AGREEMENT

This Agreement is made as of the latest date indicated on the signature page hereof ("Execution Date"), by and between the following persons and entities, each of which may be referred to as a "Party" and all of which may be referred to collectively as the "Parties."

A.  The Federal Deposit Insurance Corporation as Receiver ("FDIC-R") of Montgomery Bank & Trust ("MBT"); and

B.  Melanie Damian ("Receiver") as Receiver of the following:

   1.  All assets of Aubrey Lee Price;

   2.  PFG, LLC ("PFG");

   3.  PFGBI, LLC ("PFGBI"); and

   4.  Montgomery Asset Management, LLC f/k/a PFG Asset Management, LLC (Florida limited liability company) and Montgomery Asset Management, LLC f/k/a PFG Asset Management, LLC (Georgia limited liability company) (collectively "MAM").

PFG, PFGBI, and MAM are collectively referred to as the "Receivership Entities," and the Receivership Entities and the assets of Aubrey Lee Price are collectively referred to as the "Receivership Estate."

WHEREAS, MBT was placed into receivership on July 6, 2012, and FDIC-R was appointed its receiver;

WHEREAS, on July 2, 2012, the Securities and Exchange Commission ("SEC") filed suit against Aubrey Lee Price ("Price") and the Receivership Entities in the Northern District of Georgia, *SEC v. Price, et al.*, No. 1:12-cv-2296-TCB ("Receivership Court"); and

EXHIBIT A

WHEREAS, on August 10, 2012, the Receivership Court appointed Melanie Damian as Receiver of the Receivership Estate (Doc. 20 and, as subsequently amended, Doc. 82) ("Receivership Order");

WHEREAS, the Receiver filed in the Receivership Court her Motion to Approve (A) Investors and Creditors Claims Procedure; and (B) Initial Plan of Distribution (Doc. 114) ("Claims Process Motion"), which motion was denied without prejudice on July 16, 2014 (Doc. 197); and

WHEREAS, FDIC-R objected to the Receiver's Claims Process Motion on various grounds (Doc. 126), including that it would violate provisions of the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA"), 12 U.S.C. § 1821 *et seq.*, and the National Depositor Preference Act, 12 U.S.C. § 1821(d)(ii); and

WHEREAS, FDIC-R contends that it has claims against the Receivership Entities and that under FIRREA it is not subject to certain provisions of the Receivership Order; and

WHEREAS, the Receiver contends the Receivership Entities have claims against MBT and filed a claim in MBT's estate, which the FDIC-R denied; and

WHEREAS, the Receiver filed a post-disallowance lawsuit for *de novo* review in the Southern District of Georgia, *Damian v. FDIC*, No. 3:13-cv-61 ("Damian Action"); and

WHEREAS, on May 28, 2014 ("Closure Date"), at the request of FDIC-R and the Receiver, the court in the Damian Action administratively closed the Damian Action for statistical purposes, preserving all rights, claims and defenses of the Parties; and

WHEREAS, a post-disallowance lawsuit was filed by MBT's parent company, Montgomery County Bankshares, Inc. ("MCBI") against FDIC-R in the Southern District of Georgia, *Montgomery County Bankshares, Inc. v. FDIC*, No. 3-13-cv-12 ("MCBI Action"); and

WHEREAS, on May 8, 2014, at the request of FDIC-R and MCBI, the court in the MCBI Action administratively closed the MCBI Action for statistical purposes, preserving all rights, claims and defenses of FDIC-R and MCBI.

NOW THEREFORE, in consideration of the mutual promises and covenants set forth herein, the Parties hereby agree as follows:

I.   **Approval of this Agreement in the Receivership Court**

   **A.**   Within 10 days after the Execution Date, the Receiver shall move the Receivership Court for approval of this Agreement as being in the best interest of the Receivership Entities and their creditors.

   **B.**   If the Receivership Court does not approve this Agreement, it shall be null and void, and the Receiver may move to reinstate the Damian Action. If the Receivership Court enters an order approving this Agreement, and the time to appeal such order expires, or such order is affirmed after any appeal, then the remaining provisions of this Agreement shall automatically take effect.

II.  **Post-Disallowance Lawsuits**

   **A.**   **Reinstatement or Dismissal with Prejudice of Damian Action**

   1.   If, at any time before the final distribution ("Final Distribution") contemplated by the Claims Procedure and Plan of Distribution in Section IV(A) below ("Claims Procedure"), other than through the Claims Procedure itself, FDIC-R (i) files any claim against the Receiver or the Receivership Entities, (ii) seeks to collect, execute against or otherwise obtain any assets of the Receivership Entities, (iii) files a claim pursuant to the Plan of Distribution in Section IV(A) that is greater than $16.9 million or (iv) seeks to collect, execute against or otherwise obtain any assets of Price prior to the Final Distribution, (hereinafter, a "Voiding Claim"), then

3

a.  the Receiver shall be entitled to assert any and all defenses to any FDIC-R claims or attempts to collect or execute that she may have otherwise waived under this Agreement;

b.  the Receiver may reinstate the Damian Action and the FDIC-R will not oppose the reinstatement, except on the grounds that the conditions set forth in Section II(A)(1) above have not been satisfied. All of FDIC-R's defenses and counterclaims to the Damian Action that existed as of the Closure Date shall be preserved and may be asserted in response to any such reinstatement; and

c.  the allowance of the FDIC-R's $16.9 million claim against the Receivership Estate as set forth in Section III(A)(1)-(2) below shall be deemed null and void and the FDIC-R shall be permitted to assert a new claim within thirty (30) days (the "Revised Claim") after the FDIC-R files the Voiding Claim, and the Receiver shall be permitted to assert any defense to the Revised Claim, notwithstanding any other waiver or prohibition set forth in this Agreement.

2.  Nothing herein shall be construed to prevent FDIC-R from filing suit against Price at any time.

3.  It is expressly understood and agreed that any attempt by FDIC-R to collect against Travelers/St. Paul Mercury Insurance Company Financial Institution Bond Policy No. 468PB1740, or SelectOne for Community Bank (D&O) Policy No. ECO6801146 (collectively, the "Travelers Policies"), shall not constitute a claim by FDIC-R against the Receiver or the Receivership Entities, and shall not constitute an attempt by FDIC-R to collect, execute against or otherwise obtain any assets of Price or the Receivership Entities.

a. The Parties agree to employ all reasonable efforts to cooperate in securing the proceeds from the Travelers Policies and a Financial Advisors Professional Liability Policy (No. FP82344A) issued by Evanston Insurance Company to MAM, including but not limited to a possible joint demand on the carriers for a tender of their respective limits of liability.

4. If, at the time of the Final Distribution, FDIC-R has not filed any claim against the Receiver or the Receivership Entities, and has not sought to collect, execute against or otherwise obtain any assets of Price or the Receivership Entities, other than through the Claims Procedure, then within 10 days after the Final Distribution the Receiver and FDIC-R shall jointly move to reinstate the Damian Action for the sole purpose of filing under Rule 41(a)(1)(A)(ii) a stipulation to dismiss the Damian Action, with prejudice, each party to bear its own attorneys' fees and costs.

5. Except as permitted under Section II(A)(1) above, the Parties shall not seek to reinstate the Damian Action.

**B.   MCBI Action**

1. It is a condition of this Agreement that MCBI shall voluntarily dismiss the MCBI Action, with prejudice, within thirty days of approval of this Agreement by the Receivership Court. If this condition is not satisfied, FDIC-R may, in its sole discretion, declare this Agreement to be null and void.

**III.   FDIC-R's Claim in the Receivership**

**A.   Submission and Acceptance of FDIC-R's Claim**

1. FDIC-R hereby submits, and the Receiver hereby accepts as timely and properly submitted, a claim against the Receivership Estate in the amount of $16,900,000. FDIC-

R need not participate in nor comply with any other process to submit its claim or have it accepted by the Receiver.

2. The Receiver hereby approves FDIC-R's submitted claim in the amount of $16,900,000. FDIC-R need not participate in nor comply with any other process to have its claim approved by the Receiver.

3. Except as specifically provided in Section II(A)(1) and Section III(A)(4) of this Agreement, the Receiver will not attempt, directly or indirectly, to reduce, dilute, or make any setoff against the $16,900,000 amount of FDIC-R's claim, including based on:

   a. any alleged capital infusions, loans or any other transfers of money to or investments in MCBI or MBT by Price or any of the Receivership Entities;

   b. any loss the Receiver may allege has been incurred by the Receivership Entities with respect to the Kingsland and Longboat Key properties that are the subject of a separate agreement between FDIC-R and the Receiver;

   c. except as provided in subparagraph 4 below, any recoveries FDIC-R may obtain from third parties, including (i) MBT's directors and officers, (ii) persons or entities who may be joint tortfeasors with MBT's directors and officers, (iii) MBT's insurers, or (iv) the Travelers Policies.

4. In the event FDIC-R obtains any recoveries from third parties prior to the Final Distribution, and if such recoveries are based on the same losses upon which FDIC-R's $16,900,000 claim against the Receivership Entities is based, then such recoveries shall reduce FDIC-R's $16,900,000 claim against the Receivership Estate as follows:

   a. The recovery amounts shall first be reduced by the FDIC's actual fees and expenses incurred for outside counsel and experts specifically for such recoveries

(such reduced recoveries are hereinafter referred to as "Net Third-Party Recoveries");

b.   Distributions to FDIC-R from the Receivership Estate shall terminate once *pro rata* distributions to FDIC-R from the Receivership Estate plus Net Third-Party Recoveries total $16,900,000 in actual receipts;

c.   In no event shall the FDIC-R receive less than the amount referenced in Section IV(A)(4) below; and

d.   In no event shall the FDIC-R have any obligation to return to the Receiver in whole or in part any distribution received hereunder.

**B.   Approval of FDIC-R's Claim in the Receivership Court**

1.   As part of the motion seeking approval of this Agreement, the Receiver shall request that the Receivership Court approve FDIC-R's claim in the amount of $16,900,000. This Agreement is contingent upon the Receivership Court granting such approval, and if such approval is not granted, this Agreement shall be null and void.

**IV.   Claims Procedure and Plan of Distribution**

A.   This Agreement is contingent upon the Receivership Court granting approval of a claims procedure and plan of distribution containing all of the material terms set forth in this Agreement. If the claims procedure and plan of distribution is not approved by the Court, the FDIC-R or the Receiver may declare this Agreement, including the FDIC-R's $16.9 million agreed claim, to be null and void. At the earliest practicable time permissible under the Receivership Court's order of July 16, 2014 (Doc. 197), the Receiver shall move the Receivership Court to approve a claims procedure and plan of distribution for the Receivership Estate that includes the following provisions:

7

1. The allowed claim of each investor in the Receivership Entities (collectively, the "Investors") will be determined by calculating the amounts transferred to Price and/or the Receivership Entities, less any amounts previously returned to the investor by the Receivership Entities or Price, less any recoveries obtained by the investor from other sources based on the same losses underlying such investor's allowed claims (the total allowed claims of all investors is referred to hereinafter as the "Net Investor Claims"), subject to a claims objections and adjudication process and the Receivership Court's approval. Interest or lost opportunity shall not be considered.

2. Distributions of the Receivership Estate's assets shall be made first to court-approved administrative expense creditors (collectively "Class 1 Creditors"). Except as set forth in subparagraphs 3 and 4 below, after payment in full of the claims of such Class 1 Creditors, distributions of the Receivership Entities' assets shall be made *pro rata* to a single class of creditors consisting of the Net Investor Claims, FDIC-R's $16,900,000 claim, and claims of other general creditors, if any (collectively "Class 2 Creditors").

3. FDIC-R's $16,900,000 claim and the Net Investor Claims shall remain Class 2 Creditor claims regardless of whether the Receivership Court determines that Genworth Life Insurance Company, Household Life Insurance Company and Protective Life Insurance Company ("Intervening Life Insurers") are higher priority, equivalent to, or subordinate to Class 2 Creditors. Distributions to Class 1 Creditors and Class 2 Creditors shall be subject to and consistent with any order of the Receivership Court with respect to the pending Complaints of the Intervening Life Insurers.

4. In determining the *pro rata* percentage applicable to FDIC-R's Class 2 Creditor claim, any claim of the S.E.C., regardless of classification, if any, shall not be taken into account. The *pro rata* distributions paid to FDIC-R shall not exceed 39.9%, nor shall

they be less than 33.3%, of the total amounts transferred to Class 2 Creditors and the S.E.C., regardless of what creditor class the S.E.C. may be assigned, if any. Payments by the S.E.C. to the FDIC-R and other Class 2 Creditors shall be taken into account in calculating whether the maximum and minimum percentages set forth above have been met.

B.  The Receiver represents that at the time of her execution of this Agreement she is not aware of any creditors of the Receivership Entities other than those disclosed in her quarterly status reports to the Receivership Court. Those known creditors are limited to FDIC-R, the S.E.C., the Investors, the Intervening Life Insurers, and disclosed administrative expense creditors. In the event that additional creditors, investors or other claimants are identified in the future that may materially alter the outcome or intent of this Agreement, FDIC-R may, in its sole discretion, declare this Agreement to be null and void, provided, however, that Section II(A) of this Agreement shall survive so that the Receiver shall retain all claims with respect to the Damian Action and FDIC-R may not assert any timeliness defense resulting from the parties entering in this Agreement. For the purposes of this paragraph, "materially alter" shall mean the assertion, and acceptance and approval by the Receivership Court after all challenges, of presently undisclosed claims of creditors, investors or other claimants in excess of $3 million in the aggregate.

C.  The Receiver may seek approval of any other reasonable and necessary terms of a Claims Procedure and Plan of Distribution, such as a bar date, claims adjudication and objection process, and the timing of distributions, so long as they are consistent with the requirements set forth above and they do not dilute or diminish the FDIC-R's rights as set forth herein.

9

V. **Bankruptcy of Receivership Entities**

A. Notwithstanding any provision in this Agreement, the Receiver is not precluded from filing bankruptcy petitions on behalf of any of the Receivership Entities at any time; provided, however, that this Agreement shall be null and void upon the filing of a bankruptcy petition by any of the Receivership Entities at any time prior to the Final Distribution, and all parties hereto shall be deemed to return to their *status quo* as of the date of this Agreement.

B. In the event FDIC-R is required to return any portion of its *pro rata* distribution received from the Receivership Entities due to a final order by a court that the distribution or any portion thereof constituted a preference, voidable preference, fraudulent transfer or similar transaction, then, in its sole discretion, the FDIC-R may, without waiver of any other rights it may have in law or equity, declare this Agreement null and void, and all parties hereto shall be deemed to return to their *status quo* as of the date of this Agreement.

VI. **Reservations of Rights**

A. Except as expressly agreed herein, the FDIC-R hereby reserves all statutory, common law and equitable rights available to it, including its rights under FIRREA and the National Depositor Preference Act. FDIC-R's voluntary undertakings in connection with this Agreement shall not be construed as an admission that it is bound by the provisions of the Receivership Order, including its injunction prohibiting suits against the Receiver or the Receivership Estate. Nothing in this Agreement shall be construed as a release of, covenant not to sue, or covenant not to execute against, the Receiver or the Receivership Estate.

B.     Except as expressly agreed herein, the Receiver hereby reserves all statutory, common law and equitable rights available to it. The Receiver's voluntary undertakings in connection with this Agreement shall not be construed as an admission or acknowledgment that FIRREA or the National Depositor Preference Act supersede, override, undermine, nullify, or otherwise affect any provisions of the Receivership Order, including its injunction prohibiting suits against the Receiver or the Receivership Estate. Nothing in this Agreement shall be construed as a release of, covenant not to sue, or covenant not to execute against, FDIC-R.

C.     Until the Final Distribution, FDIC-R will give 30 days' written notice to the Receiver before filing or taking any action against the Receiver or the Receivership Estate outside the Receivership Court.

VII.   **Separate Agreement Relating to Kingsland, GA and Longboat Key, FL Properties**

A.     The Parties entered into a separate agreement to resolve disputes between them relating to certain real property located in Kingsland, GA and Longboat Key, FL ("Properties Agreement"). The Properties Agreement was approved by the Receivership Court and FDIC-R. The Properties Agreement is separate and distinct from this Agreement. This Agreement shall be unaffected by the execution or operation of the Properties Agreement. The Properties Agreement shall be unaffected by the operation of this Agreement, including but not limited to the Parties' rights to declare this Agreement null and void. In particular, the Parties agree that the Receiver's right to reinstate the Damian Action as provided herein is limited to the right to reinstate those causes of action unrelated to the Kingsland, GA and Longboat Key, FL properties, and which the Receiver is not required to dismiss with prejudice in the Properties Agreement.

VIII. **Forensic Transaction Analysis**

   A. Within 10 days after the Execution Date, the Receiver shall provide to FDIC-R (which it shall maintain as confidential) the detailed schedule of transactions for each Investor prepared by her forensic consultants, Kapila & Company, referenced in the Receiver's Seventh Status Report ("Transaction Analysis"). The Transaction Analysis will be utilized by FDIC-R to confirm that, based on current information, the anticipated Net Investor Claims are not less than 55% of the total of the FDIC-R's $16,900,000 claim and the Net Investor Claims. If the Transaction Analysis reveals that the Net Investor Claims are less than 55% of the total of the FDIC-R's $16,900,000 claim and the Net Investor Claims, then within 30 days of FDIC-R's receipt of the Transaction Analysis, FDIC-R may, in its sole discretion, declare this Agreement to be null and void.

   B. At such time as Kapila & Company has completed its full forensic investigation, which includes not only the Transaction Analysis but also its reconstruction of all Receivership Entity and Price-related bank account transactions, the Receiver shall provide such data (but not any opinions of Kapila & Company) to the FDIC-R (which it shall maintain as confidential).

IX. **Authority**: The Parties represent that they have read this Agreement and intend to be bound by its terms. The Receiver warrants that she is the sole owner of the claims asserted in the Damian Action, and that she has the sole authority and legal capacity to act on behalf of and bind the Receivership Estate, on whose behalf she is entering into this Agreement. The FDIC-R warrants that it is the sole owner of MBT's claims against the Receivership Estate, and that it has the sole authority and legal capacity to act on behalf of and bind MBT, on whose behalf it is entering into this Agreement.

X.   **Representation by Counsel:** In connection with the negotiation and execution of this Agreement, the Parties have had the benefit of representation by independent legal counsel and other professionals of their own choosing.

XI.   **Scope of Agreement:** This Agreement inures to the benefit of and is binding on the Parties and their respective successors and/or assigns.

XII.   **Amendment:** This Agreement may not be amended except in a writing signed by all the Parties.

XIII.   **Merger:** This Agreement sets forth the entire understanding of the Parties with respect to its subject matter, and supersedes all prior agreements and understandings relating to its subject matter. There are no side agreements. No breach of any provision hereof may be waived except in writing. Waiver of any one breach of any provision hereof shall not be deemed to be a waiver of any other breach of the same or any other provision hereof.

XIV.   **Execution:** This Agreement may be signed in counterparts by facsimile or electronic means which, taken together, will constitute one agreement.

XV.   **Effect of Failure or Nullification:** In the event this Agreement fails for any reason or is made or declared null and void in accordance with its terms, then the Parties shall be deemed to have returned to their respective positions and *status quo* for all purposes, including for calculating any statute of limitations, statute of repose, or other time-based defenses, as of the Closure Date. The time under any statutes of limitations, statutes of repose, or other time-based defenses with respect to any claims, counterclaims, defenses, or causes of action that either Party has against the other shall be deemed to have been tolled as of the Closure Date, and shall not resume to run, if ever, until notice to all Parties hereto that this Agreement has failed or become null and void.

**XVI. Protective Case.** If, notwithstanding the provisions of Section XV above, the FDIC-R determines, in its sole discretion, that, for purposes of statutes of limitations, repose, or other time-based defenses, its causes of action against the Receivership Entities may expire prior to the Final Distribution, then FDIC-R may file a protective case against the Receiver and/or some or all of the Receivership Entities ("Protective Case") in the Receivership Court. The Protective Case shall not constitute a claim by FDIC-R against the Receiver or the Receivership Entities, and shall not constitute an attempt by FDIC to collect, execute against or otherwise obtain any assets of Price or the Receivership Entities, provided:

    a.    contemporaneously with filing the Protective Case, the FDIC-R moves to stay the Protective Case in its entirety pending completion of the events contemplated by this Agreement (which motion shall be consented to by the Receiver);

    b.    such motion is granted by the Receivership Court; and

    c.    the FDIC-R Protective Case is dismissed with prejudice within ten days after the Final Distribution.

**XVII. Notice:** Notice provided pursuant to this Agreement shall be made in writing by email (received and read receipts requested), overnight mail or telecopier to the address of the appropriate Party as set forth below. All notices shall be deemed to have been given and received upon receipt.

    Receiver:
        Melanie E. Damian
        Kenneth D. Murena
        Guy F. Giberson
        Damian & Valori, LLP
        1000 Brickell Avenue, Suite 1020
        Miami, Florida 33131
        (305) 371-3960 – telephone
        (305) 371-3965 – telecopier

        mdamian@dvllp.com
        kmurena@dvllp.com
        ggiberson@dvllp.com

FDIC-R:
    Peter M. Casey
    Federal Deposit Insurance Corporation
    3501 North Fairfax Drive
    Arlington, Virginia 22226
    (703) 516-1383 – telephone
    pcasey@fdic.gov

With a copy to:
    Alan F. Curley
    Robinson Curley & Clayton, P.C.
    300 South Wacker Drive, Suite 1700
    Chicago, Illinois 60606
    (312) 663-3100 – telephone
    (312) 663-0303 – telecopier
    acurley@robinsoncurley.com

**XVIII. Governing Law:** This Agreement shall be governed by and construed in accordance with Federal Law, but if Federal Law does not provide a rule of decision, it will be governed by and construed in accordance with the laws of the State of Georgia.

**XIX. No Construction Against Either Party:** It shall be deemed that this Agreement has been jointly drafted and composed by the respective Parties to this Agreement. The terms of this Agreement shall not be interpreted or construed in favor of or against any Party. The terms of this Agreement shall not be interpreted or construed in favor of or against any Party on the ground that one Party was the purported draftsman hereof.

**XX. No Agreement Until Full Execution:** Neither this agreement, nor any of its terms, shall be binding or enforceable under any circumstances, until it has been executed by all Parties hereto.

**ACCEPTED AND AGREED** as of the latest date indicated below:

**FEDERAL DEPOSIT INSURANCE CORPORATION**, as Receiver of Montgomery Bank & Trust

By: *Howard B. Klein* (signature)
Its: Counsel
Date: 4-9-15

**MELANIE DAMIAN**, as Receiver of all assets of Aubrey Lee Price, PFG, LLC, PFGBI, LLC, Montgomery Asset Management, LLC (Georgia) and Montgomery Asset Management, LLC (Florida)

By: (signature)
Its: Receiver
Date: 3.16.15

16